**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| **COBALT INTERNATIONAL ENERGY**, *et al.*,[1] | ) | Case No. 17-36709 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 14, 57** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV)
<u>SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Cobalt

International Energy, *et al.* (the "<u>Debtors</u>"), hereby submits this objection to *Debtors' Emergency*

*Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral,*

*(II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the*

*Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 14]

(the "<u>Motion</u>"), filed on December 14, 2017.  This Court entered an order approving the Motion

on an interim basis on December 14, 2017 [D.I. 57] (the "<u>Interim Order</u>").[2]  The Committee now

objects to entry of a final order on the Motion and, in support hereof, respectfully states as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, L.P. (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316).  The Debtors' service address is: 920 Memorial City Way, Suite 100, Houston, Texas 77024.

[2]  Capitalized terms not defined herein shall have the meanings set forth in the Motion.

## PRELIMINARY STATEMENT

1.      The Committee opposes entry of a final order authorizing the Debtors to enter into the cash collateral arrangement with the Prepetition Secured Parties on the terms set forth in the Motion.  The proposed final cash collateral order (the "Proposed Final Order") imposes onerous terms that have less to do with providing the Debtors the ability to use cash in their operations and restructuring efforts than with gaining immediate leverage over the chapter 11 process and attempting to disadvantage the Committee and other parties in interest.

2.      For example, the Proposed Final Order grants adequate protection liens and superpriority claims against the Debtors' valuable unencumbered assets, including avoidance actions, unencumbered portions of pledged foreign subsidiaries, and commercial tort claims such as breach of fiduciary duty and other derivative actions against insiders that are currently pending and have already survived motions to dismiss.  The Proposed Final Order also now provides for immediate relief from stay in favor of the Prepetition Secured Parties, and would allow them to exercise remedies, following an event of default and expiration of a five (5) business day notice period.  In addition, the Proposed Final Order contains milestones that are tied to the Debtors' fast track effort to sell their assets under a plan of liquidation that, among other things, requires the affirmative approval of the First Lien Noteholders and grants blanket and gratuitous estate and third party releases in favor of the Debtors' past and present officers and directors, the Prepetition Secured Parties, and a host of other releasees.

3.      The Committee believes that requiring the sale to be effectuated through a plan could chill bidding and unnecessarily hamstring the sale process.  Further, there should be no requirement imposed on the Debtors that a plan must be reasonably acceptable to the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group if it properly treats the First Lien Notes in accordance with the Bankruptcy Code.

4.      Regarding the issue of adequate protection, the Debtors filed these cases with over $450 million of cash and have proposed a settlement with Sonangol worth another $500 million in cash.[3]  Although the value of the Debtors' remaining oil and gas assets in the Gulf of Mexico has yet to be determined, it is apparent that the First Lien Noteholders owed approximately $500 million are vastly oversecured, and should not be imposing their will on these estates.  As to the Second Lien Noteholders, the outcome is not yet clear, but it may turn out to be the case that the Second Lien Noteholders are undersecured and, as such, they should not be entitled to priority as to any of unencumbered assets, which may constitute the only basis for recoveries that will be available to the Debtors' unsecured creditors.

5.      As to the multitude of the Debtors' acknowledgments, stipulations, waivers and releases in favor of the Prepetition Secured Parties in the Proposed Final Order (which now also include stipulations as to make-whole premiums), why should the Committee be handcuffed by an unreasonably short challenge period of sixty (60) days under the circumstances here?  This is not a case where the Committee will simply conduct a perfection analysis of a third party lender's collateral position.  The Prepetition Secured Obligations are the result of a series of complex debt exchanges that occurred over the last two years.  Certain of these transactions may be avoidable.  The Committee should be provided with ample time (without any artificial deadlines) in order to investigate these transactions – at a minimum, 120 days from the Committee's formation.  Further, as suggested by this Court at the first day hearing, the Committee must be granted immediate standing to pursue any viable claims.  And there should be no cap on the amount of fees and expenses that the Committee may incur in conducting such investigation or pursuing

---

[3]  Notwithstanding the foregoing, the Committee reserves all rights with respect to the distribution of proceeds from the Sonangol settlement, which will flow through non-Debtor foreign subsidiaries.  Thirty-five percent (35%) of the equity interests in such subsidiaries is unencumbered.

claims consistent with its statutory duties.  The proposed cap (now $75,000) is unreasonably small and completely inappropriate given the scope of the transactions at issue.  The Committee suggests a cap of $250,000 out of the Prepetition Agents' collateral and no cap as to allowed amounts that may be payable out of unencumbered assets.

6.      Finally, the Committee objects to:  (a) the payment of *default rate* interest to the First Lien Noteholders (even if it is only 1% per annum, that equates to $5 million per year on $500 million of debt), (b) an unqualified right to credit bid in favor of the Prepetition Agents, and (c) broad-ranging waivers of surcharge and marshaling rights as to the Prepetition Secured Parties.  Such over-reaching provisions are not helpful in a case where the Debtors have no stalking horse bidder and the Committee has just begun to evaluate potential alternative structures for a plan.

7.      In sum, given the extent of assets available in these estates and the limited relief sought through the Motion (*i.e.*, continuing use of cash in the ordinary course), the estates and their fiduciaries must be permitted to freely exercise their statutory duties without the excessive restrictions that the Prepetition Secured Parties are attempting to impose in the early stages of these cases through the Proposed Final Order.  Without material modifications to the Proposed Final Order as addressed herein and in the mark-up of the Interim Order annexed hereto as **Exhibit 1** reflecting other comments, the Committee urges the Court to deny the Motion.

## BACKGROUND

8.      The Debtors are a publicly held offshore oil exploration and production company with headquarters in Houston, Texas and operations primarily located off the coast of the United States in the deepwater of the Gulf of Mexico and offshore Angola and Gabon in West Africa.

9.     On December 14, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

10.     Also on the Petition Date, this Court entered the Interim Order authorizing the Debtors to use cash collateral pending entry of a final order.  The hearing on the Proposed Final Order is currently scheduled for January 25, 2018.  The Approved Budget attached to the Interim Order reflects a cash balance for the Debtors of approximately $455 million as of the week ending December 22, 2017.

11.     On December 21, 2017, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  The Committee consists of the following three (3) members: (a) Wells Fargo Bank, National Association; (b) Baker Hughes, a GE Company; and (c) Schlumberger Technology Corporation.

12.     Also on December 21, 2017, the Debtors filed the *Debtors' Motion for Entry of An Order (I) Authorizing Performance Under Settlement Agreement, (II) Approving Settlement Agreement, and (III) Granting Related Relief* [D.I. 127], pursuant to which the Debtors sought to resolve their disputes with Sonangol, the state oil and gas company of the Republic of Angola, in consideration of a payment of $500 million in cash to the Debtors.

## PROPOSED FINAL ORDER

13.     The Debtors seek authority, on a final basis, to use cash collateral in which the Prepetition Secured Parties assert an interest.  The Debtors are in the process of negotiating the terms of the Proposed Final Order with the Prepetition Secured Parties, which generally will follow

the form of the Interim Order, but with some modifications as noted herein based on the latest version of such draft Proposed Final Order available to the Committee.

14.     The Proposed Final Order will include various acknowledgments, stipulations, waivers and releases by the Debtors in favor of the Prepetition Secured Parties (which now also include stipulations as to make-whole premiums), subject to a challenge period of sixty (60) days from the date of the Committee's formation.  *See* Proposed Final Order at ¶D.  The proposed order does not grant standing to the Committee to pursue any challenge to the Prepetition Secured Party Obligations and caps the Committee's investigation budget (now at $75,000).  *Id.* at ¶7, ¶9.

15.     Subject to the Carve Out and certain pre-existing permitted liens, the Proposed Final Order will include the grant of adequate protection liens, to the extent of any Diminution in Value, in all assets of the Debtors, including avoidance actions, commercial tort claims, and any previously unencumbered portions of pledged foreign subsidiaries.  *Id.* at ¶4(a). The Proposed Final Order also will grant superpriority claims in favor of the Prepetition Secured Parties, which claims will be payable from and have recourse to the proceeds of avoidance claims and any other unencumbered assets.  *Id.* at ¶4(b).

16.     As further adequate protection, the Proposed Final Order will require payment of the reasonable fees and expenses of multiple sets of professionals engaged by the Prepetition Secured Parties at a total projected cost of $13 million through June 2018.  *Id.* at ¶4(c). In contrast, the Debtors' budget contemplates a "contingency" line item for the fees and expenses of professional fees engaged by the Committee of only $3 million.  Finally, the Proposed Final Order will require the monthly payment of interest to the First Lien Noteholders at the ***default contract rate***.  *Id.* at ¶4(g).

