# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
01/25/2018

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| COBALT INTERNATIONAL ENERGY, INC., *et al.*,[1] | ) | Case No. 17-36709 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Re: Docket Nos. 15** |

## ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE DEBTORS' DISCLOSURE STATEMENT AND PLAN CONFIRMATION AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) approving the proposed bidding procedures attached as **Schedule 1** to this Order (the "Bidding Procedures"); (b) approving the Debtors' selection of one or more Stalking Horse Bidders, if any, and the provision of Bid Protections, if any, pursuant to the terms of this Order; (c) scheduling an auction; (d) approving the form and manner of notice thereof; (e) scheduling dates and deadlines in connection with the approval of the Disclosure Statement and confirmation of a Plan; and (f) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this court having found that this is a core proceeding pursuant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, L.P. (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316). The Debtors' service address is: 920 Memorial City Way, Suite 100, Houston, Texas 77024.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

KE 51490795

to 28 U.S.C. § 157(b)(2); and this court having found that it may enter a final order consistent with Article III of the United States Constitution; and this court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this court (the "Hearing"); and this court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this court; and after due deliberation and sufficient cause appearing therefor, THE COURT FINDS THAT:

A.    The findings of fact and conclusions of law herein constitute the court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory bases for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3020, and 6004, and Bankruptcy Local Rule 1075-1.

D.      Notice of the Motion, the Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.  Notice of the Motion has been given to: (i) the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the indenture trustee for the Debtors' first lien notes; (iv) the indenture trustee for the Debtors' second lien notes; (v) the indenture trustee for the Debtors' 2.625% senior convertible notes; (vi) the indenture trustee for the Debtors' 3.125% senior convertible notes; (vii) counsel to the parties referenced in clauses (iii) to (vi); (viii) counsel to the ad hoc group of first lien notes, Weil, Gotshal & Manges LLP, 767 5th Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, TX 77002, Attn: Chris Lopez (chris.lopez@weil.com); (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) all applicable state and local taxing authorities; (xii) each governmental agency that is an interested party with respect to the Sale; (xiii) all parties who have expressed a written interest in some or all of the Assets; (xiv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (xv) the United States Bureau of Ocean Energy Management; (xvi) the counterparties to any executory contract or unexpired lease to which a Debtor is a party (the "Contract Counterparties"); (xvii) all known creditors of the Debtors; (xviii) all registered holders of equity securities in the Debtors; and (xix) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  Accordingly, no further notice of the Motion, the Hearing, or this Order is necessary or required.

E.     The Debtors have articulated good and sufficient reasons for this court to: (a) approve the Bidding Procedures; (b) approve the selection of one or more Stalking Horse Bidders, if any, and related Bid Protections, if any, subject to the terms of this Order; (c) schedule the Bid Deadline and the Auction; and (d) approve the form and manner of notice of the Auction Notice.

F.     The Bidding Procedures are reasonable and appropriate and represent the best available method for maximizing value for the benefit of the Debtors' estates.

G.     It may be necessary to induce one or more third-party bidders to serve as a Stalking Horse Bidder and provide Bid Protections pursuant to the terms of this Order.

H.     The Bidding Procedures were negotiated at arm's length, in good faith, and without collusion. The Bidding Procedures balance the Debtors' interests in emerging expeditiously from the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estate, their creditors, and other parties in interest.

I.     The Auction Notice, substantially in the form attached to the Motion as **Exhibit B**, and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction.

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as provided herein.

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the court at the hearing on the Motion or by stipulation filed with the court, are overruled.

I.      **Important Dates and Deadlines.**

3.      The Confirmation Schedule is approved, as modified herein.

4.      Unless extended by the Debtors, the deadline by which all bids for the Assets must be *actually received* by the parties specified in the Bidding Procedures is **February 22, 2018, at 5:00 p.m., prevailing Central Time**.

5.      The deadline to object to the Disclosure Statement is set for **February 20, 2018, at 4:00 p.m., prevailing Central Time**.

6.      The hearing to consider approval of the Disclosure Statement shall occur on **February 22, 2018, at 9:00 a.m., prevailing Central Time**.

