## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
01/25/2018

| | |
|---|---|
| In re: | ) )   Chapter 11 |
| COBALT INTERNATIONAL ENERGY, INC., *et al.*,[1] | ) )   Case No. 17-36709 (MI) )   |
| Debtors. | )   (Jointly Administered) )   **Docket Nos. 14 & 56** |

## FINAL ORDER (I) AUTHORIZING
## USE OF CASH COLLATERAL PURSUANT
## TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE
## PROTECTION TO SECURED PARTIES PURSUANT TO
## 11 U.S.C. §§ 361, 362, AND 363, AND (III) GRANTING RELATED RELIEF

Upon the motion of Cobalt International Energy, Inc. ("Cobalt") and its affiliated debtors,

as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter

11 cases (the "Chapter 11 Cases"), dated December 14, 2017 (the "Motion"),[2] for the Interim

Order (as defined below) and a final order (this "Final Order"), under sections 105, 361, 362,

363, 506(c), 507(b), and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as

amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules

of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), rule 4001-1 of the Bankruptcy

Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the United

States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, L.P. (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316).  The Debtors' service address is:  920 Memorial City Way, Suite 100, Houston, Texas 77024.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or as the context otherwise requires.

Bankruptcy Cases (the "Complex Case Procedures"), and having sought, among other things, the following relief:

        (a)      authorization of the Debtors' use of property constituting Cash Collateral (as defined below), subject to and pursuant to the terms and conditions set forth in this Final Order;

        (b)      the granting of adequate protection on account of the Debtors' use of Cash Collateral and any Diminution in Value (as defined below) of the Prepetition Secured Parties' (as defined below) respective interests in the Prepetition Collateral (as defined below), subject to and pursuant to the terms and conditions set forth in this Final Order, to:

        i.      the First Lien Notes Secured Parties (as defined below) under that certain Indenture, dated as of December 6, 2016 (as amended, restated, supplemented, or otherwise modified, the "First Lien Indenture" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, working fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "First Lien Notes Documents") by and among Cobalt, as issuer, each of the guarantors named therein (the "First Lien Notes Guarantors" and, collectively with Cobalt, the "First Lien Notes Obligors"), and Wilmington Trust, National Association, as indenture trustee and collateral agent (in such capacities, the "First Lien Indenture Trustee") for the noteholders thereunder (the "First Lien Noteholders" and, collectively with the First Lien Indenture Trustee, the "First Lien Notes Secured Parties");

        ii.      the Second Lien Notes Secured Parties (as defined below) under that certain Indenture, dated as of December 6, 2016 (as amended, restated, supplemented, or

otherwise modified, the "Second Lien Indenture" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, working fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "Second Lien Notes Documents," and together with the First Lien Notes Documents, the "Prepetition Loan Documents") by and among Cobalt, as issuer, each of the guarantors named therein (the "Second Lien Notes Guarantors" and, collectively with Cobalt, the "Second Lien Notes Obligors"), and U.S. Bank, National Association, as successor indenture trustee and collateral agent (in such capacities, the "Second Lien Indenture Trustee") for the noteholders thereunder (the "Second Lien Noteholders" and, collectively with the Second Lien Indenture Trustee, the "Second Lien Notes Secured Parties"); and

    iii.  the Secured Notes Collateral Agents (as defined below) under that certain Collateral Agency and Intercreditor Agreement, dated as of December 6, 2016 (as amended, restated, supplemented, or otherwise modified, the "Intercreditor Agreement") by and among Wilmington Trust, National Association, as collateral agent (the "First Lien Secured Notes Collateral Agent") for each of all of the holders of First Lien Obligations (as defined in the Intercreditor Agreement), and U.S. Bank, National Association, as successor collateral agent (the "Second Lien Secured Notes Collateral Agent," and collectively with the First Lien Secured Notes Collateral Agent, the "Secured Notes Collateral Agents") for each and all of the holders of Second Lien Obligations (as defined in the Intercreditor Agreement), the First Lien Indenture Trustee, the Second Lien Indenture Trustee, Cobalt, and each of the First Lien Notes Guarantors and the Second Lien Notes Guarantors.  For purposes of this Final Order, the First Lien Notes Secured Parties and the Second Lien Notes Secured Parties are referred to collectively as the

"Prepetition Secured Parties" and the First Lien Indenture Trustee, the Second Lien Indenture Trustee, and the Secured Notes Collateral Agents are referred to collectively as the "Prepetition Agents";

(c)     approving the stipulations by the Debtors as set forth in this Final Order with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(d)     upon entry of this Final Order, and to the extent set forth herein, waiving any right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or other applicable law;

(e)     modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement the terms of the Cash Collateral Orders (as defined herein); and

(f)     waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order.

(g)     Upon due, proper, and sufficient notice of the Motion, the interim hearing (the "Interim Hearing") on the Motion, and the final hearing on the Motion (the "Final Hearing") having been provided and the opportunity for objection having been provided; and the Court having held the Interim Hearing on December 14, 2017; and the Court having entered an interim order on December 14, 2017 [Docket No. 57] (the "Interim Order," and together with the Final Order, the "Cash Collateral Orders") granting the relief sought by the Motion on an interim basis; and the Court having held the Final Hearing January 25, 2018; and it appearing that no other or further notice is necessary with respect to the Court's entry of this Final Order; and after considering all the pleadings filed with this Court; and upon the *Declaration of David D. Powell,*

*Chief Financial Officer of Cobalt International Energy, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the evidence submitted, and the record made at the Interim Hearing and the Final Hearing held on the Motion to approve this Final Order; and the Court having found and determined that the relief sought in the Motion is fair and reasonable and in the best interests of the Debtors, their estates and creditors, and is essential for the continued operation of the Debtors' businesses; all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

        A.    Petition Date. On December 14, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases"). The Debtors are continuing in the management and operation of their business and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 33]. On December 21, 2017, an official committee of unsecured creditors (the "Creditors' Committee," and together with any other statutory committee, the "Committees" and each, a "Committee") was appointed [Docket No. 118] in the Chapter 11 Cases. No trustee or examiner has been appointed in the Chapter 11 Cases.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact whenever the context requires. *See* Fed. R. Bankr. P. 7052.

