## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
04/05/2018

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| COBALT INTERNATIONAL ENERGY, INC., *et al.*,[1] | ) | Case No. 17-36709 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re:  Docket Nos. ___** |

## ORDER (I) CONFIRMING THE FOURTH AMENDED
## JOINT CHAPTER 11 PLAN OF COBALT INTERNATIONAL ENERGY, INC.
## AND ITS DEBTOR AFFILIATES AND (II) APPROVING THE SALE TRANSACTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a.   commenced, on December 14, 2017 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.   continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.   caused, on December 19, 2017, certain of their wholly owned non-Debtor subsidiaries to enter into the Sonangol Settlement with Sonangol Pesquisa e Produção, S.A. ("Sonangol") relating to the purchase and sale of oil and gas assets offshore Angola;

d.   Filed on January 23, 2018, (i) the *Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 273], (ii) the *Disclosure*

---

[1]   The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, L.P. (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316).  The Debtors' service address is: 920 Memorial City Way, Suite 100, Houston, Texas 77024.

[2]   Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the *Fourth Amended Joint Chapter 11 Plan (with Technical Modifications) of Cobalt International Energy, Inc. and Its Debtor Affiliates*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan").  The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.  To the extent of a conflict between the terms contained in the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

*Statement for the Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 274], and (iii) the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 275];

e.      obtained on January 25, 2018, entry of the *Order Approving Debtors' Motion for Entry of an Order (I) Authorizing Performance under Settlement Agreement, (II) Approving Settlement Agreement, and (III) Granting Related Relief* [Docket No. 300] (the "Angola Settlement Order"), which authorized the Debtors to cause certain of their wholly-owned non-Debtor subsidiaries to consummate and perform under the Sonangol Settlement;

f.      obtained on January 25, 2018, entry of the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling an Auction, (III) Approving Form and Manner of Notice Thereof; (IV) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Disclosure Statement and Plan Confirmation and (V) Granting Related Relief* [Docket No. 299] (the "Bidding Procedures Order");

g.      obtained on February 13, 2018, entry of the *Unopposed Order Deeming Unenforceable Certain Preferential Rights* [Docket No. 417] (the "Preferential Rights Order");

h.      Filed on February 19, 2018, (i) the *Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 429] and (ii) the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 430];

i.      received on February 21, 2018, the initial installment payment of $150,000,000.00 from Sonangol pursuant to the Sonangol Settlement;

j.      obtained on February 22, 2018, entry of the *Order (I) Continuing the Hearing to Approve the Disclosure Statement, (II) Shortening the Period to File Plan Objections, and (III) Shortening the Notice Requirements Related Thereto* [Docket No. 473] (the "Scheduling Order");

k.      Filed on February 21, 2018, (i) the *Second Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 462] and (ii) the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 464];

l.       commenced on March 6, 2018, the Auction, in compliance with the Bidding Procedures Order, in which the Successful Bids (as defined in the Bidding Procedures Order) were identified;

m.      Filed on March 7, 2018, the *Notice of Successful Bidders and Backup Bidders* [Docket No. 542];

n.      Filed on March 8, 2018, (i) the *Third Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 549] and (ii) the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 553];

o.      Filed on March 8, 2018, (i) the *Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 561] and (ii) the *Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 561];

p.      obtained on March 8, 2018, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 563] (the "Disclosure Statement Order") approving of the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

q.      caused, beginning on or about March 12, 2018 (the "Solicitation Date"), the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to Confirmation of the Plan to be distributed, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Scheduling Order, the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Certificate of Service* [Docket No. 606] Filed on March 20, 2018 (the "Solicitation Affidavit");

r.      caused, on March 12, 2018, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published in *The New York Times* (national edition) and *The Houston Chronicle*, as evidenced by the *Affidavit of Publication of the Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines in The New York Times* [Docket No. 589] and the *Affidavit of Publication of the Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines in The Houston Chronicle* [Docket No. 590] (collectively, the "Publication Affidavits");

s.      Filed on March 16, 2018, and on March 29, 2018, two documents entitled *Notice of Filing of Certain Successful Bid Documents* [Docket Nos. 594, 677] which collectively attached:   (i) that certain Asset Purchase Agreement dated as of

March 7, 2018 by and among Cobalt International Energy, L.P. and Navitas Petroleum US, LLC (and by assignment pursuant to section 13.6 thereof, BOEM-qualified[3] Affiliates of Navitas Petroleum US, LLC and Beacon Offshore Energy LLC, and collectively, "Navitas"); (ii) that certain Asset Purchase Agreement dated as of March 12, 2018 by and among Cobalt International Energy, L.P. and Total E&P USA, Inc. ("Total" or "TEP USA") in respect of the Anchor assets (the "Anchor APA"); (iii) that certain Asset Purchase Agreement dated as of March 12, 2018 by and among Cobalt International Energy, L.P. and Total in respect of the exploration leases; (iv) that certain Asset Purchase Agreement dated as of March 12, 2018 by and among Cobalt International Energy, L.P., Total, and Statoil Gulf of Mexico LLC ("Statoil"); and (v) that certain Asset Purchase Agreement dated as of March 28, 2018 by and among Cobalt International Energy, L.P. and W&T Offshore, Inc. ("W&T" and together with Navitas, Total, and Statoil, the "Purchasers" and each a "Purchaser") (each, a "Sale Transaction Agreement" and collectively with any related documents and instruments, the "Sale Transaction Documentation");

t.     Filed on March 21, 2018, the *Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 612] (as the same may have been subsequently modified, supplemented, or otherwise amended from time to time, the "Plan Supplement");

u.     obtained on March 26, 2018, entry of the *Order Extending (I) the Plan Objection Deadline for Certain Parties and (II) the Deadline to File a Confirmation Brief and Plan Objection Reply* [Docket No. 623] (the "Scheduling Extension Order");

v.     Filed on March 29, 2018, the *First Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 686];

w.     Filed on March 31, 2018, the *Fourth Amended Joint Chapter 11 Plan (with Technical Modifications) of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 704];

---

[3]     "BOEM" shall mean The Bureau of Ocean and Energy Management.

x.      Filed on April 2, 2018, the *Certification of P. Joseph Morrow IV with Respect to the Tabulation of Votes on the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 721] (the "<u>Voting Report</u>");

y.      Filed on April 2, 2018, the *Debtors' Memorandum of Law in Support of Confirmation of Joint Chapter 11 Plan* [Docket No. 727] (the "<u>Confirmation Brief</u>");

z.      Filed on April 3, 2018, the *Fourth Amended Joint Chapter 11 Plan (with Technical Modifications) of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 746];

aa.      Filed on April 3, 2018, the *Second Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 752];

bb.      Filed on April 4, 2018, the *Third Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 762]; and

cc.      Filed on April 4, 2018, the *Fourth Amended Joint Chapter 11 Plan (with Technical Modifications) of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 768]; and

dd.      Filed on April 5, 2018, the *Fourth Amended Joint Chapter 11 Plan (with Technical Modifications) of Cobalt International Energy, Inc. and Its Debtor Affiliates* [Docket No. 776].

This Court having:

a.      entered, on January 25, 2018, the Bidding Procedures Order;

b.      entered, on February 13, 2018, the Preferential Rights Order;

c.      entered, on February 22, 2018, the Scheduling Order;

d.      entered, on March 8, 2018, the Disclosure Statement Order;

e.      entered, on March 26, 2018, the Scheduling Extension Order;

f.      set March 27, 2018, at 4:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan (the "<u>Voting Deadline</u>");

g.      set March 27, 2018, at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections in opposition to the Plan (the "<u>Plan Objection Deadline</u>"), which deadline was extended to March 29, 2018 pursuant to the Scheduling Extension

Order with respect to the Committee, Whitton, and the Unsecured Notes Ad Hoc Committee;

h.     set April 2, 2018, at 5:00 p.m. (prevailing Central Time) as the deadline for parties in interest to File briefs in support of Confirmation of the Plan and replies to objections Filed in opposition to the Plan (the "<u>Confirmation Brief Deadline</u>");

i.     set April 3, 2018, at 8:30 a.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

j.     reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights Filed by parties in interest on the docket of the Chapter 11 Cases;

k.     held the Confirmation Hearing;

l.     heard the statements and arguments made by counsel in respect of Confirmation;

m.     considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

n.     entered, on April 5, 2018, rulings on the record at the Confirmation Hearing;

o.     overruled any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

p.     taken judicial notice of all papers and pleadings Filed in the Chapter 11 Cases.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.   **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THE COURT MADE CERTAIN ORAL FINDINGS AND CONCLUSIONS AT THE CONFIRMATION HEARING.  THOSE FINDINGS AND CONCLUSIONS CONTROL OVER ANY INCONSISTENCY WITH THIS ORDER. IT IS ADDITIONALLY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED, THAT:

**A.    Jurisdiction and Venue.**

1.      Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408–1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334. The Court has exclusive jurisdiction to:  (a) determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed; and (b) enter a final order with respect thereto.

**B.    Eligibility for Relief.**

2.      The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**C.    Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On the Petition Date, the Debtors commenced the Chapter 11 Cases.   On December 14, 2017, the Court entered an order [Docket No. 33] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).   The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

**D.      Appointment of the Committee.**

4.      On December 21, 2017, the U.S. Trustee appointed the Committee to represent the interests of the unsecured creditors of the Debtors in the Chapter 11 Cases [Docket No. 117].

**E.      Plan Supplement.**

5.      On March 21, 2018, the Debtors Filed the Plan Supplement with the Court, which the Debtors subsequently amended on March 29, 2018, April 3, 2018, and on April 4, 2018.  The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of the filings in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Scheduling Order, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  The Sale Transaction Documentation and all documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and the Sale Transaction Documentation, the Debtors reserve the right to alter, amend, update, or modify the Sale Transaction Documentation, the Plan Supplement, or any of the documents attached to the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.

**F.      Modifications to the Plan.**

6.      On March 31, 2018, April 3, 2018, and April 4, 2018, the Debtors made certain modifications to the Plan.  Pursuant to section 1127 of the Bankruptcy Code, these modifications to the Plan and any other modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and

solicitation materials served pursuant to the Scheduling Order and the Disclosure Statement Order and the Sale Transaction Documentation, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

7.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

**G.     Objections Overruled.**

8.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.  To the extent of any conflict between this Confirmation Order and the oral findings and conclusions of the Court on the record at the Confirmation Hearing, the oral findings and conclusions of the Court shall control.

**H.     Bidding Procedures Order, Scheduling Order, Disclosure Statement Order, and Scheduling Extension Order.**

9.      On January 25, 2018, the Court entered the Bidding Procedures Order, which, among other things:  (a) approved the Bidding Procedures, scheduled the Auction, and approved the form of notice thereof; (b) set March 26, 2018, at 4:00 p.m. (prevailing Central Time), as the Voting Deadline; (c) set March 26, 2018, at 4:00 p.m. (prevailing Central Time), as the Plan Objection Deadline; and (d) scheduled a hearing to consider approval of the Sale Transaction to coincide with the Confirmation Hearing.

10.     On February 22, 2018, the Court entered the Scheduling Order, which, among other things:  (a) extended the Voting Deadline to March 27, 2018, at 4:00 p.m. (prevailing Central Time); (b) extended the Plan Objection Deadline to March 27, 2018, at 4:00 p.m. (prevailing Central Time); (c) set March 28, 2018, at 11:59 p.m. (prevailing Central Time) as the Confirmation Brief Deadline; and (d) shortened the notice requirements and solicitation periods relating thereto as authorized by Bankruptcy Rule 9006(c).

11.     On March 8, 2018, the Court entered the Disclosure Statement Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) approved the Solicitation Procedures; (c) approved the Solicitation Packages; and (d) set April 3, 2018 at 8:30 a.m. (prevailing Central Time) as the date and time for the Confirmation Hearing.

12.     On March 26, 2018, the Court entered the Scheduling Extension Order, which: (a) extended the Plan Objection Deadline for the Committee, Whitton, and the Unsecured Notes Ad Hoc Committee to March 29, 2018; and (b) extended the Confirmation Brief Deadline to April 2, 2018, at 5:00 p.m. (prevailing Central Time).   The Debtors have complied with the Scheduling Order and the Disclosure Statement Order, including the Solicitation Procedures contained therein, in all respects.

**I.      Transmittal and Mailing of Materials; Notice.**

13.     As evidenced by the Solicitation Affidavit, the Publication Affidavits, and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Scheduling Order, the Disclosure Statement Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan in compliance with the

Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), the Scheduling Order, and the Disclosure Statement Order. The Debtors provided due, adequate, and sufficient notice of the Voting Deadline, the Plan Objection Deadline, the Confirmation Hearing, and any applicable bar dates and hearings described in the Scheduling Order and the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Scheduling Order, and the Disclosure Statement Order. No other or further notice is or shall be required.

**J.     Solicitation.**

14.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Scheduling Order, the Disclosure Statement Order, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

**K.     Voting Report.**

15.     On April 2, 2018, the Debtors Filed the Voting Report. The Voting Report was admitted into evidence during the Confirmation Hearing without objection. The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

16.     As set forth in the Plan and the Disclosure Statement, holders of Claims in Classes 4, 5, and 6 (collectively, the "Voting Classes") were eligible to vote to accept or reject the Plan in accordance with the Solicitation Procedures. Holders of Claims in Classes 1, 2, and 3 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to

accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims or Interests in Classes 7 and 10 (collectively, the "Deemed Rejecting Classes") are Impaired and are entitled to no recovery under the Plan, and are therefore deemed to reject the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims in Class 8 are Impaired under the Plan, but notwithstanding such Impairment, shall not vote to accept or reject the Plan. Holders of Interests in Class 9 are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to reject the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.