17.     The Proposed Final Order now provides for immediate relief from stay in favor of the Prepetition Secured Parties, and would allow them to exercise remedies, following an event of default and expiration of a five (5) business day notice period.  The Proposed Final Order also creates a new event of default if the Debtors fail to cause the Non-Debtor Sonangol Parties to promptly ensure that all proceeds of the Sonangol settlement are deposited into a segregated account and not disbursed without Court order or the written consent of counsel to the First Lien Ad Hoc Group, which improperly suggests that the First Lien Noteholders have a lien on the entirety of these proceeds.  The events of default under the Proposed Final Order also include the following milestones:

| | |
|---|---|
| Entry of Proposed Final Order | January 23, 2018[4] |
| Entry of Bid Procedures and Scheduling Order Reasonably Acceptable to First Lien Indenture Trustee, Counsel to the First Lien Ad Hoc Group, and Counsel to the Second Lien Ad Hoc Group | January 27, 2018 |
| Deadline to File Plan Reasonably Acceptable to First Lien Indenture Trustee and Counsel to the First Lien Ad Hoc Group | March 24, 2018 |
| Effective Date of Plan Reasonably Acceptable to First Lien Indenture Trustee and Counsel to First Lien Ad Hoc Group or Sale Under the Bid Procedures and Scheduling Order Reasonably Acceptable to First Lien Indenture Trustee, Counsel to the First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group | June 29, 2018 |

*Id*. at ¶5(k).  The foregoing milestone of January 27, 2018, incorporates the terms of the Debtors' proposed bid procedures and scheduling order (the "Bid Procedures Order"), which contemplates much earlier deadlines that the Proposed Final Order, including the filing of a plan by January 15, 2018, the disclosure statement hearing by February 14, 2018, which is days prior to the

---

[4]  Presumably, this date has been extended by agreement with the Prepetition Secured Parties to allow for the hearing to go forward on January 25, 2018.

contemplated sale auction on February 27, 2018, and the confirmation hearing on March 20, 2018. Further, the Bid Procedures Order must be reasonably acceptable to the First Lien Indenture Trustee, counsel to the First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group.

18.     Finally, the Proposed Final Order includes an unqualified right to credit bid in favor of the Prepetition Agents and broad-ranging waivers of surcharge rights under section 506(c) and marshalling rights with respect to the Prepetition Secured Obligations. *Id.* at ¶11, ¶13, ¶16.

## OBJECTION TO PROPOSED FINAL ORDER

### A.     The Court Should Not Authorize the Debtors to Grant Liens on Unencumbered Assets in Favor of the Prepetition Secured Parties

19.     The Committee objects to the grant of any adequate protection liens in favor of the Prepetition Secured Parties on assets that were unencumbered as of the Petition Date, including avoidance actions, commercial tort claims, and any previously unencumbered portions of pledged foreign subsidiaries. *See* Proposed Final Order at ¶4(a).

20.     It is well established that a secured party is not entitled to adequate protection absent a showing of the requisite cause. Specifically, a secured creditor is not entitled to adequate protection unless there is evidence that its collateral is declining a value. *See, e.g., In re Continental Airlines, Inc.,* 146 B.R. 536, 539 (Bankr. D. Del. 1992) ("Post-*Timbers* courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral."); *Zink* v. *Vanmiddlesworth,* 300 B.R. 394, 402-03 (N.D.N.Y. 2003) ("[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value of establishing some other basis for the relief.") (internal citations omitted).

8

21.     In the instant case, the First Lien Noteholders are amply collateralized by the Prepetition Collateral, which the Debtors assert includes over $450 million of cash as of the Petition Date.  In addition, the Debtors expect to receive $500 million in cash from a settlement with Sonangol.[5]

22.     As to the Second Lien Noteholders, the value of the Debtors' remaining oil and gas assets in the Gulf of Mexico is as yet undetermined.  The Second Lien Noteholders already may be undersecured, which would leave no recoveries for unsecured creditors except currently unencumbered assets such as avoidance actions, commercial tort claims, and any unencumbered portions of pledged foreign subsidiaries.  If the situation proves so dire that the Debtors' ordinary course usage of cash results in a diminution of value with respect to the Second Lien Noteholders' collateral, then it should not be the unsecured creditors who bear this burden.

23.     Avoidance actions in particular are uniquely for the benefit of general creditors of the estate, not secured creditors.  The intent behind avoidance powers and a debtor's power to bring causes of actions is to allow the debtor-in-possession to gain recoveries for the benefit of all unsecured creditors.  *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000); *In re Sweetwater*, 55 B.R. 724, 735 (D. Utah 1985) (avoiding powers are meant to benefit creditors generally and promote equitable distribution among all creditors).  Accordingly, bankruptcy courts customarily restrict the ability of debtors-in-possession to pledge avoidance actions and their proceeds as security.  *See, e.g., In re Goold Electronics Corp.*, 1993 WL 408366, at *3-4 (N.D. Ill. Sep. 22, 1993) (vacating DIP financing order to the extent that the order granted the lender a security interest in the debtor's

---

[5]  As noted above, the Committee reserves all rights with respect to the distribution of proceeds from the Sonangol settlement, which will flow through non-Debtor foreign subsidiaries.  Thirty-five percent (35%) of the equity interests in such subsidiaries is unencumbered.

9

preference actions). Hence, avoidance actions and the proceeds thereof should remain unencumbered for the benefit of all unsecured creditors.

24.    There are also potentially valuable, unencumbered commercial tort claims belonging to the Debtors' estates, including breach of fiduciary duty and other claims that were asserted in pending Texas state court derivative actions against officers and directors of the Debtors that survived motions to dismiss and have been stayed by the bankruptcy.  These claims potentially have significant value and may be satisfied from executive liability insurance coverage purchased by the Debtors prepetition.  These claims also should remain unencumbered for the benefit of all unsecured creditors.

## B.    The Proposed Milestones, Particularly Those Tied to the Bid Procedures Order, are Unnecessary and Onerous

25.    By requiring entry of the Proposed Bid Procedures Order by January 27, 2018 that is reasonably acceptable to the First Lien Indenture Trustee, counsel to the First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group, the Proposed Final Order incorporates milestones that appear to be part of an effort to fast track confirmation of a plan of liquidation that unnecessarily grants consent rights in favor of the First Lien Noteholders and broad-ranging estate and third party releases in favor of the Debtors' past and present officers and directors, the Prepetition Secured Parties, and a multitude of other affiliated releasees.  The Committee objects to any mandate in either the Proposed Bid Procedures Order or the Proposed Final Order that requires the sale of the Debtors' assets necessarily to be effectuated through a liquidating plan, which could have the effect of chilling the bidding.  The milestones should be flexible in terms of allowing a sale either through a plan or by motion under section 363 of the Bankruptcy Code.  And the First Lien Noteholders, who are obviously oversecured, should have no right to approve a plan that pays them in full or otherwise reinstates their obligations in accordance with the Bankruptcy

Code.  As currently proposed, the Proposed Final Order would require the Debtors to propose a plan reasonably acceptable to the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group by no later than March 24, 2018.

26.     The milestones in the Proposed Bid Procedures Order are also inconsistent with the Proposed Final Order.  The Proposed Bid Procedures Order requires the filing of a plan by January 15, 2018, the disclosure statement hearing by February 14, 2018, prior to the contemplated sale auction on February 27, 2018, and the confirmation hearing on March 20, 2018. By contrast, under the Proposed Final Order, a plan does not have to be filed until March 24, 2018, the effective date need not occur until June 29, 2018, and the plan must be acceptable to First Lien Indenture Trustee and counsel to First Lien Ad Hoc Group.  This latter date of June 29, 2018, is also the deadline under the Proposed Final Order to consummate a sale reasonably acceptable to the First Lien Indenture Trustee, counsel to the First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group.  The milestones must be consistent throughout the Proposed Bid Procedures Order and the Proposed Final Order so that prospective buyers and parties in interest in these cases understand the timeline for these cases.  Further, as noted above, the Prepetition Secured Parties should not have veto rights as to any plan or sale.

**C.     The Committee's Investigation of the Prepetition Secured Parties' Liens and Claims Should Be Unrestricted**

27.     Through the Proposed Final Order, the Prepetition Secured Parties seek to limit the Committee's investigation period with respect to the Prepetition Secured Obligations by time (60 days from the date of formation) and dollars (now $75,000 cap).  *See* Proposed Final Order at ¶7, ¶9.  The Committee objects to such restrictions and seeks immediate standing, on

behalf of the Debtors' estates, in order to pursue and prosecute any and all viable claims that may be found to exist against the Prepetition Secured Parties.

28.    Given the extent of the Debtors' acknowledgments, stipulations, waivers and releases in favor of the Prepetition Secured Parties (which now also include stipulations as to make-whole claims), it is imperative that the Committee be granted immediate standing in order to pursue, on behalf of the Debtors' estates, any viable claims that may exist against the Prepetition Secured Parties.  Inasmuch as the Debtors are surrendering their fiduciary obligation to examine and, if appropriate challenge, the validity and extent of the Prepetition Secured Parties' liens and claims, the Committee is the only logical party that could assert a proper challenge.  As this Court expressed at the first day hearing: "So all that I believe that we need to do is to say that the committee will have standing to assert rights, because otherwise I'm taking away the rights without ever letting the committee speak to that question."  Transcript of First Day Hearings, December 14, 2017, at p. 39, ln. 6-9.

29.    Notably, the need to conduct an independent investigation is not a mere abstraction as the Committee's investigation to date reveals a complex patchwork of debt exchanges of unsecured debt for new secured debt undertaken by the Debtors and the Prepetition Secured Parties over the two years prior to the Petition Date.  Such debt exchanges created the Prepetition Secured Obligations and likely did so while the Debtors' were insolvent, and avoidance claims may lie to avoid the Prepetition Secured Parties' liens or seek other relief.  It is also noteworthy that the opportunity to participate in the unsecured-for-secured debt exchanges was offered only selectively to holders of the Debtors' two outstanding series of Convertible Notes, the remainder of which were left behind and now constitute the largest general unsecured creditors.

30.     The Prepetition Secured Parties also assert make-whole claims in their note instruments, the enforceability of which needs to be examined and, if appropriate, challenged.  The Proposed Final Order now improperly includes stipulations as to the allowance of such claims.