7.      The deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan is set for **February 26, 2018**.

8.      The date and time of the Auction, if needed, is **March 6, 2018, at 10:00 a.m., prevailing Central Time**, which time may be extended by the Debtors upon written notice filed with the Court, to be held at the offices of Kirkland & Ellis LLP, located at 609 Main Street, Houston, Texas 77002. The Debtors shall send written notice of the date, time, and place of the Auction to Qualified Bidders no later than two (2) business days before such Auction, and shall post notice of the same no later than two (2) business days before such Auction on the website of the Debtors' notice and claims agent, Kurtzman Carson Consultants LLC ("KCC") at http://www.kccllc.net/cobalt.

9.      The deadline to object to confirmation of the Plan is set for **March 26, 2018, at 4:00 p.m., prevailing Central Time**.

10.     The deadline to vote to accept or reject the Plan is set for **March 26, 2018 at 4:00 p.m., prevailing Central Time**.

11.     The hearing to consider approval of the Sale of certain Assets to the Successful

Bidder(s) pursuant to a chapter 11 plan (the "Sale Hearing") will take place on **March 30, 2018, at 9:30 a.m., prevailing Central Time**; *provided* that to the extent any Assets are sold pursuant to section 363 of the Bankruptcy Code rather than pursuant to a chapter 11 plan, the Debtors, in consultation with the Consultation Parties, shall schedule a hearing to approve such Sale.

12.     The Debtors may amend the Confirmation Schedule, from time to time, as necessary by filing an appropriate notice on the Court's docket and posting such notice on the website of KCC.

13.     Notwithstanding the foregoing, the Court's approval of the Confirmation Schedule is without prejudice to all parties' rights to contest the adequacy of the Disclosure Statement on any grounds, to object to confirmation of the Plan on any grounds, and to object to the approval of any sale contemplated under this Order at the Sale Hearing on any grounds.

**II.     The Bidding Procedures.**

14.     The Bidding Procedures, substantially in the form attached hereto as **Schedule 1**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Assets.  Any party desiring to bid on one or more individual Assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

15.     Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, as set forth in the Bidding Procedures; *provided* that at the Auction bidders shall be permitted to consult with and propose to the Debtors and the Consultation Parties (as defined below) the terms of a proposed plan of reorganization contemplating the support of and/or investments to be made by a Consultation Party, and the Auction shall be transcribed.

16.     Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") and the right and power to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured; *provided*, *further*, that a Secured Creditor shall not be entitled to any Bid Protections.  Notwithstanding the foregoing, nothing shall affect any rights of parties in interest, if any, with respect to challenging whether any Qualified Bidder has a valid secured claim and such bidder's right to credit bid if the Court determines that it does not have a valid secured claim.

17.     The Debtors may, in consultation with the official committee of unsecured creditors (the "Official Committee"), the first lien indenture trustee, the first lien ad hoc group, the second lien ad hoc group, and the ad hoc committee of unsecured noteholders (collectively, the "Consultation Parties"):  (a) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best offer for each Asset or Assets; (b) reject at any time before entry of an Order of the court approving the Successful Bid, any bid that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these cases.

18.     Following entry of this Order, the Debtors shall be authorized, but not obligated, in an exercise of their business judgement, in consultation with the Consultation Parties, to select

one or more bidders to act as a stalking horse bidder (each, a "<u>Stalking Horse Bidder</u>").

19.     The Debtors are authorized, but not directed, to incur and pay the Bid Protections, in accordance with the Bidding Procedures, in connection with any stalking horse agreement with a Stalking Horse Bidder if the Debtors determine, in consultation with the Consultation Parties, that paying the Bid Protections is in the best interests of the Debtors' estates and stakeholders.   To the extent such determination is made to provide for and pay the Bid Protections, the Debtors will file a notice of such determination, and such Bid Protections may be paid without further action or order by the Court.