B.   <u>Jurisdiction and Venue</u>.   This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   The Court may enter a final order consistent with Article III of the United States Constitution.   Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   <u>Notice</u>. Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules and the Complex Case Procedures, and is sufficient under the circumstances.   Without limiting the foregoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier, or hand delivery, to parties in interest, including (i) the Office of the United States Attorney for the Southern District of Texas (the "<u>U.S. Trustee</u>"); (ii) the Creditors' Committee and its counsel, (iii) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iv) each of the Prepetition Agents and their respective counsel, if such counsel has filed a notice of appearance in these Chapter 11 Cases, or is otherwise known to the Debtors; (v) Wilmer Cutler Pickering Hale and Dorr LLP, as counsel to Wilmington Trust, National Association, in its capacities as First Lien Indenture Trustee and First Lien Secured Notes Collateral Agent; (vi) Weil, Gotshal & Manges LLP, as counsel to the ad hoc group of holders of First Lien Notes (the "<u>First Lien Ad Hoc Group</u>"); (vii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the ad hoc group of Second Lien Notes (the "<u>Second Lien Ad Hoc Group</u>"); (viii) the Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) the state attorneys general for states in which the Debtors conduct business; (xi) the Environmental Protection Agency; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

D.     Debtors' Stipulations.  The provisions of this subsection "D" constitute a compromise between the Debtors and the Prepetition Secured Parties.  These provisions will not become effective prior to a further order of the Court that approves the compromise.  That hearing will be conducted on March 22, 2018 at 9:30 a.m.  Under the compromise, if approved, the Debtors admit, acknowledge, agree, and stipulate to the following (collectively, the "Debtors' Stipulations"):

1.     Description of Prepetition Secured Obligations.

(a)     *First Lien Notes Obligations*.  Prior to the Petition Date, pursuant to the First Lien Indenture and the other First Lien Notes Documents, Cobalt issued notes (the "First Lien Notes") to the First Lien Noteholders in the aggregate principal amount of $500,000,000.  Each of the First Lien Notes Guarantors provided an unconditional joint and several guaranty of the First Lien Notes Obligations (as defined below) arising under the First Lien Notes Documents.  As of the Petition Date, the First Lien Notes Obligors were truly and justly indebted to the First Lien Notes Secured Parties pursuant to the First Lien Notes Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $500,000,000 of outstanding principal under the First Lien Notes plus (ii) the Applicable Premium (as defined in the First Lien Indenture), provided that the Debtors do not provide any acknowledgments, agreements, or stipulations with respect to the amount or calculation of such Applicable Premium, plus (iii) accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the First Lien Notes Documents), and all other "Obligations" (as defined in the First Lien Indenture or any security

document related thereto) under the First Lien Notes Documents (collectively, the "First Lien Notes Obligations").

(b)    *Second Lien Notes Obligations.*    Prior to the Petition Date, pursuant to the Second Lien Indenture and the other Second Lien Notes Documents, Cobalt issued notes (the "Second Lien Notes") to the Second Lien Noteholders in the aggregate principal amount of $934,732,000. Each of the Second Lien Notes Guarantors provided an unconditional joint and several guaranty of the Second Lien Notes Obligations (as defined below) arising under the Second Lien Notes Documents. As of the Petition Date, the Second Lien Notes Obligors were truly and justly indebted to the Second Lien Notes Secured Parties pursuant to the Second Lien Notes Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $934,732,000 of outstanding principal under the Second Lien Notes plus (ii) the Applicable Premium (as defined in the Second Lien Indenture), provided that the Debtors do not provide any acknowledgments, agreements, or stipulations with respect to the amount or calculation of such Applicable Premium, plus (iii) accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Second Lien Notes Documents), and all other "Obligations" (as defined in the Second Lien Indenture or any security document related thereto) under the Second Lien Notes Documents (collectively, the "Second Lien Notes Obligations" and, collectively with the First Lien Notes Obligations, the "Prepetition Secured Obligations").

2.    Validity of Prepetition Secured Obligations and Prepetition Loan Documents. The Prepetition Secured Obligations constitute legal, valid, and binding obligations of the First Lien Notes Obligors and the Second Lien Notes Obligors, as applicable (collectively,

the "Obligors").  No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or ranking of, the Prepetition Secured Obligations exist.  No portion of the Prepetition Secured Obligations (including any Applicable Premium) is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity.  The First Lien Notes Documents and the Second Lien Notes Documents (collectively, the "Prepetition Loan Documents") are valid and enforceable by each of the Prepetition Secured Parties against each of the applicable Obligors. The Prepetition Secured Obligations constitute allowed claims against the applicable Obligors' estates.  As of the Petition Date, the Debtors or their estates have no claim or cause of action against any of First Lien Notes Secured Parties or their agents, in such capacities, whether arising under applicable state, federal, or foreign law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), the Prepetition Secured Obligations, or the Prepetition Liens (as defined below).

       3.      Description of Prepetition Liens and Prepetition Collateral.

       (a)      Pursuant to and as more particularly described in the First Lien Notes Documents, the First Lien Notes Obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "First Lien Notes Prepetition Liens"), certain property described in the First Lien Notes Documents, including, without limitation, certain Cash Collateral (as defined herein), and other "Collateral"

as such term is defined in the First Lien Indenture (collectively, the "First Lien Notes Prepetition Collateral"), including, without limitation, certain cash collateral as defined in section 363 of the Bankruptcy Code (the "Cash Collateral").

(b)     Pursuant to and as more particularly described in the Second Lien Notes Documents, the Second Lien Notes Obligations are secured by, among other things, second priority liens or mortgages on, security interests in, and assignments or pledges of (the "Second Lien Notes Prepetition Liens" and, collectively with the First Lien Notes Prepetition Liens, the "Prepetition Liens"), certain property described in the Second Lien Notes Documents, including, without limitation, certain Cash Collateral, and other "Collateral" as such term is defined in the Second Lien Indenture (collectively, the "Second Lien Notes Prepetition Collateral" and, collectively with the First Lien Notes Prepetition Collateral, the "Prepetition Collateral").

(c)     The Intercreditor Agreement governs, among other things:  (i) the relative priority of the respective Prepetition Liens granted to holders of Prepetition Secured Obligations, (ii) the payment priority with respect to proceeds of the Prepetition Collateral, and (iii) the rights and remedies of the holders of Prepetition Secured Obligations with respect to debtor-in-possession financing, use of cash collateral, and adequate protection in a chapter 11 case.