**L.      Bankruptcy Rule 3016.**

17.      The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately Filed the Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the Entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**M.      Burden of Proof.**

18.      The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence. Each witness who testified on behalf of the Debtors in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**N.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

19.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

20.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.      Sections 1122 and 1123(a)(1)—Proper Classification.**

21.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into ten (10) different Classes, based on differences in the legal nature or priority of such Claims and Interests.  Administrative Claims (including Fee Claims), Priority Tax Claims, and statutory fees are addressed in Article II of the Plan and are required not to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code.  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests.

22.      In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

ii.      **Sections 1123(a)(2)—Specification of Unimpaired Classes.**

23.      Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan.  In addition, Article II of the Plan specifies that Administrative Claims (including Fee Claims), Priority Tax Claims, and statutory fees are Unimpaired, although the Plan does not classify these Claims.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

iii.     **Sections 1123(a)(3)—Specification of Treatment of Impaired Classes.**

24.      Article III of the Plan specifies the treatment of each Impaired Class under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

iv.     **Sections 1123(a)(4)—No Discrimination.**

25.      Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

v.      **Section 1123(a)(5)—Adequate Means for Plan Implementation.**

26.      The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including:  (a) the compromise and settlement of Claims, Interests, Causes of Action, and controversies, including (i) resolution of any disputes between the First Lien Ad Hoc Group and the First Lien Indenture Trustee, on the one hand, and the Debtors, on the other hand, including any disputes pertaining to the allowance and treatment of the First Lien Notes Claims, as set forth in Article III.B.3 of the Plan (the "First Lien Settlement"), and (ii) resolution of the Committee's objection to Confirmation and all disputes among the Debtors, the Committee, and the Second Lien

Noteholders (including, without limitation, those matters related to the pleadings Filed by the Committee set forth in paragraph 104 herein); (b) the sources of consideration for distributions under the Plan, including the Sale Transaction Proceeds, any proceeds generated from the Sonangol Settlement, subject to further order of the Court in accordance with the Angola Settlement Order, Cash on hand, and any other Cash received or generated by the Debtors; (c) approval of the Sale Transaction and Restructuring Transactions; (d) the designation and appointment of the Plan Administrator; (e) the vesting of the Plan Administrator Assets in the Plan Administrator; (f) the funding of the Wind Down Budget through which the Plan Administrator will fulfill its obligations under the Plan; (g) the establishment of the Disputed Claims Reserve, the Professional Fee Escrow, and the Subsidiary GUC Settlement Reserve; (h) the manner of making distributions of property under the Plan; (i) the general authority for all corporate actions necessary to effectuate the Plan; (j) the preservation of Causes of Action to the extent not released, exculpated, or enjoined under the Plan (including, but not limited to the Retained Causes of Action); (k) the cancellation of certain existing agreements, obligations, instruments, and Interests; (l) the continuance of certain agreements, obligations, instruments, and Interests; (m) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan; and (n) a process for closing certain of the Chapter 11 Cases.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.   Section 1123(a)(6)—Non-Voting Equity Securities.

27.     The Plan does not provide for the issuance of equity or other securities of the Debtors.   Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

vii.     **Section 1123(a)(7)—Directors, Officers, and Trustees.**

28.     Article IV.L of the Plan discharges all of the officers, directors, members, and managers of the Debtors and their non-Debtor subsidiaries from their duties effective as of the Effective Date without any further action.  Article IV.D provides for the appointment of the Plan Administrator.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

b.     **Section 1123(b)—Discretionary Contents of the Plan.**

29.     The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Any such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b) of the Bankruptcy Code.

i.     **Impairment/Unimpairment of Any Class of Claims or Interests.**

30.     Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims or Interests.  Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

ii.     **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

31.     Article V of the Plan provides for the rejection of the Executory Contracts and Unexpired Leases as of the Effective Date unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed or assumed and assigned to a

Purchaser or another third party, as applicable, in connection with a Sale Transaction; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Liability Insurance Policy.

32.     Entry of this Confirmation Order by the Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption or assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan, including the Sale Transaction Documentation, are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date.  Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

### iii.     Compromise and Settlement.

33.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and the Cash Collateral Order, the provisions of the Plan and this Confirmation Order constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of this Confirmation Order constitutes the Court's approval of all compromises and settlements of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromises and/or settlements are in the best interests of the Debtors, the Estates, and holders of Claims and Interests and are fair, equitable, and

reasonable, including the First Lien Settlement, pursuant to which, (A) the First Lien Notes Claims shall be Allowed in the amount of $500,000,000.00 plus (i) the applicable premium in the amount of $49,187,703.00, plus (ii) accrued and unpaid interest in the amount of $1,940,972.00, plus (iii) postpetition interest at the default rate in accordance with the First Lien Indenture (payable on the outstanding principal and applicable premium), plus (iv) all other amounts owing under the First Lien Indenture, less (v) $3,500,000.00, and (B) on the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed First Lien Notes Claim shall receive payment in full in Cash.  The entry of this Confirmation Order further constitutes the Court's approval of the compromises and settlements set forth in the Cash Collateral Order, including the Releases and Stipulations contained therein, as well as a finding by the Court that it was an exercise of the Debtors' reasonable business judgment to agree to such Releases and Stipulations in exchange for the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral (as such terms are defined in the Cash Collateral Order).

### iv.  Debtor Release.

34.     The releases of claims and Causes of Action by the Debtors described in Article VIII.B of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtors' or the Plan Administrator's pursuit of any such claims against the Released Parties would not be in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

35.     The Debtor Release is furthermore a necessary and integral part of the Plan, and the scope of the Debtor Release is appropriately tailored under the facts and circumstances of the

Chapter 11 Cases. The Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by such releases; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or the Estates asserting any Claim or Cause of Action released pursuant to such release.

36.   The provisions of the Plan, including the Debtor Releases, have been subject to extensive negotiations since the Petition Date by sophisticated parties represented by able counsel and financial advisors, including the Committee. The Debtor Release is therefore the result of an arm's-length negotiation process.

37.   The Debtor Release appropriately offers protection to parties that participated in the Chapter 11 Cases. Specifically, the Released Parties under the Plan made significant concessions and contributions to the Chapter 11 Cases, including, as applicable, actively supporting the Plan and the Chapter 11 Cases and waiving substantial rights and Claims against the Debtors under the Plan.

38.   The Debtor Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers: (a) made a substantial and valuable contribution to the Chapter 11 Cases and the Estates; (b) conducted a competitive and value-maximizing Auction and sale process for the assets of the Debtors and their wholly-owned non-Debtor subsidiaries, including negotiating a favorable resolution with Sonangol through the Sonangol Settlement; (c) invested significant time and effort to preserve the value of the Estates in a challenging environment; (d) actively participated in numerous meetings, negotiations, and implementation

discussions during the Chapter 11 Cases; and (e) are entitled to indemnification from the Debtors under state law, organizational documents, and agreements. Litigation by the Debtors against the Debtors' directors and officers would be a distraction, and would decrease rather than increase the value of the Estates. The releases of the Debtors' directors and officers contained in the Plan have the consent of the Debtors and are in the best interests of the Estates.

39.     In light of, among other things, the value provided by the Released Parties to the Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

        **v.      Release by Holders of Claims and Interests.**

40.     The release by the Releasing Parties (the "Third Party Release"), set forth in Article VIII.C of the Plan, is an essential provision of the Plan. The scope of the Third Party Release in the Plan is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and the Releasing Parties received due and adequate notice of the Third Party Release and the opportunity to opt out of the Third Party Release. The Third Party Release is: (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (d) materially beneficial to, and in the best interests of, the Estates, the Debtors, and their stakeholders, and is important to the overall objectives of the Plan to resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of the Released Parties; and (h) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

41.     Furthermore, the Third Party Release is consensual, as all parties in interest, including all Releasing Parties, were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to Confirmation of the Plan and were properly informed that all holders of Claims against or Interests in the Debtors that did not opt out of the Third Party Release or File an objection with the Court in the Chapter 11 Cases that expressly objected to the inclusion of such holder as a Releasing Party under the provisions contained in Article VIII of the Plan would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all claims and Causes of Action against the Debtors and the other Released Parties.  Additionally, the release provisions of the Plan were conspicuously emphasized with boldface type in the Plan, the Disclosure Statement, the Solicitation Packages, the ballots, and the applicable notices.

42.     The Third Party Release is an integral part of the Plan.  Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third Party Release, and no other disclosure is necessary.  The Debtors, as evidenced by the Solicitation Affidavit, provided sufficient notice of the Third Party Release, and no further or other notice is necessary.  For the avoidance of doubt, parties that opted out of the Third Party Release shall not be Releasing Parties or Released Parties.

43.     Like the Debtor Release, the Third Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally.  As such, the Third Party Release appropriately offers certain protections to parties who constructively participated in and contributed to the Debtors' chapter 11 process.

### vi.     Exculpation.

44.     The exculpation provisions set forth in Article VIII.D of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation and the exculpation

provisions set forth in Article VIII.D of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### vii.     Injunction.

45.     The injunction provisions set forth in Article VIII.E of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third Party Release, and the exculpation provisions in Article VIII.D of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.    Preservation of Certain Causes of Action and Assignment to Plan Administrator.

46.     Article IV.J of the Plan and the Plan Supplement appropriately provide for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b) of the Bankruptcy Code.  Causes of Action not released or exculpated by the Debtors will be transferred or assigned to the Plan Administrator, as provided by the Plan.  On the Effective Date, and except to the extent otherwise reserved in the Plan Supplement, all Avoidance Actions shall be deemed waived, relinquished, and extinguished, and no Avoidance Actions shall revert to creditors of the Debtors.

47.     The Plan and the Plan Supplement are specific and provide meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain, and all parties in interest received adequate notice with respect to such Retained Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, the Estates, and holders of Claims or Interests.  For the avoidance of any doubt, Causes of Action released or exculpated under the Plan will not be retained by the Plan Administrator and will not constitute Plan Administrator Assets.  Notwithstanding anything to the contrary herein, in the Plan, or in the Plan Supplement, the Debtors retain no Causes of Action against (a) Total or its

Affiliates, apart from any counterclaims that may exist to the Proof of Claim filed by Total, and (b) Statoil, Statoil USA E&P Inc. or their Affiliates.

     **c.**     **Section 1123(d)—Cure of Defaults.**

     48.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Executory Contract or Unexpired Lease to be assumed or assumed and assigned shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described in Article V.C of the Plan, by the Debtors as an Administrative Claim or by a Purchaser in accordance with the Sale Transaction Documentation, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputes pertaining to Cure Claims will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to Executory Contracts and Unexpired Leases assumed or assumed and assigned in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

     **d.**     **Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

     49.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

50.     The Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code, the Disclosure Statement Order, and the Scheduling Order.

51.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Scheduling Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.D of the Plan.

52.     The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

e.     **Section 1129(a)(3)—Proposal of Plan in Good Faith.**

53.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Sale Transaction, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the

hearing on the Disclosure Statement, the Auction and sale process, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

54.      The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors and officers, the Committee, the First Lien Ad Hoc Group, the First Lien Indenture Trustee, the Second Lien Ad Hoc Group, the Second Lien Indenture Trustee, each Purchaser, and certain other stakeholders.  The provisions of the Plan and the process leading to the Plan's formulation assure fair treatment of holders of Claims or Interests, serve the public interest, and provide independent evidence of the Debtors' and such other parties' good faith.  Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were Filed, and the Plan was negotiated and proposed, with the intention of maximizing stakeholder value and for no ulterior purpose.  Further, the Plan's classification, indemnification, exculpation, release, settlement, and injunctive provisions, including Articles VIII.A–E of the Plan, have been negotiated in good faith and at arm's length, consistent with sections 105, 1123, 1129, and 1142 of the Bankruptcy Code and Bankruptcy Rule 9019.   Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

   **f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

55.      Any payment made or to be made by the Debtors, the Plan Administrator, or by a Person issuing securities or acquiring property under the Plan, as applicable, for services or costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

g.  **Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

56.    Because the Plan provides for the liquidation of the Estates' assets and the resignation of the officers, directors, and managers of the Debtors and their non-Debtor subsidiaries, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Plan Administrator, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity and compensation of the Plan Administrator in the Plan Supplement.

h.  **Section 1129(a)(6)—Rate Changes.**

57.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require any such governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

i.  **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

58.    The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establish that each holder of Allowed Claims or Interests in each Class have either accepted the Plan or will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interest of their creditors and equity holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**j.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Voting Classes.**

59.      Because the Plan has not been accepted by the Deemed Rejecting Classes and Classes 5 and 6, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a), of the Bankruptcy Code.  Thus, although the Plan does not satisfy section 1129(a)(8) with respect to the Deemed Rejecting Classes and Classes 5 and 6, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and Classes 5 and 6, and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**k.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

60.      The treatment of Administrative Claims (including Fee Claims), Priority Tax Claims, and statutory fees under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**l.      Section 1129(a)(10)—Acceptance by at Least One Voting Class.**

61.      As set forth in the Voting Report, Class 4 voted to accept the Plan by the requisite numbers and amount of Claims determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).  As such, there is at least one Voting Class that has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code), for each Debtor.  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**m.      Section 1129(a)(11)—Feasibility of the Plan.**

62.      The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the

dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and contemplates the liquidation of the Debtors' assets and the winding down of the Estates by, among other things, the consummation of the Sale Transaction, and is therefore not likely to be followed by the liquidation or need for further financial reorganization of the Debtors or the Plan Administrator, except as provided for in the liquidation provisions of the Plan; (d) establishes that the Debtors or the Plan Administrator will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of Allowed Claims that will receive Cash distributions pursuant to the terms of the Plan and the funding of the Disputed Claims Reserve and the Professional Fee Escrow; and (e) establishes that the Debtors or the Plan Administrator, as applicable, will have the financial wherewithal to pay any Claims that accrue, become payable, or are Allowed by Final Order following the Effective Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

  **n.**  **Section 1129(a)(12)—Payment of Statutory Fees.**

  63.  Article II.D of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code, will be paid by the Debtors or the Plan Administrator, as applicable, for each quarter (including any fraction of a quarter) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

  **o.**  **Sections 1129(a)(13)–(16)—Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

  64.  The Debtors do not owe any retiree benefits (as defined in section 1114 of the Bankruptcy Code) or domestic support obligations, are not individuals, and are not nonprofit

corporations.  Therefore, sections 1129(a)(13)–(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

        **p.**      **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Voting Classes.**

      65.      Even though certain of the Voting Classes have not accepted the Plan, the Plan may nevertheless be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) at least one Voting Class at each Debtor voted to accept the Plan; (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims in the Voting Classes that voted to reject the Plan; and (c) the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes because there is no Class of equal priority receiving more favorable treatment than the Deemed Rejecting Classes and no Class that is junior to the Deemed Rejecting Classes is receiving or retaining any property under the Plan on account of their Claims or Interests.  As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code, and the Plan may therefore be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied.