31.     The investigation and analysis of the exchange offers and the make-whole claims will be much more difficult and complicated than a typical lien perfection analysis, and will require a substantial investment of time and resources by the Committee.  These issues will have a material impact on any plan in these cases.  Under these circumstances, the contemplated cap in the Proposed Final Order (now $75,000) in connection with such work is completely unreasonable and there is also no basis to impose an artificial time limitation.  Rather, the Committee should be unrestricted in its ability and must be granted standing to fulfill its statutory duties in these cases. *See* 11 U.S.C. 1103(c)(2) (authorizing the official creditors' committee to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuation of such business, and any other matter relevant to the case or to the formulation of a plan.").

32.     If there is any restriction on the use of cash collateral to pay for the Committee's investigation, the amount should be significantly greater than $75,000 and not less than $250,000.  Additionally, the Committee asks that the Court strike the last sentence appearing in paragraph 9 of the Proposed Final Order, which purports to disallow any claim for services rendered in connection with the Committee's investigation in excess of the budgeted amount.  The Proposed Final Order includes a non-standard provision that any fees and expenses incurred by the Committee in excess of the budgeted amount are automatically disallowed as an administrative expense claim:

> No claims for amounts incurred in connection with an
> investigation in excess of the Committee Investigation Budget

> shall be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

The Committee objects to this preemptive claim objection to its professionals' fees, which has no basis under the Bankruptcy Code or other applicable law.   The Proposed Final Order may govern the extent to which the Committee's professionals can be paid from the Prepetition Secured Parties, but it cannot, for example, dictate that otherwise allowable administrative expenses claims are disallowed and/or cannot be satisfied from unencumbered assets.   The quoted language should be stricken, and the Committee requests that the following language be added instead:

> Notwithstanding the foregoing, nothing herein shall be deemed to: (a) limit the ability of the Creditors' Committee's professionals to be paid from unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition Secured Parties; (b) preclude the Court from awarding fees and expenses to the Creditors' Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with the confirmation of any plan.

33.    In sum, in regard to the challenge provisions, the Court should only approve the Proposed Final Order if:  (a) the Committee is given a lengthier period of time to investigate the Prepetition Secured Parties' liens; *i.e.*, not less than 120 days from the Committee's formation, with such challenge period being subject to extension by agreement with the Prepetition Secured Parties or for cause, (b) the Committee is given an adequate investigation budget of no less than $250,000, and (c) the Committee is granted standing to commence any challenge to the various stipulations in the Proposed Final Order.

D.      **The Proposed Section 506(c) and Marshalling Waivers are Inappropriate**

34.     The Proposed Final Order will waive the estates' ability to surcharge the Prepetition Secured Parties or their asserted collateral interests under 11 U.S.C. § 506(c), as to any costs or expenses of administration incurred "at any time."  *See* Proposed Final Order at ¶13. Further, the Proposed Final Order provides that the Prepetition Secured Parties shall not be subject to the equitable doctrine of marshalling or any other similar doctrine with respect to any of their asserted collateral.  *Id*. at ¶16.  The Committee submits that such waivers should not be approved.

35.     The effect of the section 506(c) and marshalling waivers is to eliminate a further avenue of recovery for the estates and to create a risk that the costs of the Debtors' cases will be borne by unsecured creditors.  This result contravenes the essential purpose of section 506(c).  *See Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate . . .") (internal citation omitted); *see also In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs."). Similarly, the concept of marshalling could ensure that the Prepetition Secured Parties turn to certain assets as opposed to others in collecting on their claims in order to maximize recoveries to all constituents such as unsecured creditors.

DOCS_SF:95689.7 15117/002

**E.**      **Other Miscellaneous Objections**

36.      Finally, the Committee objects to:  (a) the payment of ***default rate*** interest to the First Lien Noteholders; (b) immediate relief from stay in favor of the Prepetition Secured Parties in the event of default following a five (5) business day notice period; and (c) an unqualified right to credit bid in favor of the Prepetition Agents.  As to the latter, any right to credit bidding should be expressly subject to the requirements of section 363(k) of the Bankruptcy Code.

37.      Regarding immediate relief from stay, this is a markedly onerous and unnecessary revision to the Interim Order.  If an event of default occurs and is not cured, then the most that should happen is that the Debtors' authority to use cash collateral under the Proposed Final Order terminates.  Immediate relief from stay following a minimal five (5) business day notice period would cause extreme prejudice to unsecured creditors and other constituents, and would be grossly disproportionate to any possible harm that could be caused to the Prepetition Secured Parties under the circumstances of these cases and given the extent of the assets in these estates.

38.      With respect to the payment of default rate interest, even if it equals 1% per annum, this translates into $5 million per year on $500 million of debt.  There is no reason for the Debtors to agree to pay default rate interest at this time on $500 million of First Lien Notes when the Debtors have no stalking horse buyer for their assets and no particular exit strategy or proposed plan structure for these cases.

39.      The Committee has other language objections set forth in the mark-up of the Interim Order attached hereto as **Exhibit 1**.  It is the Committee's understanding that the Proposed Final Order will require that the Committee be provided with the same and simultaneous

16

reporting that the Debtors are providing to the Prepetition Agents and the Prepetition Secured Parties.

WHEREFORE, the Committee requests that the Court decline to enter the Proposed Final Order for the reasons set forth herein, and grant the Committee such other and further relief to which it may be entitled.

Dated:   January 19, 2018

<div style="margin-left:40%">

*By: Kenneth Green*
SNOW SPENCE GREEN, LLP
Kenneth Green, Esq. (TX Bar No. 24036677)
2929 Allen Parkway, Suite 2800
Houston, TX 77019
Telephone: (713) 335-4830

*Proposed Local Counsel for the Official Committee of Unsecured Creditors*

PACHULSKI STANG ZIEHL & JONES LLP

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Steven W. Golden, Esq. (TX Bar No. 24099681)
780 Third Ave., 34th Fl.
New York, NY  10017
Telephone:  (212) 561-7700

Ira Kharasch, Esq. (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067-4100
Telephone:  (310) 277-6910

*Proposed Lead Counsel for the Official Committee of Unsecured Creditors*

</div>

## CERTIFICATE OF SERVICE

I certify that on January 19, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kenneth Green*
Kenneth Green

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Brad Weiland of Kirkland & Ellis LLP, Debtors' counsel, about this Objection, but the matter could not be resolved and requires Court determination.

*/s/ Robert J. Feinstein*
Robert J. Feinstein

**<u>Exhibit 1</u>**
(Proposed Final Order)

DOCS_SF:95689.7 15117/002

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| COBALT INTERNATIONAL ENERGY, INC., *et al.*,[1] | ) | Case No. 17-36709 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Docket No. 14, 57** |

**~~INTERIM~~FINAL ORDER (I) AUTHORIZING USE OF CASH
COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING
ADEQUATE PROTECTION TO SECURED PARTIES PURSUANT TO 11
U.S.C.
§§ 361, 362, AND 363, ~~(III) SCHEDULING FINAL HEARING PURSUANT
TO BANKRUPTCY RULE 4001(b), AND (IV~~AND (III) GRANTING
RELATED RELIEF**

Upon the motion of Cobalt International Energy, Inc. ("**Cobalt**") and its affiliated

debtors, as debtors and debtors in possession (collectively, the "**Debtors**") in the

above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), dated December 14, 2017 (the

"**Motion**"),[2] for an interim order (~~this~~the "**Interim Order**") and a final order that contains terms

and conditions at least as favorable to the respective Prepetition Secured Parties as those

contained in ~~this~~the Interim Order (a~~this~~ "**Final Order**" and, together with ~~this~~the Interim Order,

the "**Cash Collateral Orders**"), under sections 105, 361, 362, 363, 506(c), 507(b), and 552 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy**

**Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, L.P. (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316). The Debtors' service address is: 920 Memorial City Way, Suite 100, Houston, Texas 77024.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or as the context otherwise requires.

(as amended, the "**Bankruptcy Rules**"), Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Procedures**"), and having sought, among other things, the following relief:

(a)     authorization of the Debtors' use of property constituting Cash Collateral (as defined below), subject to and pursuant to the terms and conditions set forth in this ~~Interim~~Final Order;

(b)     the granting of adequate protection on account of the Debtors' use of Cash Collateral and any ~~diminution~~Diminution in ~~value~~Value (as defined below) of the Prepetition Secured Parties' (as defined below) respective interests in the Prepetition Collateral (as defined below), subject to and pursuant to the terms and conditions set forth in this ~~Interim~~Final Order, to:

i.     the First Lien Notes Secured Parties (as defined below) under that certain Indenture, dated as of December 6, 2016 (as amended, restated, supplemented, or otherwise modified, the "**First Lien Indenture**" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, working fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "**First Lien Notes Documents**") by and among Cobalt, as issuer, each of the guarantors named therein (the "**First Lien Notes Guarantors**" and, collectively with Cobalt, the "**First Lien Notes Obligors**"), and Wilmington Trust, National Association, as indenture trustee and collateral agent (in such capacities, the "**First Lien Indenture Trustee**") for the noteholders