## III.     Notice Procedures.

20.     The form of Auction Notice substantially in the form attached to the Motion as **Exhibit B** is approved.

21.     By January 31, 2018, the Debtors shall serve the Bidding Procedures Order and Bidding Procedures by first-class mail or courier service upon:  (i) the United States Trustee for the Southern District of Texas; (ii) the Official Committee; (iii) the indenture trustee for the Debtors' first lien notes; (iv) the indenture trustee for the Debtors' second lien notes; (v) the indenture trustee for the Debtors' 2.625% senior convertible notes; (vi) the indenture trustee for the Debtors' 3.125% senior convertible notes; (vii) counsel to the parties referenced in clauses (ii) to (vi); (viii) counsel to the ad hoc group of first lien notes, Weil, Gotshal & Manges LLP, 767 5th Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, TX 77002, Attn: Chris Lopez (chris.lopez@weil.com); (ix) counsel to the ad hoc committee of unsecured noteholders, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005, Attn: Gerard Uzzi (guzzi@milbank.com) and Eric Stodola (estodola@milbank.com); (x) the United States Attorney's Office for the Southern District of Texas; (xi) the Internal Revenue Service; (xii) all

applicable state and local taxing authorities; (xiii) each governmental agency that is an interested party with respect to the Sale; (xiv) all parties who have expressed a written interest in some or all of the Assets; (xv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (xvi) the United States Bureau of Ocean Energy Management; (xvii) the Contract Counterparties; (xviii) all known creditors of the Debtors; (xix) all registered holders of equity securities in the Debtors; and (xx) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## IV.     Miscellaneous.

22.     Notwithstanding anything contained in the Motion or this Order, the relief set out herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral (the "Cash Collateral Orders").  To the extent there is any conflict between this Order and the Cash Collateral Orders, the terms of the Cash Collateral Orders shall control.

23.     Notwithstanding any other provisions of this Order, nothing in this Order or the Bidding Procedures limits or affects in any way the rights of the Department of the Interior ("Interior") with respect to: (i) the requirement that the Debtors obtain Interior's consent prior to the assignment or transfer of the Debtors' interests in any active and inactive federal oil and gas leases on the Outer Continental Shelf as required by 11 U.S.C. § 365(c) and applicable non-bankruptcy laws and regulations including, without limitaition, The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("OCSLA") and its implementing regulations found in, among other places, 30 C.F.R. Part 250 Subpart Q and 30 C.F.R. Part 556, (ii) the Debtors' and/or any assignee's or transferee's decommissioning obligations including, without limitation, any plugging and abandoning obligations and any and all financial assurance obligations,

including, but not limited to, any bonding obligations (collectively, the "Decommissioning Obligations"), associated with the Debtors' interest in all of their active and inactive federal oil and gas leases on the Outer Continental Shelf, and (iii) Interior's regulatory authority under applicable laws and regulations to grant, direct or deny any applicable suspensions of production or suspensions of operations.  Nothing in this Order is intended to pre-determine, limit, or affect in any way the Debtors', any assignee's or any transferee's mandatory compliance obligations under the applicable federal oil and gas lease and any applicable laws and regulations, including, without limitation, any Decommissioning Obligations and Interior's rights to enforce any such mandatory compliance obligations.  To the extent that any other provision of this Order or anything set forth in the Bidding Procedures conflicts with the reservations or requirements set forth in this paragraph, this paragraph shall expressly supersede and control.

24.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

25.    Nothing in this Order shall preclude (a) the Debtors from considering, negotiating and filing, (b) any party in interest from proposing to and negotiating with the Debtors, or (c) any party in interest from seeking relief to file, in each case, a plan of reorganization in lieu of or in connection with a sale of less than substantially all of the Debtors' assets.

26.    In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

27.    Notwithstanding anything to the contrary in the Bidding Procedures, any exclusivity, "no shop," or other provision in any Bid that purports to limit the Debtors' ability to market the Assets shall be null and void.

28.     For the avoidance of doubt, any assumption and assignment of any executory contract or unexpired lease in connection with any Sale shall be consummated pursuant to a separate motion filed by the Debtors, the Plan, or separate procedures governing the assumption and assignment of executory contracts and unexpired leases approved by this Court.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

30.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

31.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  1-2 5, 2018
Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

## Schedule 1

## Bidding Procedures

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COBALT INTERNATIONAL ENERGY, INC., *et al.*,[1] | ) Case No. 17-36709 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On [●], 2018, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Establishing Bidding Procedures Relating to the Sale of All or a Portion of the Debtors' Assets* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale of or other transaction (including a chapter 11 plan) regarding (the "Sale") any or all of the Debtors' assets, or equity interests in the Debtors or one or more of its direct and indirect subsidiaries (or any successor entities thereof) (collectively, the "Assets"). The Sale may be accomplished either through a chapter 11 plan or a sale pursuant to section 363 of the Bankruptcy Code. The Debtors prefer that the Sale be accomplished through a chapter 11 plan.[3]

1.    **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Notice Parties"):

A.    **Debtors.** Cobalt International Energy, Inc., 920 Memorial City Way, Suite 100, Houston, Texas 77024, Attn: Jeffrey A. Starzec (jeff.starzec@cobaltintl.com).