4.     Validity and Perfection of Prepetition Liens.  The Prepetition Liens are (i) valid, binding, perfected, and enforceable liens on and security interests in the applicable Prepetition Collateral; (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, counterclaim,

defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity; and (iii) subject and subordinate only to (a) the Carve Out (as defined below) and (b) valid and enforceable liens and encumbrances in the Prepetition Collateral that were expressly permitted to be senior to the applicable Prepetition Secured Parties' liens under the applicable Prepetition Loan Documents, that are valid, perfected, enforceable, and non-avoidable as of the Petition Date and that are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law ("Permitted Liens"), and each Debtor irrevocably waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, and enforceability of the Prepetition Liens or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations and the Prepetition Loan Documents. The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents.

    5.    Releases by Debtors.  Subject to the rights and limitations set forth in paragraph 7 hereof, upon the occurrence of the Investigation Termination Date, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns (collectively, the "Releasors") shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the Prepetition Secured Parties, in all capacities under the Prepetition Loan Documents and applicable law, and each of their respective former, current, or future officers, employees, directors, agents,

representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description based on or arising from any events, facts or circumstances that have occurred or exist as of the date hereof arising from or relating in any way to any of the Prepetition Loan Documents or the obligations thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the Prepetition Liens or Prepetition Secured Obligations of the Prepetition Secured Parties.  The Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their respective representatives, successors, and assigns, and on each of the Debtors' estates and all entities and persons, including any creditors of the Debtors, and each of their respective representatives, successors, and assigns, including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code.

E.     Approved Budget.  Attached to the Interim Order as Exhibit A is a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis (as may be revised from time to time with the prior written consent of the First Lien Indenture Trustee and counsel to the ad hoc group of holders of First Lien Notes represented by Weil, Gotshal & Manges LLP, which approval shall not be unreasonably withheld, the "Approved Budget"), with notice of any such revision promptly provided to counsel to the Creditors' Committee and the advisors to the Second Lien Ad Hoc Group, along with a copy of any revised Approved Budget.

F.     The Approved Budget includes and contains the Debtors' reasonable estimate of all operational receipts and all operational disbursements, fees, costs, and other expenses that will be payable, incurred, and/or accrued by any of the Debtors during the period covered by the Approved Budget.  If the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group and the Debtors do not agree to an updated Approved Budget, the Approved Budget shall be the then existing Approved Budget or such Approved Budget as may be approved by the Court after a hearing.  The Approved Budget is achievable and will allow the Debtors to operate in the Chapter 11 Cases and pay postpetition administrative expenses as and when they come due.  The Debtors shall be required to provide to the First Lien Indenture Trustee, and the advisors to each of the First Lien Ad Hoc Group, Second Lien Ad Hoc Group, the ad hoc committee of holders of Unsecured Notes (the "Ad Hoc Committee"), the indenture trustee for the Unsecured Notes (the "Unsecured Notes Indenture Trustee"), and counsel to the Creditors' Committee a Budget Variance Report (as defined below) in accordance with the provisions of paragraph 4(d) hereof.

G.     Use of Cash Collateral.   An immediate and critical need exists for the Debtors to use the Cash Collateral in accordance with the Approved Budget, for (i) working capital purposes, (ii) other general corporate purposes of the Debtors, and (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases.

H.     Consent by Prepetition Secured Parties.   The Prepetition Agents have consented to, conditioned on the entry of this Final Order, the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Final Order, and such consent is binding on all Prepetition Secured Parties.

I.     Adequate Protection.   The adequate protection provided to the Prepetition Secured Parties, as set forth more fully in paragraph 4 hereof, for any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date resulting from the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, or the use, sale, or lease of the Prepetition Collateral (including any Cash Collateral) under section 363 of the Bankruptcy Code is consistent with, and authorized by, the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code. The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to protect the Prepetition Secured Parties from the diminution of their respective interests in the value of their Prepetition Collateral and to obtain their consent to the use of such Cash Collateral.

J.     Good Cause Shown; Best Interest.   This Court concludes that good cause has been shown and entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued

14

operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful reorganization.

        K.     <u>No Liability to Third Parties</u>.  The Debtors stipulate and the Court finds that none of the Prepetition Secured Parties shall (i) be deemed to have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," "owner or operator," or "participant" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal, state, or applicable international statute or regulation) as a result of its consent to the use of Cash Collateral hereunder or (ii) owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors as a result of its consent to the use of Cash Collateral hereunder.

        L.     <u>Section 552(b)</u>.  Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of the Prepetition Collateral (including any charter-hire receipts, earnings, insurance proceeds, or similar payments received by an applicable Obligor after the Petition Date).

        Based upon the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      <u>Motion Granted</u>.  The Motion is granted on a final basis as herein provided and the use of Cash Collateral is authorized for each Debtor, subject and pursuant to the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not previously been withdrawn, waived, or otherwise resolved are hereby denied and overruled.  This Final Order shall become effective immediately upon its entry.

2.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, including the Carve Out, the Debtors are authorized to use Cash Collateral in accordance with this Final Order and the Approved Budget during the period beginning with the Petition Date and ending on the Termination Date for:  (a) working capital purposes; (b) other general corporate purposes of the Debtors; (c) the satisfaction of the costs and expenses of administering the Chapter 11 Cases; and (d) for the purposes identified in the Approved Budget.

3.      <u>Termination Date</u>.  The authority for use of Cash Collateral under this Final Order shall terminate (the "<u>Termination Date</u>") upon the expiration of the Notice Period after an Event of Default, in each case in accordance with paragraphs 5 and 6 hereof (a "<u>Termination Event</u>").