        **q.**      **Section 1129(c)—Only One Plan.**

      66.      Other than the Plan (including previous versions thereof), no other plan has been Filed in the Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

        **r.**      **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

      67.      No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law (the "<u>Securities Act</u>").  As evidenced by its terms, the

principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

      **s.**      **Section 1129(e)—Not Small Business Cases.**

68.     The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**O.**      **Satisfaction of Confirmation Requirements.**

69.     Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**P.**      **Good Faith.**

70.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, the Exculpated Parties, and the Plan Administrator have been, are, and will continue acting in good faith if they proceed to:  (a) consummate the Plan, the Sale Transaction, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code.

**Q.**      **Conditions Precedent to the Effective Date.**

71.     The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

Each such condition precedent has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**R.      Implementation.**

72.      All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement and the Sale Transaction Documentation, have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and the Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**S.      Treatment of Executory Contracts and Unexpired Leases.**

73.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan and Sale Transaction Documentation provide for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases.  The Debtors have exercised their reasonable business judgment prior to the Confirmation Hearing in determining whether to assume, assume and assign, or reject each of their Executory Contracts and Unexpired Leases as set forth in Article V of the Plan, the Sale Transaction Documentation, the Plan Supplement, this Confirmation Order, or otherwise. Subject to the satisfaction of any applicable Cure Claim, each assumption, assumption and assignment, or rejection of an Executory Contract or Unexpired Lease pursuant to this Confirmation Order and in accordance with Article V of the Plan, or otherwise by order of this Court, shall be legal, valid, and binding upon the Debtors and the Plan Administrator, as applicable, and all non-Debtor Persons or Entities party to such Executory Contract or Unexpired Lease.

74.    The Debtors and each Purchaser, as applicable, have provided sufficient notice and evidence of adequate assurance of future performance for each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors or assumed by the Debtors and assigned to a Purchaser, as applicable, pursuant to the Plan and the Sale Transaction Documentation.  The Debtors have cured or provided adequate assurance that the Debtors or a Purchaser, as applicable, will cure any defaults (including by paying any Cure Claim) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors or assumed by the Debtors and assigned to a Purchaser, as applicable, pursuant to the Plan and the Sale Transaction Documentation.  The Plan and such assumptions, therefore, satisfy the requirements of section 365 of the Bankruptcy Code.

**T.    Disclosure:  Agreements and Other Documents.**

75.    The Debtors have disclosed all material facts regarding:  (a) the appointment of the Plan Administrator; (b) the dissolution of the Debtors' and their non-Debtor subsidiaries' existing boards of directors; (c) the sources and uses of Cash under the Plan; (d) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (e) the terms of the Sale Transaction Documentation and consummation of the Sale Transaction; and (f) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors or the Plan Administrator.

**U.    The Sale Transaction.**

76.    On January 25, 2018, the Bankruptcy Court entered the Bidding Procedures Order, which order established February 22, 2018 as the Bid Deadline (as defined therein) and scheduled the Auction for March 6, 2018.  To ensure that the Sale Transaction contemplated by the Sale Transaction Documentation represented the highest or otherwise best proposal, the

Debtors provided notice of the Bidding Procedures and the Auction to interested parties in the Chapter 11 Cases, and published notice of the Bidding Procedures and Auction in *The New York Times* (national edition) and *The Houston Chronicle* to provide notice to any other potentially interested parties.

77.     As of the commencement of the Auction, the Debtors received five Qualified Bids in accordance with the Bidding Procedures Order.  In an effort to maximize value for their stakeholders, the Debtors conducted the Auction over the course of over more than 12 hours that included active bidding and permitted the Debtors and their stakeholders to engage in discussions with each potential Purchaser regarding their respective proposals to acquire the Debtors' assets.  Ultimately, these discussions did not result in any higher or otherwise better offers than the Sale Transaction contemplated by the Sale Transaction Documentation. Accordingly, at the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures Order), determined that the Bids submitted by each Purchaser was a Successful Bid, and that each Purchaser was a Successful Bidder (as defined in the Bidding Procedures Order).  The Auction process afforded a full, fair, and reasonable opportunity for any Person or Entity to make a higher or otherwise better offer to purchase the assets.  The Auction was duly noticed, and conducted in a non-collusive, fair, and good-faith manner.

78.     The Plan effectuates the terms of the Sale Transaction, as set forth in the Plan and the Sale Transaction Documentation.  Upon the Closing Date (which term shall have the meaning set forth in the applicable Sale Transaction Agreement), the Debtors will transfer the Assets (as separately defined in each Sale Transaction Agreement) to the applicable Purchaser pursuant to the Sale Transaction Documentation, in each case free and clear of any and all

Claims, Liens, Encumbrances (which term shall have the meaning set forth in the applicable Sale Transaction Agreement), or other interests (other than any Assumed Liabilities and permitted Encumbrances) pursuant to sections 1123(a)(5)(D), 1123(b)(4), and 1129(b)(2)(A)(ii) of the Bankruptcy Code, and each Purchaser shall be entitled to the protections set forth in section 363 of the Bankruptcy Code.   For the avoidance of doubt, the Debtors will transfer:   (a) the Heidelberg assets to W&T; (b) the Shenandoah assets to ShenHai LLC and Beacon Offshore Energy Development LLC (as nominee for Navitas); (c) the North Platte assets to  TEP USA and Statoil; and (d) the Anchor and certain other exploration assets to TEP USA; each of whom is a Purchaser as defined herein.   Also for the avoidance of doubt, nothing in the Anchor APA shall modify the rights or obligations of any party under any  Assigned Contract (as defined in the Anchor APA), including TEP USA or its successors.

79.    The Anchor APA shall be modified as follows (and all capitalized terms used but not otherwise defined in this paragraph 79 shall have the meaning given them in the Anchor APA): TEP USA assumes all of Seller's Liabilities for Operating Expenses under the Assigned Contracts arising at or after the Effective Time; the Purchase Price shall be reduced by $750,000.00 to account for all  damages, costs, or any other expenses of Chevron U.S.A. Inc. ("CUSA") and Union Oil Company of California ("Union", and together with CUSA, "Chevron") arising before the Effective Time that are allocable to the Debtors pursuant to the relevant Assigned Contracts (the "Chevron Expenses") .  Chevron agrees to cap the Chevron Expenses in the aggregate amount of $750,000.00.   Chevron shall present all such Chevron Expenses to TEP USA within the Review Period and  TEP USA shall promptly pay such Chevron  Expenses subject to the $750,000.00 cap.   After such payment(s), any and all Chevron Expenses shall be deemed fully satisfied, waived and released, and neither the Debtors nor TEP

USA shall have any further liability whatsoever in respect of the Chevron Expenses. If at the end of the Review Period the amount of such Chevron Expenses properly due and owing is less than $750,000.00, TEP USA shall pay to the Debtors within five (5) business days of the expiration of such Review Period the difference between the aggregate amount of such Chevron Expenses and $750,000.00. Further, for the sake of clarity, the Chevron Expenses (as defined above) do not include the amounts in Cobalt's February joint interest billing in the amount of $350,767 due on April 9, 2018 (the "February JIB").

80.    Notwithstanding anything to the contrary in the Anchor APA or the Plan, the following contracts listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached as **Exhibit A** to the Plan Supplement shall not be assumed and assigned to the applicable Purchaser without the consent of the parties to such Executory Contract or Unexpired Lease or further order of the Court: (a) Data Trade Agreement (Tracking No. 1087815); (b) Model License Agreement (Tracking No. 1084915); (c) Velocity Model License Agreement (Tracking No. 1161852); and (d) Mutual Confidentiality Agreement (Tracking No. 1213162).

81.    In addition, pursuant to the Sale Transaction Documentation, each Purchaser will make all payments on account of any Assumed Liabilities pursuant to and in accordance with such Purchaser's respective Sale Transaction Agreement, and will pay all Cure Claims, if any, pursuant to sections 365 of 1123 of the Bankruptcy Code and in accordance with each such Purchaser's Sale Transaction Agreement.

## V.    Business Judgment; Highest or Best Offers.

82.    The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, each of the transactions constituting the Sale Transaction, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors and the Estates. Such

business reasons include, but are not limited to, the facts that: (i) the value of the Debtors' assets may materially deteriorate if the Sale Transaction is not consummated in a timely fashion; (ii) the transactions contemplated by the Sale Transaction Agreements constitute the highest or otherwise best offer for the assets subject to each such agreement; and (iii) unless each of the transactions contemplated by the Sale Transaction Agreements is concluded expeditiously as provided for in this Confirmation Order and pursuant to the Sale Transaction Documentation, potential creditor recoveries may be (and in the case of recoveries on from the North Platte assets, will be) substantially diminished.

83.     The Sale Transaction Agreements constitute the highest or best offers for the Debtors' assets and will provide a greater recovery for the Estates than would be provided by any other available and viable alternatives.  The Debtors' determination that the Sale Transaction Agreements constitute the highest or best offers for the Debtors' assets constitutes a valid and sound exercise of the Debtors' business judgment.  Each of the Sale Transaction Agreements represents a fair and reasonable offer to purchase the relevant assets of the Debtors under the circumstances of the Chapter 11 Cases.  Approval of each of the Sale Transaction Agreements and the entirety of the Sale Transaction Documentation, and the prompt consummation of the Sale Transaction contemplated thereby, is in the best interests of the Debtors and the Estates.

**W.     _Good Faith of Purchasers; No Collusion._**

84.     No Purchaser is an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

85.     Each Purchaser is purchasing the applicable assets in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to paragraph 133 below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in

connection with the Sale Transaction in that, *inter alia*: (i) each Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Debtors' assets; (ii) each Purchaser complied with the provisions in the Bidding Procedures Order; (iii) each Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) no Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction; (v) no common identity of directors or controlling stockholders exists between any Purchaser, on the one hand, and any of the Debtors, on the other hand; and (vi) the negotiation and execution of each Sale Transaction Agreement and the entirety of the Sale Transaction Documentation were at arms' length and in good faith.

86.     None of the Debtors, the Purchasers, or any of their respective Affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, has engaged in any conduct that would cause or permit the Sale Transaction Documentation or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

## X.     No Fraudulent Transfer; Purchasers Not Successors.

87.     The Sale Transaction Agreements individually, and the Transaction Documents collectively, were not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under applicable law, and none of the parties to the Sale Transaction Documentation is consummating the Sale Transaction with any fraudulent or otherwise improper purpose. The purchase prices for the assets provided for in each Sale Transaction Agreement constitute (i) reasonably equivalent value under the

Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

88.     The transactions contemplated by the Sale Transaction Agreements do not cause there to be, and there is not, (i) a consolidation, merger, or *de facto* merger of any Purchaser, on the one hand, with or into the any Debtor or Estate, on the other hand, or vice versa, (ii) a substantial continuity between any Purchaser, on the one hand, and any Debtor or Estate, on the other hand, (iii) a common identity between any Purchaser, on the one hand, and any Debtor or Estate, on the other hand, or (iv) a mere continuation of any Debtor or any Estate, on the one hand, by any Purchaser, on the other hand.  No Purchaser is or shall be deemed, as a result of any action taken in connection with the Sale Transaction, to:  (1) be a successor (or other such similarly situated party) to any of the Debtors except as and to the extent set forth in the Sale Transaction Documentation (including with respect to any Assumed Liabilities and permitted Encumbrances under any Sale Transaction Agreement); or (2) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors.