2

thereunder (the "**First Lien Noteholders**" and, collectively with the First Lien Indenture Trustee, the "**First Lien Notes Secured Parties**");

        ii.    the Second Lien Notes Secured Parties (as defined below) under that certain Indenture, dated as of December 6, 2016 (as amended, restated, supplemented, or otherwise modified, the "**Second Lien Indenture**" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, working fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "**Second Lien Notes Documents**," and together with the First Lien Notes Documents, the "**Prepetition Loan Documents**") by and among Cobalt, as issuer, each of the guarantors named therein (the "**Second Lien Notes Guarantors**" and, collectively with Cobalt, the "**Second Lien Notes Obligors**"), and Wilmington Trust, National Association, as indenture trustee and collateral agent (in such capacities, the "**Second Lien Indenture Trustee**") for the noteholders thereunder (the "**Second Lien Noteholders**" and, collectively with the Second Lien Indenture Trustee, the "**Second Lien Notes Secured Parties**"); and

        iii.    the Secured Notes Collateral Agent (as defined below) under that certain Collateral Agency and Intercreditor Agreement, dated as of December 6, 2016 (as amended, restated, supplemented, or otherwise modified, the "**Intercreditor Agreement**") by and among Wilmington Trust, National Association, as collateral agent (the "**Secured Notes Collateral Agent**") for each of all of the holders of First Lien Obligations (as defined in the Intercreditor Agreement) and all of the holders of Second Lien Obligations (as defined in the Intercreditor Agreement), the First Lien Indenture Trustee, the Second Lien Indenture Trustee, Cobalt, and each of the First Lien Notes Guarantors and the Second Lien Notes Guarantors.  For

purposes of this ~~Interim~~Final Order, the First Lien Notes Secured Parties and the Second Lien Notes Secured Parties are referred to collectively as the "**Prepetition Secured Parties**" and the First Lien Indenture Trustee, the Second Lien Indenture Trustee, and the Senior Notes Collateral Agent are referred to collectively as the "**Prepetition Agents**";

(c)    approving the stipulations by the Debtors as set forth in this ~~Interim~~Final Order with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(d)    subject to entry of the Final Order, and to the extent set forth herein and therein, waiving any right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or other applicable law;

(e)    modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement the terms of the Cash Collateral Orders;

(f)    scheduling a final hearing (the "**Final Hearing**") on the Motion ~~no later than 26 days after the Petition Date~~; and

(g)    waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this ~~Interim~~Final Order.

Upon due, proper, and sufficient notice of the Motion and the ~~interim hearing on the Motion (the "**Interim**~~Final Hearing~~")~~ having been given under the circumstances and the opportunity for objection having been provided; and the ~~Interim~~Final Hearing having been held on ~~December 14, 2017~~January ____, 2018; and it appearing that no other or further notice is necessary with respect to the Court's entry of this ~~Interim~~Final Order; and after considering all the pleadings filed with this Court; and upon the *Declaration of David D. Powell, Chief*

4

*Financial Officer of Cobalt International Energy, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), the evidence submitted, and the record made at the ~~Interim~~Final Hearing held on the Motion to approve this ~~Interim~~Final Order; and the Court having found and determined that the relief sought in the Motion is necessary ~~to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is~~and otherwise fair and reasonable and in the best interests of the Debtors, their estates and creditors, and is essential for the continued operation of the Debtors' businesses; all objections, if any, to the entry of this ~~Interim~~Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Petition Date</u>.  On December 14, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"), thereby commencing these chapter 11 cases (the "**Chapter 11 Cases**").  On December ~~[•],~~14, 2017, this Court entered the Interim Order and an order approving the joint administration of the Chapter 11 Cases.   The Debtors are continuing in the management and operation of their business and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner ~~or official committee of unsecured creditors (a "**Creditors' Committee**" and, together with any other statutory committee, the "**Committees**" and each, a "**Committee**")~~ has been appointed in these Chapter 11 Cases.  On December 21, 2017, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact whenever the context requires.  *See* Fed. R. Bankr. P. 7052.

B.    Jurisdiction and Venue.    This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  Notice of the ~~Interim~~Final Hearing on this ~~Interim~~Final Order and the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules and the Complex Case Procedures, and is sufficient under the circumstances.  Without limiting the foregoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier, or hand delivery, to parties in interest, including (i) the Office of the United States Trustee for Southern District of Texas (the "**U.S. Trustee**"); (ii) the Creditors' Committee and its counsel; (iii) entities listed as holding the 50 largest unsecured claims against the Debtors (on a consolidated basis); (~~iii~~iv) each of the Prepetition Agents and their respective counsel, if such counsel has filed a notice of appearance in these Chapter 11 Cases, or is otherwise known to the Debtors; (~~iv~~v) the Securities and Exchange Commission; (~~v~~vi) the Internal Revenue Service; (~~vi~~vii) the Office of the United States Attorney for the Southern District of Texas, (~~vii~~viii) the state attorneys general for states in which the Debtors conduct business; (~~viii~~ix) the Environmental Protection Agency and similar environmental state agencies for states in which the Debtors conduct business; and (~~ix~~x) any party that has requested notice pursuant to Bankruptcy Rule 2002.

6

D.  <u>Debtors' Stipulations</u>.  The Debtors admit, acknowledge, agree, and stipulate to the following (collectively, the "**Debtors' Stipulations**"), subject to the provisions of paragraph 7 of this ~~Interim~~Final Order:

1.  <u>Description of Prepetition Secured Obligations</u>.

(a)  *First Lien Notes Obligations*.  Prior to the Petition Date, pursuant to the First Lien Indenture and the other First Lien Notes Documents, Cobalt issued notes (the "**First Lien Notes**") to the First Lien Noteholders in the aggregate principal amount of $500,000,000.  Each of the First Lien Notes Guarantors provided an unconditional joint and several guaranty of the First Lien Notes Obligations (as defined below) arising under the First Lien Notes Documents.  As of the Petition Date, the First Lien Notes Obligors were truly and justly indebted to the First Lien Notes Secured Parties pursuant to the First Lien Notes Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $500,000,000 of outstanding principal under the First Lien Notes plus (ii) the Applicable Premium (as defined in the First Lien Indenture), provided that the Debtors do not provide any acknowledgments, agreements, or stipulations with respect to the amount or calculation of such Applicable Premium, plus (iii) accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the First Lien Notes Documents), and all other "Obligations" (as defined in the First Lien Indenture or any security document related thereto) under the First Lien Notes Documents (collectively, the "**First Lien Notes Obligations**").

(b)  *Second Lien Notes Obligations*.  Prior to the Petition Date, pursuant to the Second Lien Indenture and the other Second Lien Notes Documents, Cobalt

7

issued notes (the "**Second Lien Notes**") to the Second Lien Noteholders in the aggregate principal amount of $934,732,000.  Each of the Second Lien Notes Guarantors provided an unconditional joint and several guaranty of the Second Lien Notes Obligations (as defined below) arising under the Second Lien Notes Documents.  As of the Petition Date, the Second Lien Notes Obligors were truly and justly indebted to the Second Lien Notes Secured Parties pursuant to the Second Lien Notes Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $934,732,000 of outstanding principal under the Second Lien Notes plus (ii) the Applicable Premium (as defined in the Second Lien Indenture), provided that the Debtors do not provide any acknowledgments, agreements, or stipulations with respect to the amount or calculation of such Applicable Premium, plus (iii) accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Second Lien Notes Documents), and all other "Obligations" (as defined in the Second Lien Indenture or any security document related thereto) under the Second Lien Notes Documents (collectively, the "**Second Lien Notes Obligations** and, collectively with the First Lien Notes Obligations, the "**Prepetition Secured Obligations**").

> 2.    <u>Validity of Prepetition Secured Obligations and Prepetition Loan Documents</u>.  The Prepetition Secured Obligations constitute legal, valid, and binding obligations of the First Lien Notes Obligors and the Second Lien Notes Obligors, as applicable (collectively, the "**Obligors**").  No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or ranking of, the Prepetition Secured Obligations exist.  No portion of the Prepetition Secured Obligations (including any Applicable Premium) is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether

equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity.  The First Lien Notes Documents and the Second Lien Notes Documents (collectively, the "**Prepetition Loan Documents**") are valid and enforceable by each of the Prepetition Secured Parties against each of the applicable Obligors. The Prepetition Secured Obligations constitute allowed claims against the applicable Obligors' estates.  As of the Petition Date, the Debtors or their estates have no claim or cause of action against any of First Lien Notes Secured Parties or their agents, in such capacities, whether arising under applicable state, federal, or foreign law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), the Prepetition Secured Obligations, or the Prepetition Liens (as defined below).

3.      <u>Description of Prepetition Liens and Prepetition Collateral</u>.

(a)      Pursuant to and as more particularly described in the First Lien Notes Documents, the First Lien Notes Obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "**First Lien Notes Prepetition Liens**"), certain property described in the First Lien Notes Documents, including, without limitation, certain Cash Collateral, and other "Collateral" as such term is defined in the First Lien Indenture (collectively, the "**First Lien Notes Prepetition Collateral**"), including, without limitation, certain cash collateral as defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**").

(b)     Pursuant to and as more particularly described in the Second Lien Notes Documents, the Second Lien Notes Obligations are secured by, among other things, second priority liens or mortgages on, security interests in, and assignments or pledges of (the "**Second Lien Notes Prepetition Liens**" and, collectively with the Second Lien Notes Prepetition Liens, the "**Prepetition Liens**"), certain property described in the Second Lien Notes Documents, including, without limitation, certain Cash Collateral, and other "Collateral" as such term is defined in the Second Lien Indenture (collectively, the "**Second Lien Notes Prepetition Collateral**" and, collectively with the First Lien Notes Prepetition Collateral, the "**Prepetition Collateral**").