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, LP (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316). The Debtors' service address is: 920 Memorial City Way, Suite 100, Houston, Texas 77024.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3]    For the avoidance of doubt, these Bidding Procedures are subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral.

KE 51490796

B.   **Debtors' Counsel.**  Counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn: Marc Kieselstein, P.C. (marc.kieselstein@kirkland.com), Chad J. Husnick, P.C. (chad.husnick@kirkland.com), Brad Weiland (brad.weiland@kirkland.com), and Laura Krucks (laura.krucks@kirkland.com).

C.   **Debtors' Co-Counsel.**  Co-Counsel to the Debtors, Zack A. Clement PLLC, 3753 Drummond Street, Houston, Texas 77025, Attn: Zack A. Clement (zclement@icloud.com).

D.   **Debtors' Financial Advisors.**  Financial advisors to the Debtors, Houlihan Lokey Capital, Inc., 245 Park Avenue, New York, New York 10167, Attn: John-Paul Hanson (jhanson@hl.com), Joshua Eaves (jeaves@hl.com), and Michael Haney (mhaney@hl.com).

E.   **Counsel to the Ad Hoc Group of First Lien Notes.**  Counsel to the Ad Hoc Group of First Lien Notes, Weil, Gotshal & Manges LLP, 767 5th Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com), and Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, TX 77002, Attn Chris Lopez (chris.lopez@weil.com).

F.   **Ad Hoc Group of First Lien Notes' Financial Advisors.**  Financial advisors to the Ad Hoc Group of First Lien Notes, PJT Partners LP, 280 Park Avenue, 16th Floor, New York, NY 10017 Attn: Mike Genereux (Genereux@pjtpartners.com).

G.   **Counsel to the Ad Hoc Group of Second Lien Notes.**  Counsel to the Ad Hoc Group of Second Lien Notes, Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, N.W., Washington, DC 20036, Attn: James Savin (jsavin@akingump.com).

H.   **Ad Hoc Group of Second Lien Notes' Financial Advisors.**  Financial advisors to the Ad Hoc Group of Second Lien Notes, Moelis & Company, LLC, Three Allen Center, 333 Clay Street, Suite 3750, Houston, TX 10022, Attn: Bassam Latif (bassam.latif@moelis.com).

I.   **Official Committee's Counsel.**  Proposed counsel to the Official Committee of Unsecured Creditors (the "Official Committee"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Ira Kharasch (ikharasch@pszjlaw.com).

J.   **Official Committee's Co-Counsel.**  Proposed co-counsel to the Official Committee: Snow Spence Green, LLP, 2929 Allen Parkway, Suite 2800, Houston, TX 77019, Attn: Kenneth Green (kgreen@snowspencelaw.com).

K.   **Official Committee's Financial Advisors.**  Proposed financial advisors to the Official Committee, Conway Mackenzie, Inc., 1301 McKinney Street, Suite 2025, Houston, TX 77010, Attn: John T. Young, Jr. (jyoung@conwaymackenzie.com) and Paul Jansen (pjansen@conwaymackenzie.com).

L. **Counsel to the Ad Hoc Committee of Unsecured Noteholders.** Counsel to the ad hoc committee of unsecured convertible noteholders (the "<u>Ad Hoc Committee</u>"), Milbank, Tweed, Hadley, & McCloy LLP, 28 Liberty Street, New York, NY 10005, Attn: Gerard Uzzi (guzzi@milbank.com) and Eric K. Stodola (estodola@milbank.com).

M. **Ad Hoc Committee's Co-Counsel.** Co-Counsel to the Ad Hoc Committee, Cole Schotz P.C., 301 Commerce Street, Suite 1700, Fort Worth, TX 76102, Attn: Michael D. Warner (mwarner@coleschotz.com).