4.      <u>Prepetition Secured Parties' Adequate Protection</u>.  The Prepetition Secured Parties are entitled pursuant to sections 361 and 363(c) of the Bankruptcy Code to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) for any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date arising from the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral) under section 363 of the Bankruptcy Code, and

in each case subject and subordinate to the Carve Out ("Diminution in Value").  The Prepetition Agents, as applicable and for the benefit of themselves and for the benefit of the respective Prepetition Secured Parties in exchange for consent to the use of the Prepetition Collateral, are hereby granted on a final basis, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, the following:

(a)      Adequate Protection Liens.  To the extent set forth below, valid, binding, enforceable, and perfected security interests in and liens upon (the "Adequate Protection Liens") all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, vessels, charter-hire receipts, earnings, insurance policies and proceeds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, choses in action (exclusive of Avoidance Actions), Cash Collateral, documents, vehicles, intellectual property, securities, partnership or membership interests in

limited liability companies and capital stock, and the proceeds of causes of action (including proceeds of causes of action arising under sections 502(d), 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code (collectively, subject to the stated exclusions, the "Avoidance Actions")), and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, including, without limitation, the products, proceeds, and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property, collectively with the Prepetition Collateral, the "Collateral") without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements, or other agreements.   The foregoing Collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Final Order, would not be enforceable pursuant to applicable law, but shall include the proceeds thereof, which Adequate Protection liens are granted thereupon.   The Adequate Protection Liens granted to the Prepetition Agents, for the benefit of themselves and the respective Prepetition Secured Parties, shall be senior liens, shall rank immediately senior to the security interests and liens under the respective Prepetition Loan Documents, except the Adequate Protection Liens shall be subject and subordinate to (i) the Carve Out and (ii) Permitted Liens.   The Adequate Protection Liens shall be subject to the Intercreditor Agreement, and amounts received on account thereof shall be subject to section 4.1 thereof.

   (b) Superpriority Claims.  To the extent set forth below, allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Superpriority Claims").  Any Superpriority Claims shall be subject and subordinate to

the Carve Out, and shall be allowed claims against the applicable Debtors (jointly and severally) with priority over any and all administrative expenses and all other claims against such Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  The Superpriority Claims shall be payable from and have recourse to the proceeds of the Avoidance Actions.  The allowed Superpriority Claims shall be payable from and have recourse to all Collateral and unencumbered pre- and postpetition property of the applicable Debtors (subject to the foregoing sentence).  Other than the Carve Out, no cost or expense of administration under sections 105, 503, or 507 of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claims.  The Superpriority Claims granted to the Prepetition Agents for the benefit of the Prepetition Secured Parties shall be subject to the Intercreditor Agreement, and amounts received on account thereof shall subject to Section 4.1 thereof.

(c)     Fees and Expenses.  The Debtors shall pay (or shall have paid, as applicable) in full, in cash and in immediately available funds all reasonable and documented fees, costs and expenses whether incurred prior to, on or after the Petition Date, without duplication, incurred by (i) the First Lien Indenture Trustee, including fees and expenses for services performed in connection with these Chapter 11 Cases, and including fees and expenses

of (A) Wilmer Cutler Pickering Hale and Dorr LLP, as counsel to the First Lien Trustee, and

(B) one local counsel (if any), (ii) the First Lien Ad Hoc Group, including fees and expenses of

(A) Weil, Gotshal & Manges LLP, (B) PJT Partners, as financial advisor, and (C) one local

counsel (if any), (iii) the Second Lien Indenture Trustee, including fees and expenses for services

performed in connection with these Chapter 11 Cases, and its counsel (including one local

counsel, if any), and (iv) the Second Lien Ad Hoc Group, including fees and expenses of

(A) Akin Gump Strauss Hauer & Feld LLP, (B) Moelis & Company LLC, as financial advisor,

and (C) one local counsel (if any), (collectively, the "Fee Parties") (x) promptly upon entry of

this Final Order in the full amounts set forth in any outstanding invoices from the Fee Parties

received at least five (5) business days prior to entry of the Interim Order (provided that any such

unpaid invoices as of the Petition Date were provided to the U.S. Trustee), and (y) thereafter,

within ten (10) business days after the presentment of any such invoices to the Debtors, the U.S.

Trustee, and Pachulski Stang Ziehl & Jones LLP, as counsel to the Creditors' Committee.  The

Fee Parties shall not be required to comply with the U.S. Trustee fee guidelines or file any fee

applications with the Court, but shall provide copies of their invoices to the U.S. Trustee and the

Creditors' Committee.  Invoices submitted pursuant to this paragraph shall include the number of

hours billed and a reasonably detailed description of services provided and the expenses incurred

by the applicable professional; provided, however, that any such invoice may be redacted to

protect privileged, confidential or proprietary information and shall not be required to contain

individual time detail.  If it is subsequently determined that such fees and expenses were not

payable under section 506 of the Bankruptcy Code, such amounts will instead be deemed

recharacterized as repayments of principal in reduction of the applicable Obligations; and further

provided that if an Obligation is determined to be wholly unsecured, any amounts paid under this

paragraph shall be returned to the Debtors within seven (7) days of any such final determination. Further provided, that any creditor who is obliged to return funds under this paragraph may assert that such amounts were otherwise payable as adequate protection and the Court will determine the validity of any such assertion.

(d)     Reporting and Budget Compliance.   Every week (beginning with the fourth full week after the Petition Date), on the fourth business day of such week, the Debtors shall deliver to the advisors to (i) the First Lien Indenture Trustee, (ii) the First Lien Ad Hoc Group, (iii) the Second Lien Ad Hoc Group, (iv) the Ad Hoc Committee, (v) the Unsecured Notes Indenture Trustee, and (vi) counsel to the Creditors' Committee, a variance report from the previous week comparing the actual cash receipts and disbursements of the Debtors with the receipts and disbursements in the Approved Budget on a line item basis (the "Budget Variance Report"). Each Budget Variance Report shall be cumulative, in that it shall include all previous weeks in the current Budget Variance Report. Any material variance shall be accompanied by a qualitative explanation.

(e)     Reporting.   The Debtors shall provide the Prepetition Agents, the First Lien Ad Hoc Group's advisors, Second Lien Ad Hoc Group's advisors, the Ad Hoc Committee's advisors, the Unsecured Notes Indenture Trustee's advisors, and counsel to the Creditors' Committee with (a) any weekly financial reporting given to the U.S. Trustee, and (b) any additional reports reasonably requested by the First Lien Indenture Trustee and advisors to the First Lien Ad Hoc Group, including but not limited to (i) periodic updates regarding a sale or auction process, (ii) bidders in connection thereto, and (iii) any other information reasonably requested by the First Lien Indenture Trustee or advisors to the First Lien Ad Hoc Group in connection to these Chapter 11 Cases; *provided*, that any such report related to subparts (i) or (ii)

shall be provided on an "advisors' eyes only" basis and subject to and limited by in all respects any applicable confidentiality arrangement.  Except as otherwise set forth herein, (x) the First Lien Indenture Trustee may share any reports received from the Debtors with the First Lien Noteholders and their advisors, and the Second Lien Indenture Trustee may share any reports received from the debtors with the Second Lien Noteholders and their advisors, and (y) advisors to the First Lien Ad Hoc Group may share any reports received from the Debtors hereunder with the advisors to the Second Lien Ad Hoc Group and vice versa.