## II. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

89.     This Confirmation Order confirms the Plan in its entirety.

90.     This Confirmation Order approves the Sale Transaction Documentation and the Plan Supplement, including the documents contained therein that may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Sale Transaction Documentation, the Plan Supplement, and any related document or

exhibit are incorporated herein by reference and are an integral part of this Confirmation Order; *provided*, *however*, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

91.    All holders of Claims that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.

92.    The terms of the Plan, the Plan Supplement, this Confirmation Order, and any related document or exhibit shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to:  (a) the Debtors; (b) the Committee; and (c) all holders of Claims or Interests.  For the avoidance of doubt and notwithstanding the prior sentence or any other contrary provision in this Confirmation Order, immediately upon the entry of this Confirmation Order:  (a) the Debtors shall be authorized to consummate the Sale Transaction pursuant to the terms of the Sale Transaction Documentation, the Plan, and this Confirmation Order; (b) the Sale Transaction Documentation and any related document or exhibit shall be effective and binding in accordance with their terms on all parties in interest, including, but not limited to:  (a) the Debtors; (b) the Committee; and (c) all holders of Claims or Interests.

93.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Sale Transaction Documentation, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.    Objections.**

94.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this

Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

**B.      Findings of Fact and Conclusions of Law.**

95.      The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**C.      Plan Modifications.**

96.      On March 31, 2018, April 3, 2018, April 4, 2018, and April 5, 2018, the Debtors made certain modifications to the Plan.  Such modifications neither materially and adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan nor require resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019.  After giving effect to such modifications of the Plan, the Plan continues to meet all applicable requirements of the Bankruptcy Code.  The disclosure of any modifications to the Plan, including on the record at the Confirmation Hearing, constitute due and sufficient notice thereof.  Accordingly, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are

conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified.  No holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of any modification of the Plan.  The modifications to the Plan are hereby approved under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Plan as modified shall constitute the Plan submitted for Confirmation.

**D.     General Settlement of Claims.**

97.     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan.  All distributions made to holders of Allowed Claims in any Class are intended to be and shall be final.

98.     The Plan, and specifically the First Lien Settlement, also constitutes a final and good faith compromise and settlement of any and all disputes and controversies between the Debtors, on the one hand, and the First Lien Ad Hoc Group and the First Lien Indenture Trustee, on the other hand.

**E.     Settlement of Disputes and Controversies Among the Debtors, the Committee, and the Second Lien Noteholders.**

99.     The Plan constitutes a final and good faith compromise and settlement of any and all disputes and controversies between the Debtors, the Committee, and the Second Lien Noteholders, and such settlement and compromise is hereby approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of each of the Debtors, the Estates and creditors.

a.      **Subsidiary GUC Settlement Reserve.**

100.    On the Effective Date (or as soon thereafter as is reasonably practicable), the Debtors shall deposit the Subsidiary GUC Settlement Reserve Amount in the Subsidiary GUC Settlement Reserve for the benefit of holders of Allowed Subsidiary General Unsecured Claims in accordance with Articles III and IV.G of the Plan.  For the avoidance of doubt, Second Lien Notes Claims, Intercompany Claims, and, if Whitton opts out of the Subsidiary GUC Settlement Reserve, the Whitton Claim shall not participate in the Subsidiary GUC Settlement Reserve.  The Second Lien Notes Claims, Intercompany Claims, and, if Whitton opts out of the GUC Settlement Reserve, the Whitton Claim shall, however, maintain a reversionary interest in the Subsidiary GUC Settlement Reserve solely to the extent the amount of Allowed Subsidiary General Unsecured Claims is less than the amount of the Subsidiary GUC Settlement Reserve; *provided* that if Whitton does not opt out of the Subsidiary GUC Settlement Reserve, only the Second Lien Notes Claims shall maintain such a reversionary interest in the Subsidiary GUC Settlement Reserve.

101.    Whitton shall have until April 16, 2018, to opt out of the Subsidiary GUC Settlement Reserve.  To the extent Whitton opts out of the Subsidiary GUC Settlement Reserve, nothing in the Plan or this Confirmation Order shall prevent Whitton from objecting to the allowance of any Intercompany Claim or claim for diminution in value asserted by the Second Lien Noteholders, or from seeking to recharacterize or equitably subordinate any such Intercompany Claim, and all objections are hereby preserved.  In the event Whitton opts out of the Subsidiary GUC Settlement Reserve, Whitton shall be deemed a notice party and served documents in accordance with Article XII.H of the Plan.

b.       **Payment of Unsecured Notes Indenture Trustee Fees.**

102.     The Unsecured Notes Indenture Trustee shall assert, and the Debtors and the Second Lien Ad Hoc Group will support allowance of a Claim for substantial contribution for the reasonable and documented unpaid fees and out-of-pocket expenses in an amount not to exceed $600,000.00, in accordance with Article XII.E of the Plan.

c.       **Cobalt GUC Settlement Amount.**

103.     The Debtors' former directors and officers that are named defendants in the Derivative Actions shall pay, and the escrow agent maintaining the settlement escrow is directed to disburse, the Cobalt GUC Settlement Amount for the benefit of holders of Allowed Cobalt General Unsecured Claims that are not Second Lien Notes Deficiency Claims.   For the avoidance of doubt, any and all Claims or Causes of Action asserted in the Derivative Actions shall be released pursuant to the Plan, and each defendant in the Derivative Actions shall be both a Released Party and a Releasing Party under the Plan.

d.       **Deemed Withdrawal of Committee Pleadings.**

104.     Upon the Effective Date, the *Motion for Entry of Order Granting Standing to the Official Committee of Unsecured Creditors of Cobalt International Energy Inc., et al. to Prosecute Estate Causes of Action to Avoid and Recover Fraudulent Transfers and Disallow Claims of Holders of First Lien Notes and Second Lien Notes* [Docket Nos. 651, 652], the *Objection of the Official Committee of Unsecured Creditors to the Fourth Amended Joint Chapter 11 Plan of Cobalt International Energy, Inc., and Its Debtor Affiliates* [Docket Nos. 676, 679], the *Objection of the Official Committee of Unsecured Creditors to Certain Putative Intercompany Claim* [Docket Nos. 684, 685], the *Objection of Official Committee of Unsecured Creditors to Debtors' Motion to Extend Exclusive Periods to File a Plan and Solicit Acceptances Thereto* [Docket No. 707], the *Expedited Motion for the Entry of*

*an Order Designating Votes of the Class 4 Second Lien Notes Secured Claims Pursuant to 11 U.S.C. §§ 105 and 1126(e)* [Docket Nos. 735, 737], and any other adverse pleadings Filed by the Committee or challenges by the Committee to the Liens and Claims of the Prepetition Secured Parties (as defined in the Cash Collateral Order) shall be deemed withdrawn; *provided* that no party shall be required to file a response or objection to any such pleading pending the Effective Date, and any failure to file such response or objection shall not be deemed a waiver of rights in the event of the nonoccurrence of the Effective Date.

**F.     Provisions Regarding the Securities Action.**

105.     To the extent required by applicable law, including but not limited to the Private Securities Litigation Reform Act, or further order of a court with competent jurisdiction, the Debtors or the Plan Administrator shall comply with any discovery obligations in the litigation captioned as *In re Cobalt International Energy, Inc. Securities Action*, No. 4:14-cv-3428 (S.D. Tex.) (the "Securities Action"), including, as applicable, preservation of the Debtors' books, records, documents, files, electronic data or other items of evidence relevant or potentially relevant to the Securities Action until the entry of a final and non-appealable order of judgment or settlement of the Securities Action.

106.     For the avoidance of doubt, to the extent any Claims of the Securities Plaintiffs (as defined in the Disclosure Statement Order) or any of the Securities Action defendants against the Debtors are Section 510(b) Claims, neither the Plan nor this Confirmation Order shall discharge or cancel any such Claims and any such Claims are preserved; provided that any recovery on such Claims shall be limited to available insurance and subject to Articles VI.I.2 and VI.I.3 of the Plan, as applicable.

G.     **The Releases, Injunction, Exculpation, and Related Provisions under the Plan.**

107.     The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party:  (a) the Debtor Release (Article VIII.B); (b) the Third Party Release (Article VIII.C); (c) the exculpation (Article VIII.D); and (d) the injunction (Article VIII.E).   For the avoidance of doubt, the exculpation provisions set forth in Article VIII.D of the Plan shall exculpate all Exculpated Parties only of any liability otherwise arising out of any action taken in their capacity as or acting for fiduciaries of the Estates or any other party in interest.

a.     **Provisions Regarding Certain Releasing and Released Parties.**

108.     Notwithstanding anything provided in the Plan or in this Confirmation Order, ACM Ltd. (f/k/a KERN Partners Ltd.), KERN Cobalt Co-Invest Partners AP LP, KERN Cobalt Group Management Ltd., FRC Founders Corporation (a/k/a First Reserve Corporation), First Reserve Fund XI, L.P., FR XI Onshore AIV L.P., First Reserve GP XI, L.P., The Goldman Sachs Group, Inc., GS Capital Partners V Fund, L.P., GS Capital Partners V Offshore Fund, L.P., GS Capital Partners V Institutional, L.P., GS Capital Partners V GmbH & Co. KG, GS Capital Partners VI Fund, L.P., GS Capital Partners VI Offshore Fund, L.P., GS Capital Partners VI Parallel, L.P., GS Capital Partners VI GmbH & Co. KG, Riverstone Holdings LLC, Riverstone Energy Coinvestment III, L.P., Carlyle/Riverstone Global Energy and Power Fund III, L.P., C/R Energy III Cobalt Partnership, L.P., C/R Cobalt Investment Partnership, L.P., C/R Energy Coinvestment II, L.P., C/R Energy Coinvestment III, L.P., C/R Energy GP III, LLC, Carlyle/Riverstone Energy Partners III, L.P., C/R Energy GP II, LLC, Carlyle/Riverstone Energy Partners II, L.P., The Carlyle Group L.P., Carlyle Energy Coinvestment III, L.P., and Carlyle

Energy Coinvestment III GP, LLC, along with any Affiliates of FRC Founders Corporation, Riverstone Holdings LLC and The Carlyle Group L.P. (collectively, the "Released Sponsor Parties") are each deemed to be both a Released Party and a Releasing Party under the Plan, on the condition that and provided that the Derivative Actions are released in full as part of the Debtor Release as of the Effective Date of the Plan, and provided further that nothing in the Plan or this Confirmation Order shall affect, alter or release any contractual or other rights, claims or obligations between or among the Released Sponsor Parties (or any of their professionals or advisors) or, for the avoidance of doubt, any rights or claims of the Released Sponsor Parties against any Person or Entity that is not a Releasing Party (and thus not releasing the Released Sponsor Parties) under the Plan. For the avoidance of doubt, if the Derivative Actions are not released in full as part of the Debtor Release as of the Effective Date of the Plan, then each of the Released Sponsor Parties shall be deemed to have opted out of the Third Party Release and each shall be neither a Released Party nor a Releasing Party.

109.    Notwithstanding anything provided in the Plan or in this Confirmation Order, Goldman Sachs & Co. LLC (f/k/a Goldman, Sachs & Co.), Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., J.P. Morgan Securities LLC, RBC Capital Markets, LLC, Credit Suisse Securities (USA) LLC, Tudor, Pickering, Holt & Co. Securities, Inc., Deutsche Bank Securities Inc., UBS Securities LLC, Scotia Capital (USA) Inc. (formerly known as Howard Weil Incorporated), Stifel, Nicolaus & Company, Incorporated, Capital One Southcoast, Inc. and Lazard Capital Markets LLC (each, an "Underwriter" in connection with the Securities Action and, collectively, the "Underwriters"), as well as any Affiliates of The Goldman Sachs Group, Inc. or of ACM Ltd. other than those expressly included in the definition of Released Sponsor Parties (each, an "Opt-Out Sponsor Party"), do not consent to the Third Party Release and have

each elected to opt out of the Third Party Release. Accordingly, no Underwriter or Opt-Out Sponsor Party shall be a Releasing Party or a Released Party under the Plan.

110.    Notwithstanding anything provided in the Plan or in this Confirmation Order, (1) this Court makes no determination or finding regarding whether the Claims or Interests held by any of the Released Sponsor Parties, the Underwriters, or any of their Affiliates are subject to or subordinated under 11 U.S.C. § 510(b), and (2) the right of the Released Sponsor Parties, the Underwriters, and any of their Affiliates to assert that their Claims or Interests should not be subject to or subordinated under 11 U.S.C. § 510(b) is expressly reserved.

**H.    Preservation of Causes of Action and Assignment to Plan Administrator.**

111.    As of the Effective Date, and except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Plan Administrator shall have vested in it, and shall retain and may enforce, any and all claims, demands, rights, defenses and Causes of Action that the Debtors or the Estates may hold against any Entity not released or exculpated by the Debtors in accordance with section 1123(b)(3) of the Bankruptcy Code, as provided by the Plan. For the avoidance of any doubt, Causes of Action released under the Plan will not transfer to the Plan Administrator and will not constitute Plan Administrator Assets.

**I.    Notices of Confirmation and Effective Date.**

112.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than the first Business Day that is seven (7) days after the Effective Date, the Plan Administrator must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation"), the form of which is attached hereto **Exhibit B**, to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice. To supplement the notice procedures described in the preceding

sentence, the Plan Administrator is authorized to cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition) and *The Houston Chronicle*.

113.    Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Service of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

114.    The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**J.      Post-Effective Date Notices.**

115.    Any pleading, notice, or other document required by the Plan to be served on or delivered to the Plan Administrator or, after the Effective Date, the Debtors, shall be served on the Plan Administrator, as set forth in the Plan Supplement.  After the Effective Date, the Plan Administrator has authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002 stating that such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Plan Administrator

is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed request.