(c)     The Intercreditor Agreement governs, among other things: (i) the relative priority of the respective Prepetition Liens granted to holders of Prepetition Secured Obligations, (ii) the payment priority with respect to proceeds of the Prepetition Collateral, and (iii) the rights and remedies of the holders of Prepetition Secured Obligations with respect to debtor-in-possession financing, use of cash collateral, and adequate protection in a chapter 11 case;

4.     <u>Validity and Perfection of Prepetition Liens.</u>  The Prepetition Liens are (i) valid, binding, perfected, and enforceable liens on and security interests in the applicable Prepetition Collateral; (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity; and (iii) subject and subordinate only to (a) the Carve Out (as defined below) and (b) valid and enforceable liens and encumbrances in the Prepetition

Collateral that were expressly permitted to be senior to the applicable Prepetition Secured Parties' liens under the applicable Prepetition Loan Documents, that are valid, perfected, enforceable, and non-avoidable as of the Petition Date and that are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law ("**Permitted Liens**"), and each Debtor irrevocably waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, and enforceability of the Prepetition Liens or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations and the Prepetition Loan Documents.   The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents.  These stipulations are subject to entry of a final order.

5.     <u>Releases by Debtors</u>.  Subject to the rights and limitations set forth in paragraph 7 hereof, upon the occurrence of the Investigation Termination Date, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns (collectively, the "**Releasors**") shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the Prepetition Secured Parties, in all capacities under the Prepetition Loan Documents and applicable law, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest

11

(collectively, the "**Releasees**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description based on or arising from any events, facts or circumstances that have occurred or exist as of the date hereof arising from or relating in any way to any of the Prepetition Loan Documents or the obligations thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the Prepetition Liens or Prepetition Secured Obligations of the Prepetition Secured Parties.  The Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their respective representatives, successors, and assigns, and on each of the Debtors' estates and all entities and persons, including any creditors of the Debtors, and each of their respective representatives, successors, and assigns, including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code.

      E.    <u>Approved Budget</u>.  Attached hereto as **<u>Exhibit A</u>** is a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis (as may be revised from time to time with the prior written consent of the First Lien Indenture

Trustee and counsel to the ad hoc group of holders of First Lien Notes represented by Weil, Gotshal & Manges LLP (the "**First Lien Ad Hoc Group**"), which approval shall not be unreasonably withheld, the "**Approved Budget**"), with notice of any such revision promptly provided to counsel to the Creditors' Committee along with a copy of any revised Approved Budget. The Approved Budget includes and contains the Debtors' reasonable estimate of all operational receipts and all operational disbursements, fees, costs, and other expenses that will be payable, incurred, and/or accrued by any of the Debtors during the period covered by the Approved Budget. If the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group and the Debtors do not agree to an updated Approved Budget, the Approved Budget shall be the then existing Approved Budget or such Approved Budget as may be approved by the Court after a hearing. The Approved Budget is achievable and will allow the Debtors to operate in the Chapter 11 Cases and pay postpetition administrative expenses as when they come due. The Debtors shall be required to provide to the First Lien Indenture Trustee, and the advisors to each of the First Lien Ad Hoc Group and Second Lien Ad Hoc Group, and counsel to the Creditors' Committee, a Budget Variance Report (as defined below) in accordance with the provisions of paragraph 4(d) hereof.

F.     Use of Cash Collateral.   An immediate and critical need exists for the Debtors to use the Cash Collateral in accordance with the Approved Budget, for (i) working capital purposes, (ii) other general corporate purposes of the Debtors, and (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases.

G.     Consent by Prepetition Secured Parties. The Prepetition Agents have consented to, conditioned on the entry of this InterimFinal Order, the Debtors' proposed use of

Cash Collateral, on the terms and conditions set forth in this ~~Interim~~Final Order, and such consent is binding on all Prepetition Secured Parties.

H. <u>Adequate Protection</u>.  The adequate protection provided to the Prepetition Secured Parties, as set forth more fully in paragraph 4 hereof, for any diminution in the <u>aggregate</u> value of the Prepetition Secured Parties' <u>respective</u> interests in the Prepetition Collateral from and after the Petition Date <u>to the extent</u> resulting from the ~~imposition of the automatic~~ stay ~~pursuant to~~<u>under</u> section 362~~(a)~~ of the Bankruptcy Code, or the use, sale, or lease of the Prepetition Collateral (including any Cash Collateral) under section 363 of the Bankruptcy Code is consistent with, and authorized by, the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to protect the Prepetition Secured Parties from the diminution <u>in the aggregate value</u> of their respective interests in the ~~value of their~~ Prepetition Collateral and to obtain their consent to the use of such Cash Collateral.

I. <u>Good Cause Shown; Best Interest</u>.  The Debtors have requested immediate entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2.  Absent entry of this ~~Interim~~Final Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this ~~Interim~~Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful reorganization.

J. <u>No Liability to Third Parties</u>.  The Debtors stipulate and the Court finds that none of the Prepetition Secured Parties shall (i) be deemed to have liability to any third party

14

or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," "owner or operator," or "participant" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal, state, or applicable international statute or regulation) as a result of its consent to the use of Cash Collateral hereunder or (ii) owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors as a result of its consent to the use Cash Collateral hereunder.

K.     Section 552(b).  Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of the Prepetition Collateral (including any charter-hire receipts, earnings, insurance proceeds, or similar payments received by an applicable Obligor after the Petition Date).

Based upon the foregoing, and upon the record made before this Court at the InterimFinal Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     Motion Granted.  The Motion is granted on an interima final basis as herein provided and the use of Cash Collateral is authorized for each Debtor, subject and pursuant to the terms and conditions set forth in this InterimFinal Order.  Any objections to the Motion with respect to the entry of this InterimFinal Order that have not previously been

15

withdrawn, waived, or otherwise resolved are hereby denied and overruled. This ~~Interim~~Final Order shall become effective immediately upon its entry.

2.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this ~~Interim~~Final Order, including the Carve Out, the Debtors are authorized to use Cash Collateral in accordance with this ~~Interim~~Final Order and the Approved Budget during the period beginning with the Petition Date and ending on the Termination Date for:  (a) working capital purposes; (b) other general corporate purposes of the Debtors; (c) the satisfaction of the costs and expenses of administering the Chapter 11 Cases; and (d) for the purposes identified in the Approved Budget.

3.      Termination Date.  The authority for use of Cash Collateral under this ~~Interim~~Final Order shall terminate (the "**Termination Date**") upon the expiration of the Notice Period after an Event of Default, in each case in accordance with paragraphs 5 and 6 hereof (a "**Termination Event**").

4.      Prepetition Secured Parties' Adequate Protection.  The Prepetition Secured Parties are entitled pursuant to sections 361 and 363(c) of the Bankruptcy Code to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) for any diminution in the aggregate value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date ~~in any way, including arising from the imposition of the automatic~~to the extent that such diminution is the result of the stay ~~pursuant to~~under section 362~~(a)~~ of the Bankruptcy Code, or the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral) under section 363 of the Bankruptcy Code, and in each case subject and subordinate to the Carve Out ("**Diminution in Value**").  The Prepetition Agents, as applicable and for the benefit of themselves and for the

16

benefit of the respective Prepetition Secured Parties in exchange for consent to the use of the Prepetition Collateral, are hereby granted, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, the following:

(a) <u>Adequate Protection Liens</u>.  To the extent set forth below, valid, binding, enforceable, and perfected security interests in and liens upon (the "**Adequate Protection Liens**") all property, excluding any property that was unencumbered by the Prepetition Agents, the Prepetition Secured Parties, or the Prepetition Loan Documents as of the Petition Date, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, vessels, charter-hire receipts, earnings, insurance policies and proceeds, fixtures, deposit accounts, commercial tort claims (excluding commercial tort claims that were unencumbered as of the Petition Date), securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including (excluding equity interests in subsidiaries and non-wholly-owned subsidiaries that were unencumbered as of the Petition Date), money, investment property, choses in action, Cash

17

Collateral, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, and the proceeds of causes of action (~~including, subject to entry of the Final Order,~~excluding proceeds of causes of action arising under sections 502(d), 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code (collectively, ~~subject to the stated exclusions,~~ the "**Avoidance Actions**")), and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, including, without limitation, the products, proceeds, and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property, collectively with the Prepetition Collateral, the "**Collateral**") without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements, or other agreements. The foregoing Collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this ~~Interim~~Final Order, would not be enforceable pursuant to applicable law, but shall include the proceeds thereof, which Adequate Protection liens are granted thereupon. The Adequate Protection Liens granted to the Prepetition Agents, for the benefit of themselves and the respective Prepetition Secured Parties, shall be senior liens, shall rank immediately senior to the security interests and liens under the respective Prepetition Loan Documents, except the Adequate Protection Liens shall be subject and subordinate to (i) the Carve Out and (ii) Permitted Liens. The Adequate Protection Liens shall be subject to the Intercreditor Agreement, and amounts received on account thereof shall be subject to section 4.1 thereof.

(b)     _Superpriority Claims_.    To the extent set forth below, allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of

18

the Bankruptcy Code (the "**Superpriority Claims**").  Any Superpriority Claims shall be subject and subordinate to the Carve Out, and shall be allowed claims against the applicable Debtors (jointly and severally) with priority over any and all administrative expenses and all other claims against such Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  Subject to the Final Order, *provided that* the Superpriority Claims shall not be payable from and or have recourse to the proceeds of the Avoidance Actions.  The allowed Superpriority Claims shall be payable from and have recourse to all Collateral and unencumbered pre- and postpetition property of the applicable Debtors (subject to the foregoing sentence), commercial tort claims, or equity interests in subsidiaries and non-wholly-owned subsidiaries that were unencumbered as of the Petition Date.  Other than the Carve Out, no cost or expense of administration under sections 105, 503, or 507 of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claims.  The Superpriority Claims granted to the Prepetition Agents for the benefit of the Prepetition Secured Parties shall be subject to the Intercreditor Agreement, and amounts received on account thereof shall subject to Section 4.1 thereof.