N. **Ad Hoc Committee's Financial Advisors.** Financial advisors to the Ad Hoc Committee, Centerview Partners LLC, 31 West 52nd Street, New York, NY 10019, Attn: Karn Chopra (kchopra@centerviewpartners.com).

O. **Counsel to the Unsecured Notes Indenture Trustee.** Counsel to the indenture trustee of the unsecured convertible notes, Reed Smith LLP, 811 Main Street, Suite 1700, Houston, TX 77002, Attn: Lloyd A. Lim (llim@reedsmith.com) and 225 Fifth Avenue, Suite 1200, Pittsburgh, PA, 15222 Attn: Eric A. Schaffer (eschaffer@reedmsith.com).

P. **Counsel to the First Lien Notes Indenture Trustee.** Counsel to the indenture trustee of the first lien notes, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn: Andrew N. Goldman (Andrew.goldman@wilmerhale.com).

**2. Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (a "<u>Potential Bidder</u>") must deliver or have previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the following documents:

(i) an executed confidentiality agreement on terms acceptable to the Debtors (a "<u>Confidentiality Agreement</u>"), to the extent not already executed;

(ii) identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction; and

(iii) unless publicly available in a filing under applicable securities laws or regulations, the most current audited and latest unaudited financial statements (the "<u>Financials</u>") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, and (y) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale), the

adequacy of which will be assessed by the Debtors and their advisors in consultation with the Consultation Parties.

3.     **Qualified Bidders.**

(a)     A "Qualified Bidder" is a Potential Bidder who satisfies the Bidding Procedures and whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate the Sale, and, as applicable, are qualified or could be qualified to hold a lease on the Outer Continental Shelf, whose Bid is a Qualified Bid, and that the Debtors determine should be considered a Qualified Bidder, in consultation with the Consultation Parties.  Within two business days after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder and shall provide counsel to the Consultation Parties copies of each Qualified Bid (unless a Consultation Party is a Qualified Bidder or participates in a Qualified Bid with respect to an active Bid).[4]

(b)     If any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined herein) and all accumulated interest thereon on or within three business days after the Bid Deadline.

(c)     Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

(d)     For purposes of these Bidding Procedures, the indenture trustee for the Debtors' first lien notes and the indenture trustee for the Debtors' second lien notes shall each be deemed Qualified Bidders.

4.     **Due Diligence.**

Only (i) Potential Bidders whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate the Sale and (ii) the Official Committee and its professionals shall be eligible to receive due diligence information and access to the Debtors' electronic data room, physical data room, and to additional non-public information regarding the Debtors.  **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.**

---

[4]     For the avoidance of doubt, to the extent a Consultation Party is not an active bidder, the Debtors shall provide copies of each Qualified Bid to such Consultation Party.

The Debtors will provide to each Potential Bidder that satisfies the foregoing reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any such Potential Bidder to the Debtors' electronic data room. For all Potential Bidders, the due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder that intends in good faith to, or has the capacity to, consummate the Sale.

**All due diligence requests must be directed to Houlihan Lokey Capital, Inc., 245 Park Avenue, New York, New York 10167, Attn: Joshua Eaves (JEaves@HL.com) and Michael Haney (MHaney@HL.com).**

    (a)    **Communications with Potential Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications between and amongst Potential Bidders shall involve the Debtors and the Debtors' advisors, to the extent reasonably practicable.

    (b)    **Due Diligence from Potential Bidders.**

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale or discussions with other Potential Bidders regarding any topic and with any party regarding the Debtors (and their non-Debtor affiliates) and/or any of the Assets. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is not a Qualified Bidder or that a Bid made by such bidder is not a Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in

accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such bidder and the Debtors; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

Notwithstanding the foregoing, any information provided by a Potential Bidder to the Debtors may be provided to the Consultation Parties (unless a Consultation Party is a Qualified Bidder or participates in a Qualified Bid with respect to an active Bid) provided that such parties are bound by applicable confidentiality requirements.