(f)     Access to Records and Collateral.  Upon reasonable notice, at reasonable times during normal business hours, the Debtors shall, subject to mutually agreeable confidentiality agreements, permit the professional advisors to the Prepetition Secured Parties (i) to have access to and inspect the Debtors' properties and other Collateral of any Debtor against whom they are granted Adequate Protection Liens or Superpriority Claims under this Final Order, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' financial advisors and, if and when reasonably practicable, officers, whom the Debtors shall make reasonably available, in each case excluding (w) all privileged and attorney-client work product, (x) trade secrets, (y) commercially sensitive information in relation to the sale process contemplated under the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling an Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling Hearings and Objection Deadlines With Respect to the Debtors' Disclosure Statement and Plan Confirmation, and (V) Granting Related Relief* [Docket No. 15] (the "Bid Procedures and Scheduling Motion"), and (z) information that the Debtors are otherwise prohibited from disclosing pursuant to a third-party confidentiality agreement.

(g)     First Lien Interest Payments.   The Debtors shall pay to the First Lien Indenture Trustee (for the ratable benefit of the First Lien Noteholders), on an ongoing monthly basis, the cash payment of interest at the default contract rate (the "Interest Payments") (whether or not such Interest Payments are included in the Approved Budget), and the First Lien Indenture Trustee shall, subject to the First Lien Indenture Trustee's right to offset or recoup amounts owed to it and its representatives for fees and expenses to the extent not otherwise paid hereunder, including pursuant to Section 6.13(1) of the First Lien Indenture, remit such Interest Payments deposited with it by the Debtors to the First Lien Noteholders.[4]  On or before the fifth day prior to the date of each Interest Payment, the Debtors shall provide a notice to the First Lien Indenture Trustee setting forth a calculation of the amount of such Interest Payment.   The Debtors shall deposit each Interest Payment with the First Lien Indenture Trustee on or before the tenth day of each month (or, if such date is not a business day, on the next succeeding business day thereafter).   The special record date for determining the First Lien Noteholders entitled to any such Interest Payment shall be the first business day of each month, and the First Lien Indenture Trustee shall, subject to the First Lien Indenture Trustee's right to offset or recoup amounts owed to it and its representatives for fees and expenses to the extent not otherwise paid hereunder, including pursuant to Section 6.13(1) of the First Lien Indenture, use any such funds deposited with it by the Debtors to pay such Interest Payment to the First Lien Noteholders on the date that is 15 days after such special record date (or, if such date is not a business day, on the next succeeding business day thereafter).  For the avoidance of doubt, (i) the

---

[4] Any interest due and owing strictly pursuant to this paragraph shall not be required to include interest on the Applicable Premium as set out in the First Lien Indenture (the "Applicable Premium Interest"); provided that the First Lien Indenture Trustee and First Lien Noteholders reserve all rights with respect to the Debtors' obligation to pay the Applicable Premium Interest in accordance with the First Lien Indenture, and the stipulations set out in the Cash Collateral Orders.

interest payment made by the Debtors to the First Lien Indenture Trustee on January 9, 2018 shall be paid by the First Lien Indenture Trustee to the First Lien Noteholders in accordance with the provisions of this paragraph (g), and (ii) the Debtors' obligations under this paragraph (g) shall be satisfied upon providing the required notices and remitting the Interest Payment to the First Lien Indenture Trustee. The Interest Payments shall not be subject to avoidance, reduction, disallowance, disgorgement, counterclaim, or subordination; *provided* that if the Court finally determines that the First Lien Noteholders are not entitled to receive all or any portion of the Interest Payments under section 506(b) of the Bankruptcy Code or otherwise, such amounts paid to or for the benefit of the First Lien Indenture Trustee and individual First Lien Noteholders, as applicable, will instead be deemed recharacterized as repayments of principal in reduction of the applicable First Lien Obligations; *provided, further*, that, in the event that there is a successful challenge resulting in a Final Judgment[5] to the validity of the First Lien Notes Obligations, any amounts paid under this paragraph shall be returned to the Debtors within seven (7) calendar days of such Final Judgment.

(h)     <u>Right to Seek Additional Adequate Protection</u>.   This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the

---

[5] "<u>Final Judgment</u>" shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided that, no order or judgment shall fail to be a "Final Judgment" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

respective Prepetition Secured Parties to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

     5.    <u>Events of Default</u>.  The occurrence and continuation of any of the following events, unless waived by the First Lien Indenture Trustee, shall constitute an event of default (each an "<u>Event of Default</u>" and collectively, the "<u>Events of Default</u>"):

    (a)    Any Debtor shall file a motion seeking any modification or extension of this Final Order without the prior written consent of the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group, which shall not be unreasonably withheld.

    (b)    Any Debtor shall have asserted, in a pleading filed with the Court (or another court of competent jurisdiction), a claim or challenge against any of the Prepetition Secured Parties in any way materially contrary to any of the Debtors' acknowledgements, stipulations, and releases contained herein.

    (c)    The Court shall have entered an order appointing a chapter 11 trustee or any examiner with expanded powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Prepetition Agents and counsel to the First Lien Ad Hoc Group.

    (d)    The Court enters an order converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, unless the Prepetition Agents and counsel to the First Lien Ad Hoc Group have consented to such order in writing.

    (e)    The Court shall have entered (x) an order or orders of the Court granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets or (y) a postpetition judgment or judgments of any U.S. court against any Debtor, in each case, which have a value in the aggregate in excess of $1,000,000.

    (f)    The Court shall have entered an order (x) reversing, amending, supplementing, vacating, or otherwise modifying this Final Order without the consent of the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group or (y) avoiding or requiring repayment of any portion of the payments made to the respective Prepetition Secured Parties pursuant to the terms hereof, unless such order is entered in connection with any successful Claim and Defense (as defined below).