**K.      Professional Compensation and Bar Dates.**

116.    The Professional Fee Escrow shall be established and funded a soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, as set forth in the Plan.  All Professionals or other Entities asserting a final request for payment of Fee Claims incurred during the period from the Petition Date through the Confirmation Date must File an application for final allowance of such Fee Claim no later than the first Business Day that is forty-five (45) days following the Effective Date.  All Entities' respective rights (if any) to object to allowance or payment of all or any portion of any Fee Claims shall be preserved.

117.    After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior orders of this Court, the Allowed amounts of such Fee Claims shall be determined by the Court.   The amount of Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by a Final Order.  To the extent that funds held in the Professional Fee Escrow are unable to satisfy the Allowed amount of Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan.

118.    As and to the extent provided in the Cash Collateral Order, the unpaid portion of reasonable and documented fees, costs and expenses whether incurred prior to, on, or after the Petition Date, in connection with the Chapter 11 Cases, incurred by (i) the First Lien Indenture Trustee, including fees and expenses of Wilmer Cutler Pickering Hale and Dorr LLP, as counsel to the First Lien Trustee, and (ii) the First Lien Ad Hoc Group, including fees and expenses of (A) Weil, Gotshal & Manges LLP, as counsel, and (B) PJT Partners, as financial advisor, shall

be paid in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter, in accordance therewith.

119.    Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claim Bar Date.    Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not File and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, or the Plan Administrator, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Plan Administrator or any action by the Court.

**L.    Compensation and Benefit Programs.**

120.    On the Effective Date, the Debtors shall honor and satisfy any and all remaining obligations under the Compensation and Benefit Programs, including severance payments, in accordance with Article IV.Q of the Plan.    On and after the Effective Date, the Plan Administrator shall honor any such payments.

**M.    Retention of Jurisdiction.**

121.    This Court retains jurisdiction over the Chapter 11 Cases, all matters arising out of or related to the Chapter 11 Cases and the Plan, the matters set forth in Article XI of the Plan, and other applicable provisions of the Plan.

**N.    Reports.**

122.    After the Effective Date, the Debtors have no obligation to File with the Court or serve on any parties reports that the Debtors were obligated to File under the Bankruptcy Code or a prior order of the Court, including monthly operating reports (even for those periods for which a monthly operating report was not Filed before the Effective Date), ordinary course professional

reports, and monthly or quarterly reports for Professionals; *provided, however,* that the Debtors or Plan Administrator, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.  From Confirmation through the Effective Date the Debtors will File such reports as are required under the Bankruptcy Local Rules.

**O.      The Sale Transaction.**

123.    The Sale Transaction is hereby approved, according to the terms of the Sale Transaction Documentation and the Plan.

124.    The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Plan, the Sale Transaction Documentation, the Plan Supplement, or the Confirmation Hearing, nor the consent of any counterparties to Executory Contracts or Unexpired Leases Contracts is or shall be required.

125.    A reasonable opportunity to object or be heard with respect to the Plan, the Sale Transaction Documentation, the Plan Supplement, and the Confirmation Hearing has been afforded to all interested Persons and Entities.

126.    The Debtors are the sole and lawful owners of the assets to be transferred pursuant to the Sale Transaction Documentation and:  (a) have full power and authority to execute the Sale Transaction Documentation, which has been duly and validly authorized, and all other documents contemplated thereby; (b) have all of the power and authority necessary to execute the Sale Transaction Documentation and consummate the Sale Transaction; and (c) upon entry of this Confirmation Order need no consent or approval from any other Person or Entity to transfer applicable assets, assign the Executory Contracts and Unexpired Leases, or to otherwise consummate the Sale Transaction in accordance with the Sale Transaction Documentation except as provided in paragraphs 190 through 197 hereof.  For the avoidance of doubt and in accordance with the Preferential Rights Order, nothing in this Confirmation Order or the Plan shall permit

the Debtors to assume or assume and assign an Executory Contract or Unexpired Lease free and clear of any contractual right of first refusal or similar contractual purchasing right regarding the Debtors' assets or to alter any such Executory Contract or Unexpired Lease, which rights shall apply to any subsequent transfer or sale as provided under applicable non-bankruptcy law.

127.    Pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and the Preferential Rights Order, but subject to paragraphs 190 through 197 hereof the Debtors' transfer of assets to each Purchaser as applicable, will be, as of the Effective Date, a legal, valid, and effective transfer, which transfer vests or will vest each Purchaser, as applicable, with all right, title, and interest of the Debtors to the applicable assets free and clear of all Liens, Claims, Interests, and Encumbrances (including any Liens and Claims:  (a) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or any Purchaser's, as applicable, interest in the applicable assets, or any similar rights; or (b) in respect of taxes, restrictions, rights of first refusal, consent rights or requirements, charges of interests of any kind or nature, if any, including any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership), with the exception of any permitted Encumbrances and Assumed Liabilities under the applicable Sale Transaction Agreement; *provided that* such Liens, Claims, Interests, and Encumbrances shall attach to the proceeds of the Sale Transaction, and pursuant to the Plan, parties with valid and perfected Liens on such assets shall receive the proceeds of the Sale Transaction consistent with the Prepetition Loan Documents (as defined in the Cash Collateral Order).

128.    Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, and each Purchaser, as applicable, are authorized, without further order of the Court, to:  (a) take all

actions as may be deemed necessary or appropriate to consummate any Sale Transaction pursuant to the terms of the Plan, the Sale Transaction Documentation, and this Confirmation Order; and (b) execute and deliver, perform under, consummate, and implement the Sale Transaction Documentation.  Subject to the consents required in paragraphs 190 through 197 hereof, entry of this Confirmation Order shall constitute approval of the Sale Transaction and the Sale Transaction Documentation.

129.    All Persons currently in possession of any or all of the assets subject to transfer pursuant to the Sale Transaction Documentation are hereby directed to surrender possession of such assets to the applicable Purchaser on the Closing Date.  All Persons or Entities are prohibited from taking any action to adversely affect or interfere with the ability of Debtors to transfer such assets to the applicable Purchaser, in accordance with the Sale Transaction Documentation or this Confirmation Order.

130.    Subject only to the reservations set forth in paragraphs 190 through 197 hereof, each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Transaction Documentation.

131.    To the extent provided by section 525(a) of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, condition, or refuse to renew a license, permit, charter, franchise, or other similar grant on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction.

132.    On the Closing Date, this Confirmation Order shall be considered and constitute, for any and all purposes, a full and general assignment, conveyance, and transfer of the Assets

(as separately defined in each Sale Transaction Agreement), including the assignment of any applicable Executory Contracts or Unexpired Leases, under the applicable Sale Transaction Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in and to such assets to the applicable Purchaser, subject only to the reservations set forth in paragraphs 190 through 197 hereof.  Any right of a Purchaser to a post-closing adjustment under the applicable Sale Transaction Documentation shall be paid in full as an Administrative Claim pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein or in the Plan, all of the provisions of this Confirmation Order, the Plan, the Plan Supplement, and any other applicable document relating to the Sale Transaction shall be and remain effective notwithstanding the failure of the Effective Date to occur.

P.      **Good Faith of Purchasers; No Collusion.**

133.    The transactions contemplated by the Sale Transaction Agreements and related Transaction Documents are undertaken by the Debtors and each Purchaser without collusion, as that term is defined in section 363(n) of the Bankruptcy Code, and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the transactions contemplated by any Sale Transaction Agreement shall not affect the validity of such transactions (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease), unless such authorization and consummation of such transactions are duly stayed pending such appeal. Each Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to and hereby granted the full protections of section 363(m) of the Bankruptcy Code.

**Q.      No Successor Liability for Purchasers.**

134.      Based on the record before this Court, except as otherwise expressly provided in the Plan, this Confirmation Order, or the Sale Transaction Documentation, each Purchaser: (i) does not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations of or assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and (iii) shall not have any successor or transferee liability of any kind or character; provided that each Purchaser shall promptly perform and discharge the obligations specified in its relevant Sale Transaction Agreement, including, without limitation, the Assumed Liabilities.

135.      Subject to the terms of the Sale Transaction Agreements and paragraphs 190 through 197 hereof, the assets purchased thereunder shall be transferred to and vest in the relevant Purchaser free and clear of all claims (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code). Other than the relevant Assumed Liabilities and permitted Encumbrances, such purchased assets shall specifically be taken free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code), Encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever, whether contingent, unliquidated, unmatured or otherwise, in respect of the Debtors or any property of the Debtors except to the extent provided in paragraphs 190 through 197 hereof.

136.      Except as may be provided for in paragraphs 190 through 197 hereof, no Purchaser, nor any of its Affiliates, shall be deemed, as a result of any action taken in connection with the Sale Transaction Documentation, the consummation of the transactions contemplated by the Sale Transaction Documentation, or the transfer or operation of the relevant purchased assets (a) to be a legal successor, or otherwise be deemed a successor to the Debtors; (b) to have, *de*

*facto* or otherwise, merged with or into the Debtors; (c) to be an alter ego or a continuation of the Debtors; or (d) to have any responsibility for any obligations based on any theory of successor or similar theories of liability.

137.    Without limiting the generality of the foregoing, except as otherwise expressly provided in the Sale Transaction Documentation or this Confirmation Order, no Purchaser, nor any of its Affiliates, shall be liable for any claims against or in the assets purchased under the Sale Transaction Documentation or against the Debtors or any of their predecessors or Affiliates, and the Purchasers and their Affiliates shall have no successor, transferee, derivative, or vicarious liabilities of any kind or character, whether known or unknown as of the closing of the Sale Transaction, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their Affiliates or any obligations of the Debtors or their Affiliates arising prior to the closing of the Sale Transaction, including, but not limited to: (a) any foreign, federal, state, or local revenue, pension, ERISA (as defined below), tax (including, without limitation, taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the purchased assets prior to the closing of the Sale Transaction), labor, employment, antitrust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations); (b) any products liability law, rule, regulation, or doctrine with respect to any Debtor's liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which any Debtor is a party; (d) any pension, welfare, compensation, or other benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor; (e) the

cessation of any Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (i) the Employee Retirement Income Security Act of 1974 ("ERISA"), (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967, (vii) the Americans with Disabilities Act of 1990, or (viii) Section 4980B of the Internal Revenue Code and Part 6 of Title I of ERISA; (f) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to the closing of the Sale Transaction (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*; (g) any liabilities, debts, or obligations of or required to be paid by any Debtor for any taxes of any kind for any period; (h) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the applicable assets purchased under the Sale Transaction Documentation prior to the closing of the Sale Transaction; (i) any bulk sale law; and (j) any litigation.

**R.     Immediate Binding Effect and Nonseverability of Plan Provisions upon Confirmation.**

138.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, the terms and conditions of the Plan, the Plan Supplement, the Sale Transaction Documentation, and this Confirmation Order shall be immediately effective and enforceable, not subject to any stay, and deemed binding upon the Debtors or the Plan

Administrator, as applicable, the Committee, the other Consultation Parties (as defined in the Bidding Procedures Order), the Plan Administrator, any and all holders of Claims or Interests (regardless of whether such Claims or Interests have, or are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to the Assigned Contracts or any other Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

139.    Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Court is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

140.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan, the Sale Transaction Documentation, and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Plan Administrator, each Purchaser, and their respective successors and assigns, as applicable.  On and after the Effective Date, the Debtors, each Purchaser, and the Plan Administrator, as applicable, shall be entitled to enforce the terms of this Confirmation Order and the Plan.

S.      **Vesting of Assets.**

141.    Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date:  (a) the Plan Administrator Assets (which include, for the avoidance of doubt, the Excluded Assets, and exclude, for the avoidance of doubt, the assets purchased under the Sale Transaction Documentation) shall vest in the Plan Administrator for the purpose of liquidating the Estates and consummating the Plan free and clear of all Liens, Claims, charges, or other Encumbrances; and (b) assets acquired by a Purchaser pursuant to the Sale Transaction Documentation shall be preserved and shall vest in such Purchaser, free and clear of all Liens, Claims, charges, and other Encumbrances other than any permitted Encumbrances.

142.    For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, this Confirmation Order, or the Sale Transaction Documentation but subject to paragraphs 190 through 197 hereof, the assets acquired under the Sale Transaction Documentation shall be preserved and shall vest in the applicable Purchaser, free and clear of all obligations of the Debtors, unless and to the extent such obligation is a permitted Encumbrance or an Assumed Liability pursuant to the terms of the applicable Sale Transaction Agreement.

143.    Notwithstanding anything to the contrary in the Plan, this Confirmation Order or the Sale Transaction Documentation, all rights of the Debtors pertaining to any permitted Encumbrances, including any right to remove, relocate, alter, limit or amend any such permitted Encumbrance or the particular facilities or installations located thereon, under applicable law, the Executory Contract or Unexpired Lease providing for such permitted Encumbrance, or otherwise, are preserved, regardless of whether the Executory Contract or Unexpired Lease pursuant to which such permitted Encumbrance arose is rejected by the Debtors, and all such rights shall be conveyed to the applicable Purchaser in accordance with the terms of the

applicable Sale Transaction Agreement free and clear of all Liens, Claims, charges, and other Encumbrances other than any permitted Encumbrances.

**T.      Effectiveness of All Actions.**

144.    Upon the Effective Date, except as set forth in the Plan or this Confirmation Order, all actions contemplated by the Plan and the Sale Transaction Documentation (including the Sale Transaction and any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors or their non-Debtor subsidiaries, directors, managers, or officers of the Debtors or their non-Debtor subsidiaries, or any other Entity or Person, including the transfer of assets of the Debtors to the Plan Administrator and the dissolution or winding up of the Debtors.