19

(c)    Fees and Expenses.  The Debtors shall pay (or shall have paid, as applicable) in full, in cash and in immediately available funds all reasonable and documented fees, costs and expenses whether incurred prior to, on or after the Petition Date, without duplication, incurred by the (i) First Lien Indenture Trustee, including fees and expenses for services performed in connection with these Chapter 11 Cases, and including fees and expenses of (A) Wilmer Cutler Pickering Hale and Dorr LLP, as counsel to the Trustee, and (B) one local counsel (if any), (ii) the First Lien Ad Hoc Group, including fees and expenses of (A) Weil, Gotshal & Manges LLP, (B) PJT Partners, as financial advisor, and (C) one local counsel (if any), (iii) Second Lien Indenture Trustee, including fees and expenses for services performed in connection with these Chapter 11 Cases, and its counsel (including one local counsel, if any), and (iv) the ad hoc group of Second Lien Notes (the "**Second Lien Ad Hoc Group**") represented by Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**"), and including fees and expenses of (A) Akin Gump, (B) Moelis & Company LLC, and (C) one local counsel (if any), (collectively, the "**Fee Parties**") (x) promptly upon entry of this ~~Interim~~Final Order in the full amounts set forth in any outstanding invoices from the Fee Parties received at least five (5) business days prior to entry of the ~~Interim~~Final Order (provided that any such unpaid invoices as of the Petition Date were provided to the U.S. Trustee), and (y) thereafter, within ten (10) business days after the presentment of any such invoices to the Debtors, the U.S. Trustee, and counsel to the Creditors' Committee ~~(if any)~~.  The Fee Parties shall not be required to comply with the U.S. Trustee fee guidelines or file any fee applications with the Court, but shall provide copies of their invoices to the U.S. Trustee and counsel to the Creditors' Committee ~~(if any)~~.  Invoices submitted pursuant to this paragraph shall include the number of hours billed and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; provided, however,

20

that any such invoice  may be redacted to protect privileged, confidential or proprietary information and shall not be required to contain individual time detail.  If it is subsequently determined that such fees and expenses were not payable under §section 506 of the Bankruptcy Code, such amounts will instead be deemed recharacterized as repayments of principal in reduction of the applicable Obligations; and further provided that if an Obligation is determined to be wholly unsecured, any amounts paid under this paragraph shall be returned to the Debtors within 7seven (7) days of any such final determination.  Further provided, that any creditor who is obliged to return funds under this paragraph may assert that such amounts were otherwise payable as adequate protection and the Court will determine the validity of any such assertion.

(d)     Reporting and Budget Compliance.  Every week (beginning with the fourth full week after the Petition Date), on the fourth business day of such week, the Debtors shall deliver to the advisors to (i) the First Lien Indenture Trustee, (ii) the First Lien Ad Hoc Group, and (iii) the Second Lien Ad Hoc Group, and (iv) the Creditors' Committee, a variance report from the previous week comparing the actual cash receipts and disbursements of the Debtors with the receipts and disbursements in the Approved Budget on a line item basis (the "**Budget Variance Report**").  Each Budget Variance Report shall be cumulative, in that it shall include all previous weeks in the current Budget Variance Report. Any material variance shall be accompanied by a qualitative explanation.

(e)     Reporting.  The Debtors shall provide the Prepetition Agents, the First Lien Ad Hoc Group's advisors, and Second Lien Ad Hoc Group's advisors, and the Creditors' Committee's advisors with (a) any weekly financial reporting given to the U.S. Trustee, and (b) any additional reports reasonably requested by the First Lien Indenture Trustee and advisors to the First Lien Ad Hoc Group, including but not limited to (i) periodic updates

21

regarding a sale or auction process, (ii) bidders in connection thereto, and (iii) any other information reasonably requested by the First Lien Indenture Trustee or advisors to the First Lien Ad Hoc Group in connection to these Chapter 11 Cases; *provided*, that any such report related to subparts (i) or (ii) shall be provided on an "advisors' eyes only" basis and subject to and limited by in all respects any applicable confidentiality arrangement.   Except as otherwise set forth herein, (x) the First Lien Indenture Trustee may share any reports received from the Debtors with the First Lien Noteholders and their advisors, and the Second Lien Indenture Trustee may share any reports received from the debtors with the Second Lien Noteholders and their advisors, and (y) advisors to the First Lien Ad Hoc Group may share any reports received from the Debtors hereunder with the advisors to the Second Lien Ad Hoc Group and vice versa.

> (f)     Access to Records and Collateral.   Upon reasonable notice, at reasonable times during normal business hours, the Debtors shall, subject to mutually agreeable confidentiality agreements, permit the professional advisors to the Prepetition Secured Parties and the Creditors' Committee (i) to have access to and inspect the Debtors' properties and other Collateral of any Debtor against whom they are granted Adequate Protection Liens or Superpriority Claims under this Interim Final Order, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' financial advisors and, if and when reasonably practicable, officers, whom the Debtors shall make reasonably available, in each case excluding (w) all privileged and attorney-client work product, (x) trade secrets, (y) commercially sensitive information in relation to the sale process contemplated under the Bid Procedures and Scheduling Motion, and (z) information that the Debtors are otherwise prohibited from disclosing pursuant to a third-party confidentiality agreement.

22

(g)    First Lien Interest Payments.  The Debtors shall pay to the First Lien Indenture Trustee (for the ratable benefit of the First Lien Noteholders), on an ongoing monthly basis, the cash payment of interest at the non-default contract rate (the "**Interest Payments**") (whether or not such Interest Payments are included in the Approved Budget).  The Interest Payments shall not be subject to avoidance, reduction, disallowance, disgorgement, counterclaim, or subordination; *provided* that if the Court finally determines that the First Lien Noteholders are not entitled to receive all or any portion of the Interest Payments under section 506(b) of the Bankruptcy Code or otherwise, such amounts paid to or for the benefit of the First Lien Indenture Trustee and individual First Lien Noteholders, as applicable, will instead be deemed recharacterized as repayments of principal in reduction of the applicable First Lien Obligations; *provided, further*, that, in the event that there is a successful challenge resulting in a Final Judgment[4] to the validity of the First Lien Notes Obligations, any amounts paid under this paragraph shall be returned to the Debtors within seven (7) calendar days of such Final Order.

(h)    Right to Seek Additional Adequate Protection.  This InterimFinal Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the respective Prepetition Secured Parties to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

---

[4] "**Final Judgment**" shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided that, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

23

5.     <u>Events of Default</u>.    The occurrence and continuation of any of the following events, unless waived by the First Lien Indenture Trustee, shall constitute an event of default (each an "**Event of Default**" and collectively, the "**Events of Default**"):

(a)     Any Debtor shall file a motion seeking any modification or extension of this ~~Interim~~Final Order without the prior written consent of the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group, which shall not be unreasonably withheld.

(b)     Any Debtor shall have asserted, in a pleading filed with the Court (or another court of competent jurisdiction), a claim or challenge against any of the Prepetition Secured Parties in any way materially contrary to any of the Debtors' acknowledgements, stipulations, and releases contained herein.

(c)     The Court shall have entered an order appointing a chapter 11 trustee or any examiner with expanded powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Prepetition Agents and counsel to the First Lien Ad Hoc Group.

(d)     The Court enters an order converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, unless the Prepetition Agents and counsel to the First Lien Ad Hoc Group have consented to such order in writing.

(e)     The Court shall have entered (x) an order or orders of the Court granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets or (y) a postpetition judgment or judgments of any U.S. court against any Debtor, in each case, which have a value in the aggregate in excess of $1,000,000.

(f)     The Court shall have entered an order (x) reversing, amending, supplementing, vacating, or otherwise modifying this ~~Interim~~Final Order without the consent of the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group or (y) avoiding or requiring repayment of any portion of the payments made to the respective Prepetition Secured Parties pursuant to the terms hereof, unless such order is entered in connection with any successful Claim and Defense (as defined below).

(g)     The Debtors fail to make any payment when due under Paragraph 4 (Prepetition Secured Parties' Adequate Protection) hereof.

24

DOCS_SF:~~95707.1~~95707.4 15117/002

(h)     As measured at the conclusion of each three-week period for which Budget Variance Reports are required (i.e., week 4, week 7, week 10, etc.), the Debtors' total operating disbursements for the applicable Budget Variance Report period exceed 115% of the amount, exclusive of professional fees and other restructuring related expenses incurred, set forth in the Approved Budget for the applicable Budget Variance Report period (which amount, for the avoidance of doubt, shall take into account any positive or negative variances—i.e., the amount by which total operating disbursements is less or greater than 100% of the budgeted amount—from any prior testing period that may be carried forward and applied to the current period), unless the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group has provided a written waiver of such excess.

(i)     The Debtors shall have filed a motion (x) seeking to obtain credit or incur indebtedness that is, or is proposed to be, secured by a security interest, mortgage, or other lien on all or any portion of the Prepetition Collateral that is equal or senior to any security interest, mortgage, or other lien of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens and the Prepetition Liens), or entitled to administrative expense priority status that is equal or senior to that granted to the Prepetition Secured Parties herein, unless consented to in writing by the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group; or (y) seeking authority to use Cash Collateral on a non-consensual basis, unless the Debtors have paid the First Lien Secured Obligations in full to the satisfaction of the First Lien Indenture Trustee and counsel the First Lien Ad Hoc Group or as determined by the Court.

(j)     The payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by First Lien Notes Secured Parties.