**5.     Bid Requirements.**

A proposal, solicitation, or offer for a purchase and sale of one or more individual Assets or all or substantially all of the Assets or for an alternative acquisition transaction (including a chapter 11 plan) (each, a "Bid") by a bidder that is submitted in writing and satisfies each of the following requirements (the "Bid Requirements") as determined by the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, shall constitute a "Qualified Bid."

(a)     **Assets**. Each Bid must clearly state which assets and liabilities of the Debtors that the Qualified Bidders are agreeing to purchase and assume.

(b)     **Purchase Price.** Each Bid must clearly set forth the purchase price in U.S. dollars to be paid for each individual Asset subject to the applicable asset package, including and identifying separately any cash and non-cash components (the "Purchase Price").

(c)     **Deposit.** On or before the Bid Deadline, each Bid, other than a credit bid, must be accompanied by a cash deposit in the amount equal to 10 percent of the aggregate cash and non-cash Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

(d)     **Assumption of Obligations.** Each Bid must clearly state which liabilities of the Debtors the bidder is agreeing to assume. To the extent that a Bid seeks the assignment or transfer of a federal offshore oil and gas lease, the Bid must include the assumption of all accrued decommissioning obligations under applicable federal laws and regulations, applicable financial assurance obligations and any other statutory or regulatory obligations that may apply to an interest holder of such federal offshore lease.

(e)     **Qualified Bid Documents.** Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (including the chapter 11 plan to the extent required by the terms of the Bid) and shall include a schedule of assumed contracts to the extent applicable to the Bid, as well as all other material documents integral to

such Bid (the "Qualified Bid Documents"). Such documents must be based on and marked against form documents provided by the Debtors (including a summary of each Bid as may be reasonably requested by the Debtors). Any modifications to the form of documents provided by the Debtors must be in form and substance acceptable to the Debtors, in consultation with the Consultation Parties.

(f)     **Committed Financing.**  To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution documented to the satisfaction of the Debtors that demonstrates that the Qualified Bidder has:  (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions.   Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

(g)     **Contingencies; No Financing or Diligence Outs.**   A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtors in their business judgment, in consultation with the Consultation Parties.

(h)     **Identity.**  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons, including financial advisors and counsel, if any, that Houlihan Lokey Capital, Inc. and Kirkland & Ellis LLP should contact regarding such Bid.

(i)     **Demonstrated Financial Capacity.**   A Qualified Bidder must have, in the Debtors' business judgment, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

(j)     **Time Frame for Closing.**  A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, in consultation with the Consultation Parties.

(k) **Binding and Irrevocable.** A Qualified Bidder's Bid shall be binding and irrevocable unless and until the Debtors accept a higher Bid for such Asset and such Qualified Bidder is not selected as the Backup Bidder.

(l) **Expenses; Disclaimer of Fees.** Each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

(m) **Authorization.** Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(n) **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's Bid.

(o) **Adherence to Bid Procedures.** By submitting its Bid, each Bidder shall be deemed to have agreed to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(p)   **Regulatory Approvals and Covenants.**  A Bid must set forth each regulatory and third-party approval required for the Qualified Bidder to consummate the Sale, if any, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

(q)   **Consent to Jurisdiction.**  The Qualified Bidder shall be deemed to have submitted to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

(r)   **Bid Deadline.**  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 5:00 p.m. (prevailing Central Time) on February 22, 2018 (the "Bid Deadline") by:

   (i)   The Debtors, Cobalt International Energy, Inc., 920 Memorial City Way, Suite 100, Houston, Texas 77024, Attn: Jeffrey A. Starzec (jeff.starzec@cobaltintl.com);

   (ii)   Counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn: Chad J. Husnick, P.C. (chad.husnick@kirkland.com), Brad Weiland (brad.weiland@kirkland.com), and Laura Krucks (laura.krucks@kirkland.com);

   (iii)   Co-counsel to the Debtors, Zack A. Clement PLLC, 3753 Drummond Street, Houston, Texas 77025, Attn: Zack A. Clement (zclement@icloud.com);

   (iv)   Financial Advisors to the Debtors, Houlihan Lokey Capital, Inc., 245 Park Avenue, New York, New York 10167, Attn: John-Paul Hanson (jhanson@hl.com), Joshua Eaves (jeaves@hl.com), and Michael Haney (mhaney@hl.com);