    (g)    The Debtors fail to make any payment when due under paragraph 4 (Prepetition Secured Parties' Adequate Protection) hereof.

(h)     As measured at the conclusion of each three-week period for which Budget Variance Reports are required (i.e., week 4, week 7, week 10, etc.), the Debtors' total operating disbursements for the applicable Budget Variance Report period exceed 115% of the amount, exclusive of professional fees and other restructuring related expenses incurred, set forth in the Approved Budget for the applicable Budget Variance Report period (which amount, for the avoidance of doubt, shall take into account any positive or negative variances—i.e., the amount by which total operating disbursements is less or greater than 100% of the budgeted amount—from any prior testing period that may be carried forward and applied to the current period), unless the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group has provided a written waiver of such excess.

(i)      The Debtors shall have filed a motion (x) seeking to obtain credit or incur indebtedness that is, or is proposed to be, secured by a security interest, mortgage, or other lien on all or any portion of the Prepetition Collateral that is equal or senior to any security interest, mortgage, or other lien of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens and the Prepetition Liens), or entitled to administrative expense priority status that is equal or senior to that granted to the Prepetition Secured Parties herein, unless consented to in writing by the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group; or (y) seeking authority to use Cash Collateral on a non-consensual basis, unless the Debtors have paid the First Lien Secured Obligations in full to the satisfaction of the First Lien Indenture Trustee and counsel the First Lien Ad Hoc Group or as determined by the Court.

(j)      The payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by First Lien Notes Secured Parties.

(k)      Any order with respect to the Sonangol Settlement Agreement[6] (or transfer or use of proceeds in connection therewith) is entered in these Chapter 11 Cases that is not in a form and substance reasonably acceptable to the First Lien Indenture Trustee and the First Lien Ad Hoc Group.

(l)      Three (3) business days after the Debtors and their lead restructuring counsel receive written notice from the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group that any of the following milestones, which may be extended by written agreement as between the

---

[6] "Sonangol Settlement Agreement" means the Agreement dated December 19, 2017 by and among Cobalt International Energy Angola Ltd, CIE Angola Block 9 Ltd, CIE Angola Block 20 Ltd, CIE Angola Block 21 Ltd (collectively, the "Non-Debtor Sonangol Parties"), Sociedade Nacional de Combustiveis de Angola – Empresa Publica (Sonangol E.P.), and Sonangol Pesquisa e Producao, S.A.

Debtors, the First Lien Indenture Trustee, and counsel to the First Lien Ad Hoc Group, are not met by the Debtors:

    i)    **Final Order Effectiveness**:  The date this Final Order ceases to be in full force and effect for any reason.

    ii)    **Bid Procedures and Scheduling Order**:  January 27, 2018 (Petition Date + 45), to the extent the Court shall not have entered an order (the "Bid Procedures and Scheduling Order") approving the Bid Procedures and Scheduling Motion, which shall be in form and substance reasonably satisfactory to the First Lien Indenture Trustee, counsel to First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group each in its reasonable discretion, and which shall not have been vacated, reversed, modified, amended or stayed unless so modified in a manner reasonably satisfactory to such parties.  The Bid Procedures and Scheduling Motion seeks approval of bid procedures for the sale of some or substantially all of the Debtors' assets or equity (a "Sale") and assumption, assignment, and sale of contracts pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan.

    iii)    **Plan Filing**:  March 24, 2018 (Petition Date + 100), to the extent the Debtors have not filed a chapter 11 plan (the "Plan") and related disclosure statement, each in form and substance reasonably acceptable to the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group.

    iv)    **Effective Date or Sale Consummated**:  June 29, 2018 (Petition Date + 197), to the extent that (x) the effective date of the Plan has not occurred pursuant to a confirmation order in a form and substance reasonably satisfactory to the First Lien Indenture Trustee and counsel to the First Lien Ad Hoc Group, or (y) a Sale in accordance with a Bid Procedures and Scheduling Order has not been consummated pursuant to a sale order in a form and substance reasonably satisfactory to the First Lien Indenture Trustee, counsel to the First Lien Ad Hoc Group, and counsel to the Second Lien Ad Hoc Group.

    (m)    The Debtors shall have failed to comply with any other provision hereof in a material respect.

    6.    <u>Rights and Remedies upon Event of Default</u>.  Upon the occurrence and during the continuance of an Event of Default, the Debtors, upon five (5) business days' written notice to the Debtors, their lead restructuring counsel, the U.S. Trustee, the advisors to the Second Lien

Ad Hoc Group, and the Creditors' Committee (the "Notice Period"), shall immediately cease using Cash Collateral and the First Lien Indenture Trustee or counsel to the First Lien Ad Hoc Group may in accordance with the terms and conditions of this Final Order, the Prepetition Loan Documents, or the Intercreditor Agreement, revoke the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral hereunder; *provided, however*, that during the Notice Period (a) the Debtors shall have the opportunity to cure any alleged Event of Default, and (b) the Debtors or any party in interest shall be permitted to seek relief, including the non-consensual use of Cash Collateral, from the Court on an emergency basis. Absent further order of the Court, which order among other things grants either the non-consensual use of cash collateral or authorizes the Debtor to borrow operational funds, which Order is entered during the Notice Period:

> (i) commencing the next day after the Notice Period, the Prepetition Secured Parties may exercise the rights and remedies available under the Prepetition Loan Documents, this Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to this Final Order and apply the same to such obligations; or

> (ii) the automatic stay under section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit such actions.

In any hearing arising under this paragraph 6, the Prepetition Secured Parties reserve all rights to oppose such relief on any and all grounds. Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any Prepetition Loan Document, the Intercreditor Agreement, or

this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding the occurrence of the Event of Default or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Final Order shall survive the termination of this Final Order due to an Event of Default by the Debtors.