145.    Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Plan Administrator, and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

146.    To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the Debtors or the Plan Administrator will be required to authorize the Debtors or the Plan Administrator, as applicable, to enter into, execute and deliver, adopt or amend, as the

case may be, any such contract, instrument, release, or other agreement or document related to the Plan or the Sale Transaction Documentation, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtors or the Plan Administrator, as applicable, enforceable in accordance with the respective terms thereof.

**U.    Post-Effective Date Corporate Existence and Appointment of the Plan Administrator.**

147.    On the Effective Date, the terms of all directors, managers, officers, and employees of all Debtors and their non-Debtor subsidiaries shall be deemed to have expired, and all such directors, managers, and officers shall be released of their duties. A representative of the Plan Administrator shall:  (a) be appointed as the sole manager and sole officer of the Debtors; (b) succeed to all of the powers of the Debtors' directors and officers under applicable law or otherwise; and (c) appoint new directors and officers of the non-Debtor subsidiaries.

148.    From and after the Effective Date, the Plan Administrator shall be responsible for, among other things:  (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible;[4] (b) resolving Disputed Claims; (c) making all distributions to holders of Allowed Claims in accordance with the Plan; (d) pursuing or otherwise commencing and litigating any Causes of Action (other than those released pursuant to the Plan or pursuant to any prior settlement approved by the Bankruptcy Court), and only to the extent the benefits of such enforcement or prosecution are reasonably believed by the Plan Administrator to outweigh the costs associated therewith; (e) filing appropriate tax returns; and (f) administering the Plan in an efficacious manner.

---

[4]    The Plan Administrator's Wind-Down Budget shall explicitly provide for, among other things, funds sufficient to pay, and segregated for the exclusive payment of, the Debtors' share of all delay rental payments coming due within one year from the Effective Date in respect of exploration leases that the Debtors are assuming under the Plan.

149.    The Plan Administrator shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including motions, contested matters, and adversary proceedings pending in the Court, and all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

150.    The Committee shall select the Member to serve on the Plan Administrator Committee with Lead Member and Chairman Mr. Nader Tavakoli.  The Committee has selected Mr. John Young to serve as such Member.   Mr. Young shall be compensated at a fee of $20,000.00 per month, which fees shall not exceed twelve (12) months.   Notwithstanding the foregoing, if Whitton opts out of the Subsidiary GUC Settlement Reserve or does not opt out of the Subsidiary GUC Settlement Reserve with an Allowed Claim of $15,000,000 or less, then the Plan Administrator shall solely be Mr. Tavakoli as the Lead Member and Chairman.  The Plan Administrator shall take no action with respect to the Whitton Claim before the earlier of April 16, 2018 and Whitton's election not to opt out of the Subsidiary GUC Settlement Reserve.

V.      **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

151.    Subject only to the reservations set forth in paragraphs 190 through 197 hereof, this Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authorities with respect to the implementation or Consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Sale Transaction Documentation, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**W.     Restructuring Transactions.**

152.     On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors may take all actions as may be necessary or appropriate to effect any Restructuring Transactions, including:  (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) rejection or assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (5) subject to the occurrence of the Effective Date, the consummation of the transactions contemplated by the Sale Transaction.

**X.     Release of Liens.**

153.     Except as otherwise provided in this Confirmation Order, the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, any Lien, mortgage, deed of trust, pledge, or other security interest securing any Secured Claim shall be deemed fully released, settled, and compromised and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such holder and to take such actions, at the expense of the Debtors or the Plan Administrator, as the case may be, and as may be reasonably requested by the Debtors or the Plan Administrator, as

the case may be, to evidence the release of such Lien, including, without limitation, the execution, delivery, filing, or recording of such releases as may be reasonably requested by the Debtors or the Plan Administrator at the sole expense of the Debtors or the Plan Administrator, as the case may be. The filing of this Confirmation Order with any federal, state, provincial or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims, and other interests described above.

154.    Except to the extent of any differing procedures set forth in any Sale Transaction Documentation (including with respect to any Assumed Liabilities and permitted Encumbrances under any Sale Transaction Agreement), if any Person or Entity which has filed statements or other documents or agreements evidencing Liens, Interests or Encumbrances on, or Claims in, the Assets (as separately defined in each Sale Transaction Agreement) shall not have delivered to the Debtors before the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, Interests or Encumbrances which the Person or Entity has or may assert with respect to such Assets, the applicable Purchaser, the Debtors, and the Plan Administrator are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person or Entity with respect to such Assets. Without limiting the foregoing, a certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority and that shall be sufficient to cancel or extinguish any of the Liens and Claims of record except the Assumed Liabilities and permitted Encumbrances.

155.    Subject to the reservations set forth in paragraphs 190 through 197 hereof, this Confirmation Order is binding upon and governs the acts of all Persons and Entities, including,

without limitation, all county clerks, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons and Entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments (including, for the avoidance of doubt, the documents and instruments set forth in **Schedule 1** hereto), or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing Entities is hereby directed to and shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate, effectuate or reflect the terms of the Sales Transaction.

**Y.    Injunctions and Automatic Stay.**

156.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**Z.    Cancellation of Existing Securities and Agreements.**

157.    Except as otherwise provided in the Plan, the Sale Transaction Documentation, any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, or this Confirmation Order, on the Effective Date:  (a) all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no

force or effect; (b) the Distribution Record Date for the Second Lien Notes Claims shall be the Effective Date and the Second Lien Indenture Trustee shall be authorized to notify DTC of same upon entry of this Confirmation Order and to direct DTC to freeze the positions of the Second Lien Notes as of the Effective Date; (c) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be deemed satisfied in full, released, and discharged; and (d) the First Lien Indenture Trustee, the Second Lien Indenture Trustee, the 2.625% Senior Notes Indenture Trustee, and the 3.125% Senior Notes Indenture Trustee shall, respectively, all be automatically and fully discharged of all their respective duties and obligations associated with the First Lien Notes, the First Lien Indenture, the Second Lien Notes, the Second Lien Indenture, the 2.625% Senior Notes, the 2.625% Senior Notes Indenture, the 3.125% Senior Notes, the 3.125% Senior Notes Indenture, and all related documents.

158.    Notwithstanding the foregoing and anything in the Plan, the Sale Transaction Documentation, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement to the contrary, the Second Lien Indenture Trustee shall retain the rights:  (i) to receive distributions under the Plan; (ii) to exercise its charging Lien for the payment of its fees, expenses, and other charges to which it is entitled and for indemnification as provided in the Second Lien Indenture; (iii) to disburse the net distributions, after exercising its charging Lien, to the Second Lien Noteholders in accordance with the terms of the Second Lien Indenture; and

(iv) if, and only if, an objection is Filed or an adversary proceeding is commenced challenging the allowance of the Second Lien Notes Claims, including, without limitation, the amount of the Second Lien Notes Claims, the extent, priority, or validity of the Liens and security interests securing the Second Lien Notes, or any Claim for diminution in value of the Second Lien Notes Secured Claim pursuant to the Cash Collateral Order (collectively, "Second Lien Claim Objections"), which are not resolved prior to or as of the Effective Date, the Second Lien Indenture Trustee retains the additional limited right under the Second Lien Indenture to prosecute the allowance of the Second Lien Notes Claims and to defend against the Second Lien Claims Objections on behalf of the Second Lien Noteholders, including appearing in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court regarding the Second Lien Claims Objections; *provided, further,* in such event, on the first Business Day following the Effective Date, the Plan Administrator shall make a partial disbursement to the Second Lien Indenture Trustee with respect to the Second Lien Notes Claims in the amount of $8,000,000.00, which the Second Lien Indenture Trustee shall be entitled to use for payment of its fees and expenses, including the fees and expenses of its attorneys or any other advisors or consultants, to pay any liabilities for which it is entitled to be indemnified under the Second Lien Indenture, including any such fees, expenses, and liabilities incurred in connection with prosecuting the Second Lien Notes Claims and defending against the Second Lien Claims Objections, but the Second Lien Indenture Trustee shall not distribute any of said amount to any Second Lien Noteholders unless and until this Court enters an Order allowing the Second Lien Notes Claims in an amount sufficient to permit such disbursement; and *provided, further*, that the Second Lien Indenture Trustee shall retain all of the rights, benefits, and protections provided to the Second Lien Indenture Trustee under the Second Lien Indenture prior the Effective Date, including, but,

not limited to, Sections 6.05, 6.12, 6.13, 6.14, 7.01(c)-(f), 7.02, 7.04, 7.07, and 7.08 of the Second Lien Indenture; *provided further*, that once any Second Lien Claim Objections are resolved finally and the Second Lien Indenture Trustee has made final disbursements to the Second Lien Noteholders who are entitled to same, all of the limited rights retained by the Second Lien Indenture Trustee pursuant hereto and pursuant to the Plan, the Sale Transaction Documentation, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, shall be automatically terminated, and the Second Lien Indenture Trustee shall be fully discharged of any remaining duties and obligations thereunder and under the Second Lien Indenture or any agreement, instrument, or other document related thereto, and the Second Lien Indenture and related documents shall be fully and finally cancelled in all respects, and *provided further*, to the extent the foregoing is inconsistent with the Plan, Sale Transaction Documentation, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, the terms set forth above in this Confirmation Order shall control.

## AA.    Securities Law Exemption.

159.    Pursuant to section 1145 of the Bankruptcy Code, the solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

## BB.    Cooperation by DTC.

160.    DTC, and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the Plan.  If the record holder of the Second Lien Notes is DTC or its nominee or another securities depository or custodian thereof, and such Second Lien Notes are represented by a global security held by or on behalf of DTC or such other securities

depository or custodian, then, upon the earlier to occur of satisfaction in full of the Second Lien Notes Claims or the final distribution on account of the Allowed Second Lien Notes Secured Claims under the Plan, each such holder of the Second Lien Notes shall be deemed to have surrendered such holder's note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

**CC.   Section 1146 Exemption.**

161.   Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, this Confirmation Order, or the Sale Transaction Documentation, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**DD.   Waiver or Estoppel.**

162.   Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court before the Confirmation Date.

**EE.**   **Authorization to Consummate.**

163.    The Debtors are authorized to consummate the Plan, including the Restructuring

Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject

to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation

set forth in Article IX.C of the Plan.  The substantial consummation of the Plan, within the

meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first

date, on or after the Effective Date, on which distributions are made in accordance with the terms

of the Plan to holders of any Allowed Claims or Interests (as applicable).

**FF.**   **Assumption and Cure of Executory Contracts.**

164.    The provisions governing the treatment of Executory Contracts and Unexpired

Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any

and all disputes concerning the assumption or assumption and assignment, as applicable, of such

Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

For the avoidance of doubt, on the Effective Date, except as otherwise provided herein, in the

Plan, in the Sale Transaction Documentation, or in the Plan Supplement, all Executory Contracts

and Unexpired Leases will be deemed rejected in accordance with the provisions and

requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory

Contracts or Unexpired Leases that:  (a) previously were assumed or rejected by the Debtors;

(b) are identified on the list of Executory Contracts and Unexpired Leases to be assumed or

assumed and assigned pursuant to the Plan attached to the Plan Supplement; (c) are the subject of

a motion to assume Executory Contracts or Unexpired Leases that is pending on the

Confirmation Date; or (d) are subject to a motion to assume an Executory Contract or Unexpired

Lease pursuant to which the requested effective date of such assumption is after the Effective

Date; *provided that* notwithstanding anything to the contrary in this Confirmation Order or the

Plan, the Debtors or the Plan Administrator, as applicable, reserve and are hereby granted the right to alter, amend, modify, or supplement the list of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned pursuant to the Plan described in Article V of the Plan and attached to the Plan Supplement at any time through and including the first Business Day that is forty-five (45) days after the Effective Date.  Entry of this Confirmation Order by the Court shall constitute approval of such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code.  For the avoidance of doubt, any furniture, fixtures, and equipment that remaining at premises subject to a rejected or terminated lease shall be deemed abandoned by the Debtors or Plan Administrator as of the date such lease is rejected or terminated, as applicable.

165.    The Debtors have served upon counterparties to the Executory Contracts and Unexpired Leases notice of:  (a) the Executory Contracts and Unexpired Leases which the Debtors seek to assume and assign to each applicable Purchaser on the Effective Date; and (b) the relevant Cure Claims.  The service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of establishing a Cure Claim for any such Executory Contracts or Unexpired Leases.  Each of the counterparties to the Executory Contracts and Unexpired Leases to be assumed and assigned has had an opportunity to object to the Cure Claims set forth in the notice and to the assumption and assignment to the applicable Purchaser of such Executory Contract or Unexpired Lease.

166.    Upon the Debtors' assumption and assignment of Executory Contracts and Unexpired Leases to the applicable Purchaser, pursuant to the Sale Transaction Documentation under the provisions of this Confirmation Order and any additional orders of this Court, and subject to the Debtors' or the applicable Purchaser's, as applicable, payment of any Cure Claims pursuant to the terms of the Sale Transaction Documentation, no default shall exist under any

Executory Contract or Unexpired Lease so assumed and assigned, and no counterparty to any such Executory Contract or Unexpired Lease shall be permitted to: (a) declare a default by the applicable Purchaser under such Executory Contract or Unexpired Lease; or (b) otherwise take action against the applicable Purchaser or any of its Affiliates as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Executory Contract or Unexpired Lease.