(k)     Three (3) business days after the Debtors and their lead restructuring counsel receive written notice from the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group that any of the following milestones, which may be extended by written agreement as between the Debtors, the First Lien Indenture Trustee, and counsel to the First Lien Ad Hoc Group, are not met by the Debtors:

(i)     **Final Order**: January 23, 2018 (Petition Date + 40 days), to the extent the Final Order has not been entered by this Court.(ii) **Interim Order Effectiveness**:   The date this Interim Order ceases to be in full force and effect for any reason to the extent the Final Order has not been entered at

25

such time. **Order Effectiveness**:  The date this Final Order ceases to be in full force and effect for any reason.

(iii) **Bid Procedures and Scheduling Motion Filed**:  11:59 p.m. on the 1st day after the Petition Date, to the extent the Debtors have not filed a motion (the "**Bid Procedures and Scheduling Motion**") with the Court seeking approval of bid procedures for the sale of some or substantially all of the Debtors' assets or equity (the "**Sale**") and assumption, assignment, and sale of contracts pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan of reorganization (the "**Plan**"), including approval of certain dates and deadlines related to the sale.  The Bid Procedures and Scheduling Motion and any related order, exhibits or supplements shall be in form and substance reasonably satisfactory to the First Lien Indenture Trustee, counsel to the First Lien Ad Hoc Group, and counsel to the Second Ad Hoc Group.

(ii) (iv) **Bid Procedures and Scheduling Order**:  January 27, 2018 (Petition Date + 45), to the extent the Court shall not have entered an order approving the Bid Procedures and Scheduling Motion (the "**Bid Procedures and Scheduling Order**"), which shall be in form and substance reasonably satisfactory to the First Lien Indenture Trustee, counsel to First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group each in its reasonable discretion, and which shall not have been vacated, reversed, modified, amended or stayed unless so modified in a manner reasonably satisfactory to such parties.

(iii) (v) **Plan Filing**:  March 24, 2018 (Petition Date + 100), to the extent the Debtors have not filed the Plan (and related disclosure statement, each in form and substance reasonably acceptable to the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group) that satisfies or reinstates the First Lien Notes Obligations in accordance with the Bankruptcy Code.

(iv) (vi) **Effective Date or Sale Consummated**:  June 29, 2018 (Petition Date + 197), to the extent that (x) the effective date of the Plan has not occurred pursuant to a confirmation order in a form and substance reasonably satisfactory to the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group, or (y) the Sale has not been consummated pursuant to a sale order in a form and substance reasonably satisfactory to the First Lien Indenture Trustee, counsel to the First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group.

(v) (l) The Debtors shall have failed to comply with any other provision hereof in a material respect.

26

DOCS_SF:95707.195707.4 15117/002

6.      Rights and Remedies upon Event of Default.  Upon the occurrence and during the continuance of an Event of Default, the Debtors, upon ~~three~~five (~~3~~5) business days' written notice to the Debtors, their lead restructuring counsel, the U.S. Trustee, and ~~any~~the Creditors' Committee (the "**Notice Period**"), shall immediately cease using Cash Collateral and the First Lien Indenture Trustee or the First Lien Ad Hoc Group may in accordance with the terms and conditions of this ~~Interim~~Final Order, the Prepetition Loan Documents, or the Intercreditor Agreement, revoke the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral hereunder; *provided*, *however*, that during the Notice Period (a) the Debtors shall have the opportunity to cure any alleged Event of Default, and (b) the Debtors or any party in interest shall be permitted to seek relief, including the non-consensual use of Cash Collateral, from the Court on an emergency basis.  Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any Prepetition Loan Document, the Intercreditor Agreement, or this ~~Interim~~Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.  Notwithstanding the occurrence of the Event of Default or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this ~~Interim~~Final Order shall survive the termination of this ~~Interim~~Final Order.

7.      Effect of Stipulations on Third Parties.  The stipulations and admissions contained in this ~~Interim~~Final Order, including, without limitation, in paragraph D hereof, shall be binding upon the Debtors and their affiliates and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any Debtor) in all circumstances except in the event of a successful challenge as described herein.  The stipulations, releases, waivers, and admissions contained in this ~~Interim~~Final Order, including, without limitation, in paragraph D hereof, shall be binding upon all other parties in interest, including,

27

without limitation, any Committee and any other person or entity acting (or purporting to act) on behalf of the Debtors' estate, unless and except to the extent that (i) upon notice to the Debtors, the Prepetition Agents, a party in interest with proper standing ~~(which has been granted by order of the Court or another court of competent jurisdiction)~~ has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, paragraph 10 hereof) by no later than ~~the earliest of (a) seventy-five (75) calendar~~ one hundred twenty (120) days after the ~~date of entry of this Interim Order, and (b) sixty (60) days after~~ formation of the Creditors' Committee ~~(if any) is formed~~, subject to extension by written agreement of the applicable Prepetition Agent or for cause (the "**Investigation Termination Date**"), (A) challenging the validity, enforceability, priority, or extent of the Prepetition Secured Obligations or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers, or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests, or defenses to the extent released by the Debtors under paragraph D of this ~~Interim~~ Final Order (items (A) and (B) collectively, each a "**Claim and Defense**" and collectively, "**Claims and Defenses**") against any of the Prepetition Secured Parties or their affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Loan Documents or the Prepetition Collateral, and (ii) the Court enters a final, non-appealable order ~~ruling in favor of the plaintiff~~ sustaining any such Claims and Defenses in the Debtors' chapter 11 cases or any such duly filed adversary proceeding; *provided* that any Claim and Defense shall set forth with specificity the basis for such Claim and Defense and any Claim and Defense not so specified prior to the expiration of the Investigation Termination Date shall be forever deemed waived, released, and barred; *provided, further,* that if a Claim and Defense relates only to certain or part of the Prepetition Secured Obligations but not others (the

28

"**Unaffected Secured Obligations**") then such Claim and Defense shall not toll the Investigation Termination Date as against the Unaffected Secured Obligations.  If no such adversary proceeding or contested matter is timely filed, (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (y) the liens and security interests securing the Prepetition Secured Obligations shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected, not subject to recharacterization, subordination, or avoidance, and (z) the Prepetition Secured Obligations, the liens and security interests securing the Prepetition Secured Obligations, and the Prepetition Secured Parties shall not be subject to any other or further challenge or Claim and Defense, by any party in interest seeking to exercise the rights of any Debtor's estate, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for the Debtor).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph ~~D~~C hereof shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Investigation Termination Date in accordance with this ~~Interim Order.  Nothing in this Interim Order vests or confers on any "person" (as defined in the Bankruptcy Code), including any Committee.~~Final Order.  The Creditors' Committee is hereby vested and conferred with standing or authority to bring, pursue, or settle any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Secured Obligations~~, and an order~~

29

~~of the Court conferring such standing on the Committee or other party-in-interest shall be a prerequisite for the filing of and prosecution of Claims and Defenses by the Committee or such other party-in-interest.~~  . Notwithstanding anything in this Final Order to the contrary (including, without limitation, the Debtors' Stipulations and paragraph 4), nothing in this Order shall (i) preclude any party in interest from proposing, pursuing, soliciting or obtaining confirmation of a chapter 11 plan that reinstates the First Lien Notes or the Second Lien Notes (any such plan, a "Reinstatement Plan") or (ii) determine whether and to what extent (A) the First Lien Notes Secured Parties and Second Lien Notes Secured Parties are entitled to an allowed claim for the Applicable Premium under a Reinstatement Plan or (B) the First Lien Notes Secured Parties are entitled to keep Interest Payments at the default contract rate under a Reinstatement Plan.

8.      Carve Out.

(a)      Carve Out.  As used in this ~~Interim~~Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee ~~(if any)~~ pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the Prepetition Agents of a Carve

30

Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Professional Fees of Professional Persons in an aggregate amount not to exceed $7,500,000 incurred after the first business day following delivery by the Prepetition Agents of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agents to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

        (b)    <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the Prepetition Agents to the Debtors with a copy to counsel to the Creditors' Committee (the "**Termination Declaration Date**"), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  The Debtors shall also deposit and hold cash in an amount equal to the Post-Carve Out Trigger Notice Cap in a segregated account in trust to pay such Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the

obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agents for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' prepetition secured creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agents for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' prepetition secured creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Prepetition Loan Documents, ~~this~~the Interim Order, or ~~the~~this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth herein, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the Prepetition Agents or the Debtors' prepetition creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition Loan Documents, ~~this~~the Interim Order, or ~~the~~this Final Order, following delivery of a Carve Out Trigger Notice, the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve

32

Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Agents for application in accordance with the Prepetition Loan Documents.   Further, notwithstanding anything to the contrary in this ~~Interim~~Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute, increase, or reduce Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors.   For the avoidance of doubt and notwithstanding anything to the contrary herein, in the Final Order, or the Prepetition Loan Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Secured Obligations, the Adequate Protection Liens, and the Superiority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(c)      Payment of Allowed Professional Fees Prior to the Termination Declaration Date.   Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Professional Fees shall not reduce the Carve Out.

(d)      Payment of Carve Out On or After the Termination Declaration Date.   Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Professional Fees shall permanently reduce the Carve Out on a dollar for dollar basis.

9.      No proceeds of Collateral or the Carve Out shall be used for the purpose of: (a) ~~investigating,~~ objecting to, challenging, or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority, enforceability, or avoidability of the

33

Prepetition Secured Obligations, or any liens or security interests with respect thereto, or any other rights or interests of any of the Prepetition Secured Parties, whether in their capacity as such or otherwise, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against any of the Prepetition Secured Parties (whether in their capacity as such or otherwise), including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; or (b) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court; *provided* that prior to the Termination Declaration Date, up to $~~50,000~~250,000 of Cash Collateral shall be made available to the Creditors' Committee for fees and expenses incurred in connection with any investigation of (but not preparing, drafting or filing any documents or pleadings objecting to, challenging, or contesting in any manner, or raising any defenses to) the liens and claims of the Prepetition Secured Parties (the "**Committee Investigation Budget**"). ~~No claim for amounts incurred in connection with such activities (including amounts incurred in connection with an investigation in excess of the Committee Investigation Budget) shall be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A)~~Notwithstanding the foregoing, nothing herein shall be deemed to: (a) limit the ability of the Committee Professionals to be paid from unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition Secured Parties; (b) preclude the Court from awarding fees and expenses to the Committee Professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with the confirmation of any plan.