   (v)   Proposed Counsel to the Official Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Ira Kharasch (ikharasch@pszjlaw.com);

   (vi)   Proposed Co-counsel to the Official Committee, Snow Spence Green, LLP, 2929 Allen Parkway, Suite 2800, Houston, TX 77019, Attn: Kenneth Green (kgreen@snowspencelaw.com);

   (vii)   Proposed Financial Advisors to the Official Committee, Conway

Mackenzie, Inc., 1301 McKinney Street, Suite 2025, Houston, TX 77010, Attn: John T. Young, Jr. (jyoung@conwaymackenzie.com) and Paul Jansen (pjansen@conwaymackenzie.com);

(viii)   Counsel to the Ad Hoc Committee, Milbank, Tweed, Hadley, & McCloy LLP, 28 Liberty Street, New York, NY 10005, Attn: Gerard Uzzi (guzzi@milbank.com) and Eric K. Stodola (estodola@milbank.com);

(ix)   Co-Counsel to the Ad Hoc Committee, Cole Schotz P.C., 301 Commerce Street, Suite 1700, Fort Worth, TX 76102, Attn: Michael D. Warner (mwarner@coleschotz.com); and

(x)   Financial Advisors to the Ad Hoc Committee, Centerview Partners LLC, 31 West 52nd Street, New York, NY 10019, Attn: Karn Chopra (kchopra@centerviewpartners.com).

(xi)   Counsel to the indenture trustee of the unsecured convertible notes, Reed Smith LLP, 811 Main Street, Suite 1700, Houston, TX 77002, Attn: Lloyd A. Lim (llim@reedsmith.com) and 225 Fifth Avenue, Suite 1200, Pittsburgh, PA, 15222 Attn: Eric A. Schaffer (eschaffer@reedmsith.com).

(xii)   Counsel to the indenture trustee of the first lien notes, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn: Andrew N. Goldman (Andrew.goldman@wilmerhale.com).

**6.      Right to Credit Bid.**

Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") and the right and power to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured. Notwithstanding the foregoing, nothing shall affect any rights that the Official Committee has, if any, with respect to challenging whether any Qualified Bidder has a valid secured claim and such bidder's right to credit bid if the Court determines that it does not have a valid secured claim.

**7.      Stalking Horse and Bid Protections**

Following entry of the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment, in consultation with the Consultation Parties, to select one or more bidders to act as a stalking horse bidder (each, a "Stalking Horse Bidder").

The Debtors are authorized, but not directed, to incur and pay the Bid Protections up to an aggregate of three percent (3%) of the purchase price for the applicable Sale in connection with any stalking horse agreement with a Stalking Horse Bidder if the Debtors determine, in consultation with the Consultation Parties, that paying the Bid Protections is in the best interests of the Debtors' estates and stakeholders. To the extent such determination is made to provide for

and pay the Bid Protections, the Debtors will file a notice of such determination, and such Bid Protections may be paid without further action or order by the Court.

8.      **Auction.**

If the Debtors receive more than one Qualified Bid for an Asset, whether through a Bid for one or more individual Assets or through a Bid for all or substantially all of the Assets, the Debtors will conduct the Auction to determine the Successful Bidders with respect to such Asset or Assets, as applicable.  If the Debtors do not receive a Qualified Bid for a given Asset the Debtors will not conduct the Auction as to such Asset.  To the extent Qualified Bidders are interested in separate individual Assets and/or all or substantially all of the Assets, the Debtors may, in their sole discretion, conduct separate auctions for the various Assets and Asset packages.

No later than five calendar days after the Bid Deadline, at 5:00 p.m. (prevailing Central Time), the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid or combination of Qualified Bids for each Asset or Assets, for which such Qualified Bidder submitted a Bid or combination of Bids, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (other than a Consultation Party that is a Qualified Bidder or participates in a Qualified Bid with respect to an active Bid) (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder and the Consultation Parties (other than a Consultation Party that is a Qualified Bidder or participates in a Qualified Bid with respect to an active Bid). The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors reasonably deem, in consultation with the Consultation Parties, relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things:  (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estate pursuant to the Bid); (b) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (d) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

The Auction shall take place at 10:00 a.m. (prevailing Central Time) on March 6, 2018, at the offices of Kirkland & Ellis LLP, 609 Main Street, Houston, Texas 77002, or such later date and time as selected by the Debtors.  The Auction shall be conducted in a timely fashion according to the following procedures:

(a)      **The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of each Baseline Bid.  All incremental Bids made thereafter for a given Asset shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on such Asset.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, and the members of and

advisors to the Consultation Parties, and each such parties' respective legal and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or Bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to Bid at the Auction.