7.    <u>Effect of Stipulations on Third Parties</u>. The stipulations and admissions contained in this Final Order, including, without limitation, in paragraph D hereof, shall be binding upon the Debtors and their affiliates and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any Debtor) in all circumstances except in the event of a successful challenge as described herein. The stipulations, releases, waivers, and admissions contained in the Cash Collateral Orders, including, without limitation, in paragraph D hereof, shall be binding upon all other parties in interest, including, without limitation, any Committee and any other person or entity acting (or purporting to act) on behalf of the Debtors' estate, unless and except to the extent that (i) upon notice to the Debtors, the Prepetition Agents, a party in interest with proper standing (which has been granted by order of the Court or another court of competent jurisdiction) has timely filed an adversary proceeding (subject to the limitations contained herein, including, *inter alia*, paragraph 9 hereof) by March 21, 2018 (provided, such date shall be tolled if the Official Committee of Unsecured Creditors files a motion seeking standing to make a challenge on or before March 21, 2018), subject to extension by written consent of each of the applicable Prepetition Agent and the Debtors (the "<u>Investigation Termination Date</u>"), (A) challenging the validity, enforceability, priority, or extent of the Prepetition Secured Obligations or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers, or conveyances, other avoidance power claims or any

other claims, counterclaims or causes of action, objections, contests, or defenses to the extent released by the Debtors under paragraph D of this Final Order (items (A) and (B) collectively, each a "Claim and Defense" and collectively, "Claims and Defenses") against any of the Prepetition Secured Parties or their affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Loan Documents or the Prepetition Collateral, and (ii) the Court enters a final, non-appealable order ruling in favor of the plaintiff sustaining any such Claims and Defenses in any such duly filed adversary proceeding; *provided* that any Claim and Defense shall set forth with specificity the basis for such Claim and Defense and any Claim and Defense not so specified prior to the expiration of the Investigation Termination Date shall be forever deemed waived, released, and barred; *provided, further,* that if a Claim and Defense relates only to certain or part of the Prepetition Secured Obligations but not others (the "Unaffected Secured Obligations") then such Claim and Defense shall not toll the Investigation Termination Date as against the Unaffected Secured Obligations.   If no such adversary proceeding is timely filed, (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (y) the liens and security interests securing the Prepetition Secured Obligations shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected, not subject to recharacterization, subordination, or avoidance, and (z) the Prepetition Secured Obligations, the liens and security interests securing the Prepetition Secured Obligations, and the Prepetition Secured Parties shall not be subject to any other or further challenge or Claim and Defense, by any party in interest seeking to exercise the rights of any Debtor's estate, including, without limitation, any successor thereto (including, without

limitation, any chapter 7 or 11 trustee appointed or elected for the Debtor). If any such adversary proceeding is timely filed, the stipulations and admissions contained in paragraph D hereof shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding prior to the Investigation Termination Date in accordance with this Final Order. Nothing in this Final Order vests or confers on any "person" (as defined in the Bankruptcy Code), including any Committee, standing or authority to bring, pursue, or settle any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Secured Obligations, and an order of the Court conferring such standing on the Committee or other party in interest shall be a prerequisite for the filing of and prosecution of Claims and Defenses by such Committee or such other party in interest.

8.  Carve Out.

(a)  Carve Out. As used in this Final Order, the "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, the Cash Collateral Orders, procedural order, or otherwise, all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee

Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Prepetition Agents of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Professional Fees of Professional Persons in an aggregate amount not to exceed $7,500,000 incurred after the first business day following delivery by the Prepetition Agents of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, the Cash Collateral Orders, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agents to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

> (b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the Prepetition Agents to the Debtors with a copy to the U.S. Trustee and counsel to the Creditors' Committee (the "Termination Declaration Date"), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  The Debtors shall also deposit and hold cash in an amount equal to the Post-Carve Out Trigger Notice Cap in a segregated account in trust to pay such Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-

Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agents for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' prepetition secured creditors in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agents for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' prepetition secured creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Loan Documents, the Interim Order, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth herein, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the Prepetition Agents or the Debtors' prepetition creditors, as applicable. Notwithstanding anything to the contrary in the Prepetition Loan Documents, the Interim Order, or this Final Order, following delivery of a Carve Out Trigger

Notice, the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Agents for application in accordance with the Prepetition Loan Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute, increase, or reduce Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Order, this Final Order, or the Prepetition Loan Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Secured Obligations, the Adequate Protection Liens, and the Superiority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(c)     Payment of Allowed Professional Fees Prior to the Termination Declaration Date.   Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Professional Fees shall not reduce the Carve Out.

(d)     Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Professional Fees shall permanently reduce the Carve Out on a dollar for dollar basis.

9.     <u>Restrictions on Use of Proceeds of Collateral and the Carve Out</u>.  No proceeds of Collateral or the Carve Out shall be used for the purpose of: (a) investigating, objecting to, challenging, or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority, enforceability, or avoidability of the Prepetition Secured Obligations, or any liens or security interests with respect thereto, or any other rights or interests of any of the Prepetition Secured Parties, whether in their capacity as such or otherwise, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against any of the Prepetition Secured Parties (whether in their capacity as such or otherwise), including, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; or (b) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court; *provided* that prior to the Termination Declaration Date, up to $150,000 of Cash Collateral shall be made available to the Creditors' Committee for fees and expenses incurred in connection with any investigation of (but not preparing, drafting or filing any documents or pleadings objecting to, challenging, or contesting in any manner, or raising any defenses to) the liens and claims of the Prepetition Secured Parties (the "<u>Committee Investigation Budget</u>").

10.     <u>No Waiver of Prepetition Secured Parties' Rights; Reservation of Rights</u>.  Except as set forth herein, this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any of the Prepetition Secured Parties' rights with respect to any person or entity other than the Debtors, or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the Prepetition Secured Parties are

expressly reserved and entry of this Final Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of:

(a)     the Prepetition Secured Parties' rights under any of the Prepetition Loan Documents and the Intercreditor Agreement;

(b)     the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors;

(c)     the Prepetition Secured Parties' rights to seek modification of the grant of adequate protection provided under this Final Order so as to provide different or additional adequate protection at any time;

(d)     any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law including, without limitation, to the right to: (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with extended powers; or (iii) propose, subject to section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; and

(e)     any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

11.     <u>Prepetition Agents' Right to Credit Bid</u>.   Subject to the Prepetition Loan Documents, the Intercreditor Agreement, and entry of a successful Claim and Defense, each of the Prepetition Agents shall have the right to credit bid to the extent provided for in section 363(k) of the Bankruptcy Code up to the full amount of any remaining Secured Obligations (as applicable) in the sale of any Collateral whether pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy

Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; provided further that each of the Prepetition Agents shall be deemed a qualified bidder (or such analogous term) in connection with any such sale.