167. Unless, prior to entry of this Confirmation Order, a party to an Executory Contract or Unexpired Lease has timely Filed an objection to the Cure Claims identified in the Plan Supplement or any amendments thereto, as applicable, the Debtors or the applicable Purchaser, in accordance with the terms set forth under the Plan and the Sale Transaction Documentation, shall pay such Cure Claims and the assumption and assignment of the Executory Contract or Unexpired Lease on the Effective Date shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including: (a) defaults of provisions restricting a change in control or ownership interest composition; or (b) other bankruptcy related defaults arising under any assigned Executory Contract or Unexpired Lease. Any disputed Cure Claims shall be determined in accordance with the procedures set forth in Section V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.

168. Except as provided in the Sale Transaction Documentation or this Confirmation Order, after the Effective Date, the Debtors and the Estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtors or the Estates, the Plan Administrator, their successors or assigns, and any of their property or assets.

169.   Subject to paragraphs 190 through 197 hereof, all counterparties to Executory Contracts and Unexpired Leases assumed and assigned pursuant to the Plan, the Plan Supplement, or the Sale Transaction Documentation, shall be deemed to have consented to such assumption and assignment under section 365(c)(l)(B) of the Bankruptcy Code, and the applicable Purchaser shall enjoy all of the Debtors' rights, benefits and privileges under each such assigned Executory Contract or Unexpired Lease as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

170.   Unless otherwise specified on a schedule to the Plan or the Sale Transaction Documentation, each Executory Contract and Unexpired Lease listed or to be listed thereon shall include any and all modifications, amendments, supplements, restatements and other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument or other document is listed thereon.

171.   Nothing in this Confirmation Order or in any notice or any other document is or shall be deemed an admission by the Debtors that any contract sought to be assumed and assigned is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

**GG.   Dissolution of the Committee.**

172.   On the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Debtors and the Plan Administrator shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date. Upon the dissolution of the Committee, the current and former members of the Committee, and their officers, employees, counsel, advisors, and agents, shall be released and discharged of and

from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's respective attorneys, accountants, and other agents shall terminate, except that the Committee and its professionals shall have the right to pursue, review, and object to any applications for compensation and reimbursement of expenses Filed in accordance with Article II.B. of the Plan.

**HH.    Effect of Non-Occurrence of Conditions to the Effective Date.**

173.    Notwithstanding the entry of this Confirmation Order, if the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

**II.    Post-Confirmation Modification of the Plan.**

174.    Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Plan Administrator, as applicable, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in this Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Plan Supplement, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided that* any such alteration, amendment, or modification shall be in accordance with the applicable Sale Transaction Documentation.

175.    The Debtors and the Plan Administrator, as applicable, are hereby authorized to amend or modify the Plan, including the Plan Supplement, at any time prior to the substantial consummation of the Plan, but only to the extent authorized by section 1127 of the Bankruptcy Code, without further order of this Court.

**JJ.    Reservations of Rights Relating to the WesternGeco Entities.**

176.    WesternGeco, L.L.C. and certain of its affiliates (the "WesternGeco Entities") and one or more of the Debtors are parties to that certain Master License Agreement for Multiclient Seismic Data effective December 27, 2005, Master License Agreement For Multiclient Seismic Data effective December 28, 2006, and Master License Agreement for Geophysical Data effective December 18, 2006, as well as any and all supplements, addenda, and amendments thereof or relating thereto (the "WG Executory Contracts").  Notwithstanding anything in any Plan, Disclosure Statement, Plan Supplement, the Schedule of Assumed Executory Contracts and Unexpired Leases attached as **Exhibit A** to the Plan Supplement, Schedule of Rejected Executory Contracts and Unexpired Leases attached as **Exhibit B** to the Plan Supplement, Sale Transaction Documentation, Sale Transaction Agreements, this Confirmation Order or otherwise, on the Effective Date, the WG Executory Contracts shall be deemed rejected and terminated.  Within ninety (90) days of the Effective Date, the Debtors or Plan Administrator shall return or cause to be returned to the WesternGeco Entities, or destroy or cause to be destroyed, all seismic data licensed pursuant to and in accordance with the terms of the WG Executory Contracts and all derivative products thereof (the "WG Seismic"), including but not limited to all WG Seismic in the Debtors' storage and archives systems, workstations, and geologic and geophysical prospect files.  The WesternGeco Entities have opted out of the releases contained in Debtors' Plan, and therefore, the WesternGeco Entities are not "Releasing Parties" as defined by the Plan and are not bound by such releases.

KK.    **Reservations of Rights Relating to the TGS Entities.**

177.    TGS NOPEC Geophysical Company ASA and certain of its wholly owned subsidiaries (the "TGS Entities") and one or more of the Debtors are parties to that certain Master License Agreement No. HL1105-005 for Geophysical Data entered into December 27, 2005, Master License Agreement For Geophysical Data effective December 18, 2006,[5] the LOG-LINE Plus!® Operating Agreement, and the Computer Software Master License Agreement, as well as any and all supplements, supplementary agreements, addenda, product schedules, purchase orders and amendments thereof or relating thereto (the "TGS Executory Contracts").  Notwithstanding anything in any Plan, Disclosure Statement, Plan Supplement, the Schedule of Assumed Executory Contracts and Unexpired Leases attached as **Exhibit A** to the Plan Supplement, the Schedule of Rejected Executory Contracts and Unexpired Leases attached as **Exhibit B** to the Plan Supplement, Sale Transaction Documentation, Sale Transaction Agreements, this Confirmation Order or otherwise, on the Effective Date, the TGS Executory Contracts shall be deemed rejected and terminated.  Within ninety (90) days of the Effective Date, the Debtors or Plan Administrator shall return or cause to be returned to the TGS Entities, or destroy or cause to be destroyed, all seismic, well or other data, and software, licensed to one or more of the Debtors by the TGS Entities pursuant to and in accordance with the terms of the TGS Executory Contracts and all derivative products thereof (the "TGS Materials"), including but not limited to all TGS Materials in the Debtors' storage and archives systems, workstations, and geologic and geophysical prospect files.  The TGS Entities have opted out of the releases

---

[5]    The licensors under the Master License Agreement for Geophysical Data effective December 18, 2006 are Southern WesternGeco S.R.L. and WesternGeco Servicos de Sismica Ltda on behalf of Consorcio WesternGeco 176-99 ("Consorcio"), however, the license recognizes TGS as Consorcio's authorized agent for sales and marketing of data licensed thereunder.

contained in the Plan, and therefore, the TGS Entities are not "Releasing Parties" as defined by the Plan and are not bound by such releases.

**LL.    Reservations of Rights Relating to the Halliburton Entities.**

178.    For the avoidance of doubt, Halliburton Atlantic Limited and Halliburton Overseas Limited-Sucursal de Angola, each in their capacity as creditors of certain non-Debtor affiliates (collectively, the "Halliburton Entities") shall not be considered Releasing Parties or Released Parties and the release, exculpation, and/or injunctive provisions contained in Article VIII of the Plan shall not affect the Halliburton Entities; *provided* that nothing herein shall be deemed an admission as to the validity of any claim against a Debtor or non-Debtor Entity or a waiver of the Debtors' or non-Debtors' right to dispute any such claim on any grounds.

**MM.   Reservations of Rights Relating to the Insurers.**

179.    Notwithstanding any other term or provision in the Plan or this Confirmation Order, nothing in the Plan, this Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release): (i) will prejudice any of the rights, claims or defenses of Debtors' insurers (the "Insurers") under any insurance policies issued to one or more Debtors under which the Debtors, the Estates, the Plan Administrator, and/or any other insured seeks coverage (the "Policies") or any agreements related to such Policies (together, with the Policies, the "Insurance Agreements"); (ii) will modify any of the terms, conditions, limitations and/or exclusions contained in the Insurance Agreements, which terms, conditions, limitations and exclusions shall remain in full force and effect; (iii) shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Agreements, or create any right of action against the

Insurers that does not otherwise exist under applicable non-bankruptcy law; (iv) shall be deemed to prejudice any of the Insurers' rights and/or defenses in any pending or subsequent litigation in which the Insurers or the Debtors, the Estates, the Plan Administrator, and/or any other insured may seek any declaration regarding the nature and/or extent of any insurance coverage under the Insurance Agreements; (v) shall be deemed to alter any continuing duties and obligations of any insured under the Insurance Agreements; or (vi) shall be construed as an acknowledgement that the Insurance Agreements cover or otherwise apply to any claims or that any claims are eligible for payment under any of the Insurance Agreements.  The Plan Administrator is specifically authorized to perform the continuing duties and obligations of the Debtors under the Insurance Agreements.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall increase or decrease the Debtors' or the Insurers' rights and obligations under the Insurance Agreements, and any and all rights, claims, and defenses of the Debtors or the Plan Administrator arising out of or related to the Insurance Agreements are expressly reserved.

**NN.    Reservations of Rights Relating to Intercompany Claims.**

180.    Nothing in the Plan prevents any creditor or party in interest from objecting to the allowance of any Intercompany Claim or seeking to recharacterize or equitably subordinate any such Claims and all objections are hereby preserved.

**OO.    Reservations of Rights Relating to NPOU.**

181.    Notwithstanding anything to the contrary, the assignment of Lease OCS-G 31938, covering Walker Ridge Area, Block 51 (the "Block 51 Lease") and Lease OCS-G 25232 covering Walker Ridge Area, Block 52 (the "Block 52 Lease") is made by Cobalt International Energy L.P. and accepted by Navitas subject to (i) the terms and conditions of that certain Letter Agreement by and between Nexen Petroleum Offshore USA Inc. ("NPOU"), Anadarko E&P Company L.P., Kerr-McGee Oil & Gas Corporation ("Kerr-McGee") and ConocoPhillips

78

Company ("Conoco"), dated March 31 2008; (ii) the overriding royalty interests of NPOU that attach to the Block 51 Lease pursuant to that certain Assignment by and between Conoco and NPOU made effective February 1, 2008; and (iii) the overriding royalty interests of NPOU that attach to the Block 52 Lease pursuant to that certain Assignment by and between Kerr-McGee and NPOU made effective February 1, 2008.

**PP.    Reservations of Rights Relating to Shenandoah.**

182.    For the avoidance of doubt, Anadarko Petroleum Corporation, Anadarko US Offshore LLC, Anadarko E&P Company, and their Affiliates (collectively "Anadarko") and ConocoPhillips Company and its Affiliates (collectively "COPC") are neither Releasing Parties nor Released Parties with respect to Claims between Anadarko and any Released Party or COPC and any Released Party. Any Claims between Anadarko and any Released Party and COPC and any Released Party are not subject to Articles VIII.B or VIII.C of the Plan and are fully preserved in all respects.

183.    Further, and notwithstanding any contrary provisions in the Plan or this Confirmation Order, any *res judicata*, standing, or other defenses Anadarko and COPC may have arising from the adequacy/inadequacy of the Debtors' disclosure of Retained Causes of Action are fully preserved. The Court makes no findings or determinations regarding whether any Retained Causes of Action related to Anadarko and COPC have been specifically or unequivocally retained and all parties' rights in this regard are fully preserved. The Debtors before the Effective Date or the Plan Administrator after the Effective Date may prosecute any such Retained Causes of Action against Anadarko or COPC only in connection with their objection to and resolution of any Claim asserted by such party. Further, and regardless of the adequacy/inadequacy of the Debtors' disclosure of Retained Causes of Action, any Causes of Action, rights, or interests released by the Debtors under the March 8, 2018 Agreement

Regarding Designation of Successor Operator, set forth in **Exhibit A** of the Plan Supplement [Docket No. 686] (the "DSO Agreement"), are not Retained Causes of Action.

184.    Further, and for the avoidance of doubt, any amounts that become due under any Executory Contract or Unexpired Lease which is assumed or assumed and assigned between the date this Confirmation Order is entered and the Effective Date and to which Anadarko or COPC is a party, shall be assumed by the applicable assignee of any such Executory Contract or Unexpired Lease and are not released or discharged under the Plan or this Confirmation Order.

185.    The Debtors' entry into and assumption of the DSO Agreement is approved in all respects, including, without limitation, the releases and all agreements and obligations set forth therein.

186.    To adequately assure future performance of the Debtors' obligations under the Executory Contracts and Unexpired Leases being assumed or assumed and assigned pursuant to the Plan and this Confirmation Order and to which Anadarko is a party, including but not limited to obligations under the DSO Agreement, and to comply with the Debtors' obligations under the DSO Agreement and applicable law, the Debtors and/or Plan Administrator shall, on or before the Effective Date, fund a reserve in the amount of $3,800,000.00 (the "Anadarko Reserve"), for the benefit of Anadarko and for the purpose of satisfying the Debtors' proportionate share of plugging and abandonment, decommissioning, remediation, or similar costs (the "Shenandoah P&A Obligations") related to the Block 51 Lease, the Block 52 Lease, and Lease OCS-G 28148 (collectively, the "Shenandoah Leases"); *provided* that all rights, Claims, and defenses of the Debtors or the Plan Administrator arising out of or related to the Shenandoah P&A Obligations are expressly reserved.