10.     <u>No Waiver of Prepetition Secured Parties' Rights; Reservation of Rights</u>. Except as set forth herein, this ~~Interim~~<u>Final</u> Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any of the Prepetition Secured Parties' rights with respect to any person or entity other than the Debtors, or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the Prepetition Secured Parties are expressly reserved and entry of this ~~Interim~~<u>Final</u> Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of:

(a)     the Prepetition Secured Parties' rights under any of the Prepetition Loan Documents and the Intercreditor Agreement;

(b)     the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors;

(c)     the Prepetition Secured Parties' rights to seek modification of the grant of adequate protection provided under this ~~Interim~~<u>Final</u> Order so as to provide different or additional adequate protection at any time;

(d)     any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law including, without limitation, to the right to: (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with extended powers; or (iii) propose, subject to section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; and

(e)     any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

35

11.     Prepetition Agents' Right to Credit Bid.  Subject to the Prepetition Loan Documents, the Intercreditor Agreement, and entry of a successful Claim and Defense, each of the Prepetition Agents shall have ~~an unqualified~~the right to credit bid to the extent provided for in section 363(k) of the Bankruptcy Code up to the full amount of any remaining Prepetition Secured Obligations (as applicable) in the sale of any Prepetition Collateral ~~or~~whether pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; provided further that each of the Prepetition Agents shall be deemed a qualified bidder (or such analogous term) in connection with any such sale.

12.     Further Assurances.   The Debtors shall execute and deliver to the Prepetition Agents all such agreements, financing statements, instruments, and other documents as they may reasonably request to evidence, confirm, validate, or evidence the perfection of the Adequate Protection Liens granted pursuant hereto.

13.     506(c) Waiver.  ~~Subject to the entry of the Final Order, except~~Except to the extent of the Carve Out and subject to the payment of all administrative expenses pursuant to the Approved Budget through the Termination Declaration Date, no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases ~~at any time~~during the term of this Final Order shall be charged against any Prepetition Secured Party, any of the Prepetition Secured Obligations, any of their respective claims, or the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of the affected Prepetition Agent, and no such consent shall be implied from any

36

Case 17-36709   Document 245   Filed in TXSB on 01/19/18   Page 56 of 65

other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives.

14.     Restrictions on Granting Postpetition Claims and Liens.  Except with respect to the Carve Out, no claim or lien that is *pari passu* with or senior to the claims and liens of any of the Prepetition Secured Parties shall be offered by any Debtor, or granted, to any other person, except in connection with any financing used to pay in full in cash the claims of the First Lien Notes Secured Parties or that would constitute a Permitted Lien with respect to the Debtor against whom such lien is granted; *provided* that anything in the foregoing is consistent with the Intercreditor Agreement.

15.     Automatic Effectiveness of Liens.  The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable, and effective by operation of law as of the Petition Date, without any further action by the Debtors or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages (including ships' mortgages), filings with the U.S. Patent and Trademark Office, the U.S. Copyright Office, or the Library of Congress, or other documents or the taking of any other actions.  If the First Lien Indenture Trustee hereafter reasonably requests that the Debtors execute and deliver to them financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the Adequate Protection Liens, as applicable, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the First Lien Indenture Trustee is hereby authorized to file or record such

37

documents in their discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this ~~Interim~~Final Order.

16.     ~~No Marshaling/Application of Proceeds.  Subject to the entry of the Final Order, in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral; *provided* that any Prepetition Secured Party shall be entitled to seek to apply such marshaling or other similar doctrines with respect to another Prepetition Secured Party~~Reserved.

17.     <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases for any Prepetition Secured Obligation or any Superpriority Claim or other claim arising in connection with this ~~Interim~~Final Order. Notwithstanding any order entered by the Court in relation to the establishment of a bar date, the Prepetition Agents, on behalf of themselves and Prepetition Secured Parties, as applicable, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Cases for any such claims; for avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the applicable Debtors, rather than as separate proofs of claim against each such Debtor.  Any proof of claim filed by a Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective Prepetition Secured Parties.

18.     <u>Binding Effect</u>.  Subject to paragraph 7 hereof, the provisions of this ~~Interim~~Final Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties to the extent and as set forth herein, the Debtors, any Committee, and their respective

38

successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).  To the extent permitted by applicable law, this ~~Interim~~Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this ~~Interim~~Final Order.

19.     Survival.  The provisions of this ~~Interim~~Final Order and any actions taken pursuant hereto shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing any of the Chapter 11 Cases, and, with respect to the entry of any order as set forth in clause (ii) or (iii) of this paragraph, the terms and provisions of this ~~Interim~~Final Order as well as the Adequate Protection Liens and Superpriority Claims shall continue in full force and effect notwithstanding the entry of any such order.

20.     Effect of Dismissal of Chapter 11 Cases.  If any of the Chapter 11 Cases is dismissed, converted, or substantively consolidated, such dismissal, conversion, or substantive consolidation of these Chapter 11 Cases shall not affect the rights of the Prepetition Secured Parties under this ~~Interim~~Final Order, and all of their rights and remedies hereunder shall remain in full force and effect as if the Chapter 11 Case had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (a) subject to paragraph 7 hereof, the Prepetition Liens,

39

Adequate Protection Liens, and Superpriority Claims granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~Final Order (and that such Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties), and (b) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims referred to in this ~~Interim~~Final Order.

21.    <u>Order Effective</u>.  This ~~Interim~~Final Order shall be effective as of the date of the signature by the Court.

22.    <u>Controlling Effect of ~~Interim~~Final Order</u>.  To the extent any provision of this ~~Interim~~Final Order conflicts or is inconsistent with any provision of the Motion, the provisions of this ~~Interim~~Final Order shall control to the extent of such conflict.

~~23.    Final Hearing.  The Final Hearing on the Motion shall be heard on January 11, 2018 at 2:00 p.m. at the United States Bankruptcy Court for the Southern District of Texas.  The Debtors shall promptly serve a notice of the Final Hearing, together with copies of this Interim Order and the Motion (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Hearing and any other party that has filed a request for notices with this Court.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002, and shall be filed with the Clerk of the Court, in each case so as to be received by 4:00 p.m. on the date that is no later than seven (7) days before the Final Hearing.~~

23.    ~~24.~~ Nothing in this order primes any lien that is senior in priority to the Prepetition Liens.

40

24. ~~25.~~ Certain reservations of rights are attached to this Order as Exhibit "B". Those reservations are preserved as set forth on that exhibit and incorporated into this Order.

Dated: _____, ~~2017~~2018

_____
UNITED STATES BANKRUPTCY JUDGE

41

**Exhibit A**

**<u>Exhibit B</u>**

**Reservation of Rights for Department of the Interior and Coast Guard.**

Notwithstanding any other provisions of this ~~Interim~~Final Order or its implementing documents, this ~~Interim~~Final Order shall not enlarge, abridge, or otherwise modify the Debtors' rights and obligations with respect to 28 U.S.C § 959(b) in any way, and the rights of the Debtors, the Department of the Interior ("Interior"), the Coast Guard, any other federal agency, or any other party in interest with respect to any compliance obligations that may apply, including, without limitation, with respect to decommissioning or permanent abandonment obligations, monitoring and maintenance obligations, and/or financial assurance obligations (collectively, but without limitation, the "Mandatory Compliance Obligations"), associated with interests in active and inactive federal oil and gas leases, grants of right-of-way, and rights-of-use and easements on the Outer Continental Shelf (collectively, the "Federal Leases and Grants") are fully preserved.

**United States Reservation of Rights.** Subject to Section 553 of the Bankruptcy Code and applicable law, nothing in this ~~Interim~~Final DIP Order shall enlarge, abridge, or otherwise modify in any way any rights to setoff or recoupment that the United States may have, all of which are expressly preserved.

**Reservations Regarding OCS Liens.** Notwithstanding anything to the contrary in this ~~Interim~~Final Order, the liens granted in this ~~Interim~~Final Order, if any, against any of the Debtors' interests in any active or inactive Federal Leases and Grants on the Outer Continental Shelf shall not grant the Prepetition Secured Parties any greater rights or interests in the applicable Federal Leases and Grants than those to which the Debtors are entitled.  For the avoidance of any doubt, to the extent that any Prepetition Secured Parties foreclose on any prepetition liens or postpetition liens (including any Adequate Protection Liens), the rights and obligations, if any, of the Debtors, the Prepetition Secured Parties, the United States, and any

other party in interest in respect of any regulatory and contractual requirements that apply to such

Federal Leases and Grants shall be preserved, subject to any defenses that may apply.

DOCS_SF:95707.195707.4 15117/002

Document comparison by Workshare 9 on Wednesday, January 17, 2018 10:48:50 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/95707/1 |
| Description | DOCS_SF-#95707-v1-Cobalt_-_Final_Cash_Collateral_Order |
| Document 2 ID | PowerDocs://DOCS_SF/95707/4 |
| Description | DOCS_SF-#95707-v4-Cobalt_-_Final_Cash_Collateral_Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 162 |
| Deletions | 150 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 320 |