**(b)    Terms of Overbid.**

"Overbid" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid.  Each applicable Overbid must comply with the following conditions:

(i)    **Minimum Overbid Increment.**  Any Overbid following the Baseline Bid or following any subsequent Prevailing Highest Bid (as defined below) for all or substantially all of the Assets shall be in increments of value equal to (or exceeding) $5,000,000, as determined by the Debtors in the exercise of their business judgment, in consultation with the Consultation Parties. The Debtors may establish different overbid increments at the Auction for any individual Asset or other combination of Assets, as determined by the Debtors in the exercise of their business judgment, in consultation with the Consultation Parties.

(ii)    **Conclusion of Each Overbid Round.**  Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, after consultation with the Consultation Parties, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors (after consultation with the Consultation Parties) to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

(iii)    **Overbid Alterations.**  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

**(c)    Consideration of Overbids.**

The Debtors reserve the right, in their reasonable business judgment in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things:

(i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

    **(d)**    **Closing the Auction.**

        (i)    The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, and in consultation with the Consultation Parties, to be the highest or otherwise best Bid for such Asset. Such Bid shall be declared the "Successful Bid," and such Qualified Bidder, the "Successful Bidder" and at which point the Auction will be closed as to that Asset. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

        (ii)    For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.

        (iii)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

        (iv)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for each Successful Bid and Backup Bid to be filed with the Court.

    **(e)**    **No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**9.**    **Backup Bidder.**

The Qualified Bidder with the next highest or otherwise second-best Qualified Bid (the "Backup Bid") at the Auction (if the Auction is conducted), as determined by the Debtors in the exercise of their business judgment in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "Backup Bidder"). The Debtors shall announce the identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the

applicable Successful Bidder. If a Successful Bidder fails to consummate its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

10.    **Highest or Otherwise Best Bid.**

When determining the highest or otherwise best Bid, as compared to other Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate, in consultation with the Consultation Parties: (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estate pursuant to the Bid); (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (d) the tax consequences of such Bid.

11.    **Adequate Assurance Information**.

Within twenty-four (24) hours of the filing of the notice of the Successful Bidder and the Backup Bidder, the Successful Bidder and the Backup Bidder will send by overnight delivery to each contract counterparty whose contract is part of such Bid, the financial and other commercial information to demonstrate adequate assurance of future performance under such contract.

12.    **Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.

13.    **Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Qualified Bid Documents, as applicable.

14.    **Sale Hearing**.

The hearing to consider approval of the Sale of certain of the Assets to the Successful Bidder(s) pursuant to a chapter 11 plan (the "Sale Hearing") will take place on or before

at 9:30 a.m. (prevailing Central Time) on March 30, 2018, before the Honorable Marvin Isgur, at the Court, 515 Rusk Street, Courtroom No. 404, Houston, Texas 77002.  To the extent any Assets are sold pursuant to section 363 of the Bankruptcy Code rather than pursuant to a chapter 11 plan, the Debtors, in consultation with the Consultation Parties, shall schedule a hearing to approve such Sale.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing and posting such notice on the website of KCC.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval.

15.     **No Modification of Bidding Procedures.**

Except as provided by Section 12 hereof, these Bidding Procedures may not be modified except with the Debtors' express written consent, and after consultation with the Consultation Parties.

16.     **Return of Deposit.**

The Deposit of the Successful Bidder shall be applied to the respective Purchase Price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder, and the Backup Bidder) on or within three business days after the Auction.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

17.     **Fiduciary Out.**

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

Houston, Texas
Dated: _____, 2018

/s/ Zack A. Clement
Zack A. Clement (Texas Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond Street
Houston, Texas 77025
Telephone: (832) 274-7629

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
Laura Krucks (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*