12.     Further Assurances.  The Debtors shall execute and deliver to the Prepetition Agents all such agreements, financing statements, instruments, and other documents as they may reasonably request to evidence, confirm, validate, or evidence the perfection of the Adequate Protection Liens granted pursuant hereto.

13.     506(c) Waiver.  Except to the extent of the Carve Out, no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against any Prepetition Secured Party, any of the Prepetition Secured Obligations, any of their respective claims, or the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of the affected Prepetition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives.

14.     Restrictions on Granting Postpetition Claims and Liens.  Except with respect to the Carve Out, no claim or lien that is *pari passu* with or senior to the claims and liens of any of the Prepetition Secured Parties shall be offered by any Debtor, or granted, to any other person, except in connection with any financing used to pay in full in cash the claims of the First Lien Notes Secured Parties or that would constitute a Permitted Lien with respect to the Debtor against whom such lien is granted; *provided* that anything in the foregoing is consistent with the Intercreditor Agreement.

15.     Automatic Effectiveness of Liens.  The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable,

and effective by operation of law as of the Petition Date, without any further action by the Debtors or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages (including ships' mortgages), filings with the U.S. Patent and Trademark Office, the U.S. Copyright Office, or the Library of Congress, or other documents or the taking of any other actions. If the First Lien Indenture Trustee hereafter reasonably requests that the Debtors execute and deliver to them financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the Adequate Protection Liens, as applicable, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the First Lien Indenture Trustee is hereby authorized to file or record such documents in their discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order.

16.    No Marshaling/Application of Proceeds.  In no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral; *provided* that any Prepetition Secured Party shall be entitled to seek to apply such marshaling or other similar doctrines with respect to another Prepetition Secured Party.

17.    Proofs of Claim.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases for any Prepetition Secured Obligation or any Superpriority Claim or other claim arising in connection with this Final Order.  Notwithstanding

38

any order entered by the Court in relation to the establishment of a bar date, the Prepetition Agents, on behalf of themselves and Prepetition Secured Parties, as applicable, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Cases for any such claims; for avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the applicable Debtors, rather than as separate proofs of claim against each such Debtor.   Any proof of claim filed by a Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective Prepetition Secured Parties.

18.     <u>Binding Effect</u>.   Subject to paragraph 7 hereof, the provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties to the extent and as set forth herein, the Debtors, any Committee, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).   To the extent permitted by applicable law, this Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.   Such binding effect is an integral part of this Final Order.

19.     <u>Survival</u>.   The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order:   (i) confirming any chapter 11 plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or (iii)

dismissing any of the Chapter 11 Cases, and, with respect to the entry of any order as set forth in clause (ii) or (iii) of this paragraph, the terms and provisions of this Final Order as well as the Adequate Protection Liens and Superpriority Claims shall continue in full force and effect notwithstanding the entry of any such order.

20.     <u>Effect of Dismissal of Chapter 11 Cases</u>.  If any of the Chapter 11 Cases are dismissed, converted, or substantively consolidated, such dismissal, conversion, or substantive consolidation of these Chapter 11 Cases shall not affect the rights of the Prepetition Secured Parties under this Final Order, and all of their rights and remedies hereunder shall remain in full force and effect as if the Chapter 11 Case had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (a) subject to paragraph 7 hereof, the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Final Order (and that such Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties), and (b) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims referred to in this Final Order.

21.     <u>Order Effective</u>.  This Final Order shall be effective as of the date of the signature by the Court.

22.     <u>Controlling Effect of Final Order</u>.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control to the extent of such conflict.

23.     <u>No Priming of Liens Senior in Priority to the Prepetition Liens</u>.  Nothing in this Final Order primes any lien that is senior in priority to the Prepetition Liens.

24.     <u>Chapter 11 Plan</u>.  Notwithstanding anything to the contrary in the Interim Order or this Final Order, nothing contained in such orders shall preclude, limit, determine, or otherwise modify the right of any party in interest, including the Debtors, from (a) proposing, pursuing, soliciting, or obtaining confirmation of any chapter 11 plan that provides the Prepetition Secured Parties with treatment consistent with § 1124 or any subsection thereof or (b) opposing such  treatment (other than on the basis that any provision in the Interim Order or this Final Order precludes the proposal, pursuit, solicitation, or confirmation of a chapter 11 plan consistent with § 1124).

25.     <u>Reservations of Rights for United States and Certain Federal Agencies</u>:

(a)     <u>Reservation of Rights for Department of the Interior and Coast Guard</u>: Notwithstanding any other provisions of this Final Order or its implementing documents, this Final Order shall not enlarge, abridge, or otherwise modify the Debtors' rights and obligations with respect to 28 U.S.C. § 959(b) in any way, and the rights of the Debtors, the Department of the Interior, the Coast Guard, any other federal agency, or any other party in interest with respect to any compliance obligations that may apply, including, without limitation, with respect to decommissioning or permanent abandonment obligations, monitoring and maintenance obligations, and/or financial assurance obligations (collectively, but without limitation, the "<u>Mandatory Compliance Obligations</u>"), associated with interests in active and inactive federal oil

and gas leases, grants of right-of-way, and rights-of-use and easements on the Outer Continental Shelf (collectively, the "Federal Leases and Grants") are fully preserved.

(b) United States Reservation of Rights. Subject to section 553 of the Bankruptcy Code and applicable law, nothing in this Final Order shall enlarge, abridge, or otherwise modify in any way any rights to setoff or recoupment that the United States may have, all of which are expressly preserved.

(c) Reservations Regarding OCS Liens. Notwithstanding anything to the contrary in this Final Order, the liens granted in this Final Order, if any, against any of the Debtors' interests in any active or inactive Federal Leases and Grants on the Outer Continental Shelf shall not grant the Prepetition Secured Parties any greater rights or interests in the applicable Federal Leases and Grants than those to which the Debtors are entitled. For the avoidance of any doubt, to the extent that any Prepetition Secured Parties foreclose on any prepetition liens or postpetition liens (including any Adequate Protection Liens), the rights and obligations, if any, of the Debtors, the Prepetition Secured Parties, the United States, and any other party in interest in respect of any regulatory and contractual requirements that apply to such Federal Leases and Grants shall be preserved, subject to any defenses that may apply.

Dated: __1/25__, 2018
Houston, Texas

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

42