187.    Upon closing of the March 7, 2018 Asset Purchase Agreement by and among Cobalt International Energy L.P. and Navitas and assumption of the Shenandoah P&A Obligations by Navitas, the Anadarko Reserve shall be released to the Debtors, and Anadarko shall cease to have any rights, Claims, or interest with respect to the Anadarko Reserve.  If the Shenandoah Leases expire without Navitas assuming the Shenandoah P&A Obligations, then the Anadarko Reserve shall be disbursed to Anadarko upon Anadarko's submission to the Plan Administrator of reasonable documentation reflecting actual costs Anadarko has incurred to satisfy the Shenandoah P&A Obligations.  To the extent that funds remain in the Anadarko Reserve after satisfaction of the Shenandoah P&A Obligations, such funds shall be released to the Debtors.

**QQ.    Provision Regarding Securities Plaintiffs Opt Out.**

188.    The Securities Plaintiffs and the Securities Class (as each is defined in the Disclosure Statement Order) have elected to opt out of the Third Party Release in accordance with the Disclosure Statement Order.  As a result, the Securities Plaintiffs and such class are not Releasing Parties or Released Parties under the Plan.

**RR.    Reservation of Rights Regarding Backup Bidder.**

189.    To the extent the Debtors do not consummate the Sale Transaction with each Successful Bidder, the Debtors will demonstrate adequate assurance of future performance with respect to the relevant Backup Bidder in a subsequent proceeding.  The rights and arguments of all parties in interest, including the Debtors, are expressly reserved for purposes of such proceeding.

**SS.     Reservations of Rights in Favor of the United States.**

    **a.     Federal Oil and Gas Leases.**

190.     Notwithstanding anything to the contrary in this Confirmation Order, the Plan, the Plan Supplement and/or in any other Plan-related documents (collectively for purposes of paragraphs 190 through 197 of this Confirmation Order, the "Confirmation Documents"):  (i) the Debtors shall assume all of, and shall not abandon or otherwise reject any of, their interests in any federal oil and/or gas leases (collectively, the "Federal Leases"); and (ii) any assignment and/or transfer of any Federal Leases by the Debtors or the Plan Administrator, as applicable, to any Purchaser or other assignee or transferee will be ineffective absent the consent of the Department of the Interior ("Interior") as provided for in all applicable non-bankruptcy laws and regulations.  In order to obtain the consent of Interior to any assignment and/or transfer of the Federal Leases, the Debtors, the Plan Administrator and/or the Purchasers, as applicable, must, among other things, cure, or provide adequate assurance that they will promptly cure, any and all existing defaults under the applicable Federal Leases.  Nothing in the Confirmation Documents and/or in any Order approving any Sale Transaction or in the Sale Transaction Documentation (collectively, the "Sale Documents") shall be interpreted to set cure amounts for the Federal Leases and any amounts owing under the Federal Leases shall be promptly paid when due in the ordinary course subject to applicable laws, regulations and administrative procedures; *provided, however*, that the Debtors or W&T shall fund the unpaid portion of, if any, $7,449.44 (the "GOM 1 LLC Payment") for unpaid royalties owing to The Office of Natural Resources Revenue ("ONRR") on OCS Lease No. G 24194 by sending such payment to The Department of Justice (the "DOJ"), 1100 L Street, NW, Washington D.C., 20530, Attn:  Eunice R. Hudson, Esq., within ten (10) business days following the Closing Date of the Sale Transaction.  If the Debtor, the Plan Administrator and/or Purchaser, as applicable does not pay the GOM 1 LLC

Payment to the DOJ by the deadline set forth in this paragraph, the Debtor, the Plan Administrator or Purchaser, as applicable, will pay late payment charges on the untimely payment at the rate established in 30 C.F.R. § 1218.54. *For the avoidance of any doubt*, the payment of the GOM 1 LLC Payment, or any other payment that may be made in connection with the assumption and assignment of any the Debtors' interests in the Federal Leases, shall not release any monetary or non-monetary obligations that are owing by either the Debtor, the Plan Administrator or the Purchaser, assignee and/or transferee under applicable laws and regulations other than with respect to the specific monetary obligation being paid.

191.   Notwithstanding any other provision in the Confirmation Documents and/or in the Sale Documents, ONRR will retain, and have, the right to audit and/or perform any compliance review and, if appropriate, collect from the Debtors, the Plan Administrator and/or their respective successors and assigns (including the Purchasers) under the Federal Leases, any additional monies that was owed by the Debtors prior to the assumption and/or assignment of the Federal Leases without those rights being adversely affected by these bankruptcy proceedings. The Debtor, the Plan Administrator, the Purchasers, and/or their successors and assigns, as applicable, will each individually retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any such determination; *provided, however*, that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by ONRR. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. §§ 1701, *et seq.*).

192.   Notwithstanding anything to the contrary in the Confirmation Documents and/or in the Sale Documents, nothing therein shall release, nullify, preclude, limit, waive, enjoin, impact or affect, in any way:  (i) any assignee, transferee, Plan Administrator and/or Purchaser's compliance with all applicable legal requirements under applicable non-bankruptcy laws governing assignments or transfers of Federal Leases including, without limitation, as provided for in The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("OCSLA") and 30 C.F.R. Part 556 and 30 C.F.R. Part 250, Subpart J, if applicable; (ii) the rights of Interior to consent to, or withhold consent to, the assignment and/or transfer of the Debtors' interests in any Federal Leases to the Purchasers or any other assignee and/or transferee in Interior's regulatory discretion pursuant to applicable non-bankruptcy laws and regulations; and/or (iii) the Debtors' and/or the Plan Administrator's obligations, or the obligations of any assignee and/or transferee of the Debtors' interests in the Federal Leases (including all Purchasers), to comply with all laws and regulations applicable to such Federal Leases including, without limitation, maintenance and monitoring obligations, decommissioning obligations and financial assurance obligations, as provided for in, among other places, OCSLA and its implementing regulations found in 30 C.F.R. Part 250 and 30 C.F.R. Part 556.

193.   Notwithstanding anything to the contrary in the Confirmation Documents, nothing therein shall require the United States to call, enforce, seek payment under, or exhaust any purported remedies with respect to, any bonds, surety agreements, guarantees or any other form of financial assurance protecting the United States before enforcing any such obligations against the Debtors to the extent permitted by applicable non-bankruptcy laws.

194.   To the extent that the Plan Administrator may seek to relinquish or assign the Debtors' interests in any unexpired Federal Leases that have been assumed under the Plan *after*

the Effective Date, the Plan Administrator is authorized to: (i) relinquish to Interior the Estates' and the Debtor's interests in any such assumed, but unexpired, Federal Leases pursuant to 30 C.F.R. Part 556, Subpart K; (ii) if requested by Interior or by other interest holders, assign any partial interests or rights in any Federal Leases to other interest holders pursuant to 30 C.F.R. Part 556 Subparts G and H; and/or (iii) request the designation of a new operator or agent pursuant to 30 C.F.R. § 550.143 and 30 C.F.R. § 550.146, as applicable; *provided, however*, that nothing authorized in this paragraph shall limit, waive or impact, in any, any regulatory discretion that Interior may have pursuant to applicable non-bankruptcy laws and regulations to approve, disapprove, consent to, or withhold consent to, any such relinquishment, assignment and/or designation. With respect to any Federal Leases assumed by the Debtors under the Plan, but which the Plan Administrator may seek to relinquish to Interior or assign to another interest holder after the Effective Date, the Plan Administrator, as successor to the Debtors' regulatory obligations, shall cooperate with BOEM to complete and file with BOEM Adjudication (Attn: Bernadette Thomas) the proper forms to relinquish to Interior, and/or assign to other interest holders, Debtors' and/or the Estates' interests in the Federal Leases (and, to the extent applicable, any related platforms, wells, pipelines, facilities, or equipment located on, or covered by, such Federal Leases) and, if requested, cooperate with Interior to effectuate any required relinquishment or assignment before the Debtors' bankruptcy cases are closed. *For the avoidance of any doubt*, notwithstanding anything to the contrary elsewhere in the Confirmation Documents, any relinquishment or assignment of Federal Leases pursuant to this paragraph shall not release, nullify, preclude, limit, waive or enjoin the Debtors' or the Plan Administrator's joint and several liability for accrued decommissioning obligations, if any, attributable to the Debtors or the Plan Administrator according to the provisions of OCSLA and 30 C.F.R. Part 250,

Subpart Q to the extent that such obligations have accrued to the Debtors or the Plan Administrator, as applicable, under 30 C.F.R. § 250.1702; *provided that* the Debtors or the Plan Administrator shall not be required to reserve any amounts on account of such liability, if any. Notwithstanding the prior sentence and anything to the contrary elsewhere in the Confirmation Documents, the Debtors and the Plan Administrator do not release or waive, and shall retain, all defenses and/or rights under applicable law and regulations to challenge any such determination of liability, including with respect to the calculation of the amount of any decommissioning obligations alleged to have accrued.

b.    **Governmental Units.**

195.    Notwithstanding anything to the contrary in the Confirmation Documents and/or in the Sale Documents, nothing shall release, nullify, discharge, waive, limit, preclude or enjoin: (i) any liability to any "governmental unit" as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" set forth in 11 U.S.C. § 101(5) (a "Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any liability to a Governmental Unit on the part of any Person other than the Debtors; (iv) the enforcement of any liability or obligation to a Governmental Unit under its police and regulatory authority, as provided for in, laws, statutes, regulations, notices or orders, that any entity would be subject to as owner or operator of property after the date of entry of this Confirmation Order; and/or (v) the exercise of any rights of setoff or recoupment by the United States and any such rights are expressly preserved irrespective of any deadlines provided for elsewhere in the Confirmation Documents. *For the avoidance of any doubt*, the United States shall not be required to provide the Debtors with any written notice of recoupment by the Confirmation Date or move to effectuate any setoff of obligations by the Effective Date and all of the United States' rights to setoff and/or recoupment are expressly preserved.

196.    Notwithstanding anything to the contrary in the Confirmation Documents, nothing shall:  (i) divest any tribunal of any jurisdiction to interpret the Confirmation Documents or adjudicate any defenses related thereto; (ii) release or discharge any third party or non-Debtor entity from any debt, obligation, liability, claim, action, proceeding, defense or cause of action in connection with any claim, action, proceeding, defense or cause of action, brought, or that may be brought, by the United States or enjoins the United States from asserting any of the foregoing; or (iii) exculpate any third party or non-Debtor entity (other than exculpation of the Committee and its members and professionals when acting within the scope of their duties in the Chapter 11 Cases and non-Debtor third parties acting in their fiduciary capacities to the Estates as provided for in 11 U.S.C. § 1125(e)) from any liability, claim, action, proceeding or cause of action brought, or that may be brought, by the United States.  *For the avoidance of any doubt*, the United States expressly objects to, and is deemed to opt out of, the Third Party Release set forth in Article VIII.C of the Plan.

197.    Notwithstanding anything to the contrary elsewhere in the Confirmation Documents, paragraphs 190 through 197 of this Confirmation Order shall expressly supersede and control to the extent that any conflict is deemed to exist between paragraphs 190 through 197 herein and any other provision in the Confirmation Documents.

**TT.    Final Order.**

198.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

Dated: **4-5**, 2018
Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

### Schedule 1

1.      *First Lien Act of Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement,* dated December 6, 2016, from Cobalt GOM #1 LLC, and Cobalt International Energy, L.P., as mortgagor, debtor and grantor, to and in favor of Wilmington Trust, National Association, as First Lien Collateral Agent, as mortgagee, secured party and grantee, recorded among the records of St. Mary Parish, Louisiana, in Mortgage Book 1495, Page 189, under File Number 337685, on December 9, 2016.

2.      *Second Lien Act of Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement,* dated December 6, 2016, from Cobalt GOM #1 LLC, and Cobalt *International* Energy, L.P., as mortgagor, debtor and grantor, to and in favor of Wilmington Trust, National Association, as Second Lien Collateral Agent, as mortgagee, secured party and grantee, recorded among the records of St. Mary Parish, Louisiana, in Mortgage Book 1495, Page 247, under File Number 337686, on December 9, 2016.

3.      *First Amendment to Second Lien Act of Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement,* dated effective April 24, 2017, from Cobalt GOM #1 LLC, and Cobalt International Energy, L.P., as mortgagors, and Wilmington Trust, National Association, as mortgagee, recorded among the records of St. Mary Parish, Louisiana, in Mortgage Book 1508, Page 600, under File Number 339568, on April 27, 2017.

4.      *First Lien Act of Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement,* dated December 6, 2016, from Cobalt GOM #1 LLC, and Cobalt International Energy, L.P., as mortgagor, debtor and grantor, to and in favor of Wilmington Trust, National Association, as First Lien Collateral Agent, as mortgagee, secured party and grantee, recorded among the records of Iberia Parish, Louisiana, in Mortgage Book 1739, Page 401, under File Number 2016-00011725, on December 9, 2016.

5.      *Second Lien Act of Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement,* dated December 6, 2016, from Cobalt GOM # 1 LLC, and Cobalt International Energy, L.P., as mortgagor, debtor and grantor, to and in favor of Wilmington Trust, National Association, as Second Lien Collateral Agent, as mortgagee, secured party and grantee, recorded among the records of Iberia Parish, Louisiana, in Mortgage Book 1739, Page 459, under File Number 2016-00011726, on December 8, 2016.

6.      *First Amendment to Second Lien Act of Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement,* dated effective April 24, 2017, from Cobalt GOM # 1 LLC, and Cobalt International Energy, L.P., as mortgagors, and Wilmington Trust, National Association, as mortgagee, recorded among the records of Iberia Parish, Louisiana, in Mortgage Book 1758, Page 771, under File Number 2017-00003701, on April 26, 2017.