<u>Exhibit A</u>

**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COBALT INTERNATIONAL ENERGY, INC., *et al.*,[1] | ) | Case No. 17-36709 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## FOURTH AMENDED JOINT CHAPTER 11 PLAN (WITH TECHNICAL MODIFICATIONS) OF COBALT INTERNATIONAL ENERGY, INC. AND ITS DEBTOR AFFILIATES

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
Laura Krucks (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Zack A. Clement (Texas Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond Street
Houston, Texas 77025
Telephone:     (832) 274-7629

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cobalt International Energy, Inc. (1169); Cobalt International Energy GP, LLC (7374); Cobalt International Energy, L.P. (2411); Cobalt GOM LLC (7188); Cobalt GOM # 1 LLC (7262); and Cobalt GOM # 2 LLC (7316).  The Debtors' service address is: 920 Memorial City Way, Suite 100, Houston, Texas 77024.

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ................................................................................................ 4
    A.       Defined Terms ....................................................................................................... 4
    B.       Rules of Interpretation ....................................................................................... 15
    C.       Computation of Time .......................................................................................... 16
    D.       Governing Law ................................................................................................... 16
    E.       Reference to Monetary Figures ........................................................................... 16
    F.       Controlling Document ......................................................................................... 16

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS** ................................. 17
    A.       Administrative Claims ........................................................................................ 17
    B.       Professional Compensation ................................................................................. 17
    C.       Priority Tax Claims ............................................................................................ 18
    D.       Statutory Fees ..................................................................................................... 18

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............ 18
    A.       Summary of Classification .................................................................................. 18
    B.       Treatment of Claims and Interests ...................................................................... 19
    C.       Special Provision Governing Unimpaired Claims ............................................... 22
    D.       Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................................................................................................................... 22
    E.       Controversy Concerning Impairment .................................................................. 23
    F.       Elimination of Vacant Classes ............................................................................ 23
    G.       Voting Classes; Presumed Acceptance by Non-Voting Classes ............................ 23
    H.       Presumed Acceptance and Rejection of the Plan .................................................. 23
    I.       Intercompany Interests ....................................................................................... 23
    J.       Subordinated Claims ........................................................................................... 23

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ......................................... 23
    A.       General Settlement of Claims .............................................................................. 23
    B.       Restructuring Transactions .................................................................................. 24
    C.       Sale Transactions ............................................................................................... 25
    D.       The Plan Administrator ...................................................................................... 25
    E.       Sources of Consideration for Plan Distributions .................................................. 26
    F.       Disputed Claims Reserve .................................................................................... 26
    G.       Subsidiary GUC Settlement Reserve ................................................................... 26
    H.       Cobalt GUC Settlement Amount ......................................................................... 26
    I.       Release of Liens ................................................................................................. 26
    J.       Preservation of Causes of Action ........................................................................ 27
    K.       Cancellation of Notes, Instruments, Certificates, and Other Documents ............... 27
    L.       Corporate Action ................................................................................................ 28
    M.       Effectuating Documents; Further Transactions .................................................... 28
    N.       Exemption from Certain Taxes and Fees .............................................................. 29
    O.       Release of Avoidance Actions ............................................................................. 29
    P.       Director and Officer Liability Insurance .............................................................. 29
    Q.       Compensation and Benefits Programs .................................................................. 29
    R.       Closing the Chapter 11 Cases .............................................................................. 29

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........ 30
    A.       Assumption and Rejection of Executory Contracts and Unexpired Leases ............ 30
    B.       Claims Based on Rejection of Executory Contracts or Unexpired Leases ............. 30
    C.       Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .......... 30

| | D. | Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases | 31 |
| | E. | Sale Transaction Documentation; Assumed Contracts | 31 |
| | F. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 31 |
| | G. | Reservation of Rights | 31 |
| | H. | Nonoccurrence of Effective Date | 32 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ....... **32**

| | A. | Timing and Calculation of Amounts to Be Distributed | 32 |
| | B. | Distributions by the Plan Administrator | 32 |
| | C. | Distributions on Account of Claims Allowed After the Effective Date | 32 |
| | D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 33 |
| | E. | Compliance with Tax Requirements | 35 |
| | F. | Allocations | 35 |
| | G. | No Postpetition Interest on Claims | 35 |
| | H. | Setoffs and Recoupment | 35 |
| | I. | Claims Paid or Payable by Third Parties | 36 |
| | J. | Distributions on Account of Subordinated Claims | 36 |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ....... **37**

| | A. | Allowance of Claims | 37 |
| | B. | Claims and Interests Administration Responsibilities | 37 |
| | C. | Estimation of Claims | 37 |
| | D. | Adjustment to Claims Without Objection | 37 |
| | E. | Time to File Objections to Claims | 38 |
| | F. | Disallowance of Claims | 38 |
| | G. | Amendments to Claims | 38 |
| | H. | No Distributions Pending Allowance | 38 |
| | I. | Distributions After Allowance | 38 |
| | J. | Single Satisfaction of Claims | 38 |

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ....... **39**

| | A. | Settlement, Compromise, and Release of Claims and Interests | 39 |
| | B. | **Debtor Release** | 39 |
| | C. | **Third Party Release** | 40 |
| | D. | **Exculpation** | 40 |
| | E. | **Injunction** | 41 |
| | F. | Recoupment | 41 |
| | G. | Subordination Rights | 41 |
| | H. | Reimbursement of Contribution | 41 |
| | I. | SEC Rights Reserved | 42 |
| | J. | Whitton's Rights Reserved | 42 |
| | K. | Special Provision Governing Fee Claims and Final Fee Applications | 42 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ....... **42**

| | A. | Conditions Precedent to the Effective Date | 42 |
| | B. | Waiver of Conditions | 42 |
| | C. | Substantial Consummation | 43 |
| | D. | Effect of Non-Occurrence of Conditions to the Effective Date | 43 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ....... **43**

| | A. | Modification and Amendments | 43 |
| | B. | Effect of Confirmation on Modifications | 43 |
| | C. | Revocation or Withdrawal of the Plan | 43 |

**ARTICLE XI. RETENTION OF JURISDICTION** ................................................................. **43**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ............................................................ **45**
    A.        Immediate Binding Effect ................................................................. 45
    B.        Additional Documents ..................................................................... 45
    C.        Dissolution of the Committee ............................................................ 46
    D.        First Lien Indenture Trustee Fees and Expenses ............................ 46
    E.        Unsecured Notes Indenture Trustee Fees and Expenses................. 46
    F.        Reservation of Rights ....................................................................... 46
    G.        Successors and Assigns .................................................................... 46
    H.        Service of Documents ....................................................................... 46
    I.        Term of Injunctions or Stays ............................................................ 48
    J.        Entire Agreement.............................................................................. 48
    K.        Exhibits............................................................................................. 48
    L.        Nonseverability of Plan Provisions ................................................. 48
    M.        Waiver or Estoppel ........................................................................... 48
    N.        Enforcement of the Confirmation Order........................................... 48
    O.        Votes Solicited in Good Faith .......................................................... 49

**INTRODUCTION**

Cobalt International Energy, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases propose this joint plan pursuant to chapter 11 of the Bankruptcy Code (together with the documents comprising the Plan Supplement, the "Plan"). The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classification and treatment of Claims and Interests apply to each individual Debtor. Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*2.625% Senior Notes*" means those certain 2.625% senior convertible notes due 2019, issued by Cobalt pursuant to the 2.625% Senior Notes Indenture.

2.      "*3.125% Senior Notes*" means those certain 3.125% senior convertible notes due 2024, issued by Cobalt pursuant to the 3.125% Senior Notes Indenture.

3.      "*2.625% Senior Notes Claims*" means any Claim arising under, derived from, or based upon the 2.625% Senior Notes and the 2.625% Senior Notes Indenture.

4.      "*3.125% Senior Notes Claims*" means any Claim arising under, derived from, or based upon the 3.125% Senior Notes and the 3.125% Senior Notes Indenture.

5.      "*2.625% Senior Notes Indenture*" means that certain Indenture, dated as of December 17, 2012, as amended, modified, or supplemented from time to time, by and between Cobalt, as issuer, and the 2.625% Senior Notes Indenture Trustee.

6.      "*3.125% Senior Notes Indenture*" means that certain Indenture, dated as of December 17, 2012, as amended, modified, or supplemented from time to time, by and between Cobalt, as issuer, and the 3.125% Senior Notes Indenture Trustee.

7.      "*2.625% Senior Notes Indenture Trustee*" means Wells Fargo Bank, National Association, in its capacity as indenture trustee and in other capacities under or in connection with the 2.625% Senior Notes Indenture, and any successor thereto.

8.      "*3.125% Senior Notes Indenture Trustee*" means Wells Fargo Bank, National Association, in its capacity as indenture trustee and in other capacities under or in connection with the 3.125% Senior Notes Indenture, and any successor thereto.

9.      "*Accrued Professional Compensation*" means, at any given moment, all Claims for accrued fees and expenses (including success fees) for services rendered by a Professional through and including the

Confirmation Date, to the extent such fees and expenses have not been previously paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Fee Claims.

10.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Fee Claims; (c) any adequate protection claims as provided for in the Cash Collateral Order; and (d) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

11.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Fee Claims, shall be the first Business Day that is 30 days following the Effective Date; and (b) with respect to Fee Claims, shall be the first Business Day that is 45 days following the Effective Date.

12.      "*Administrative Claims Objection Bar Date*" means the first Business Day that is 150 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including the Claims Bar Date Order.

13.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

14.      "*Allowed*" means with respect to any Claim: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

15.      "*Assumed Liabilities*" means the liability of any Debtor assumed by each Purchaser pursuant to the applicable Sale Transaction Documentation.

16.      "*Auction*" means the auction for some or all of the Debtors' assets, conducted in accordance with the Bidding Procedures on March 6, 2018.

17.      "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code.

18.      "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

19.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C.

§ 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

20.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

21.     "*Bidding Procedures*" means the procedures governing the Auction and sale of any or all of the Debtors' assets, as approved by the Bankruptcy Court and as may be amended from time to time in accordance with its terms.

22.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

23.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

24.     "*Cash Collateral Order*" means the *Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* entered by the Bankruptcy Court on December 14, 2017 [Docket No. 57] and the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* entered by the Bankruptcy Court on January 25, 2018 [Docket No. 301].

25.     "*Causes of Action*" means any Claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, which was not specifically conveyed to a Purchaser in its respective Sale Transaction Documentation and which was property of the Debtors or in which the Debtors held rights as of the Effective Date.

26.     "*Chapter 11 Cases*" means the jointly administered chapter 11 cases of the Debtors pending before the Bankruptcy Court under the lead case of *Cobalt International Energy, Inc., et al.*, No. 17-36709 (MI) (Bankr. S.D. Tex.).

27.     "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

28.     "*Claims Bar Date*" means the date established by the Bankruptcy Court in the Claims Bar Date Order by which Proofs of Claim must be Filed.

29.     "*Claims Bar Date Order*" means that certain order entered by the Bankruptcy Court establishing the Claims Bar Date.

30.     "*Claims Objection Deadline*" means, except as otherwise provided in an order of the Bankruptcy Court, for each Claim, the later of (a) 365 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims, as the same may be modified or extended from time to time by the Bankruptcy Court or on motion of a party in interest approved by the Bankruptcy Court.

31.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

32.     "*Class*" means a category of holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33.     "*Cobalt*" means Cobalt International Energy, Inc.

34.     "*Cobalt General Unsecured Claim*" means any Claim against Cobalt, including an Unsecured Notes Claim and a Second Lien Notes Deficiency Claim, that is not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court and is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) an Other Secured Claim; (e) a First Lien Notes Claim; (f) a Second Lien Notes Secured Claim; (g) an Intercompany Claim; (h) a Subsidiary General Unsecured Claim; or (i) a Section 510(b) Claim.

35.     "*Cobalt GUC Settlement Amount*" means the amount of $5,000,000 to be paid by the Derivative Action Defendants for the benefit of holders of Allowed Cobalt General Unsecured Claims that are not Second Lien Notes Deficiency Claims.

36.     "*Cobalt General Unsecured Claims Recovery*" means (a) any Net Cash in excess of amounts necessary to fund the Subsidiary GUC Settlement Reserve and satisfy all Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed First Lien Notes Claims, Allowed Second Lien Notes Claims, and the Allowed Whitton Claim (solely to the extent Whitton opts out of the Subsidiary GUC Settlement Reserve) in each case in full, in Cash, as provided herein, if any, plus (b) Cash recoveries (if any) on account of unencumbered assets (if any) at Cobalt not subject to adequate protection claims under the Cash Collateral Order.

37.     "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

38.     "*Compensation and Benefits Programs*"  means all employment and severance policies, all compensation, and any other employee benefit plans, policies, and programs and other arrangements (and all amendments and modifications thereto), in each case in place as of the Petition Date, applicable to the Debtors' and non-Debtor subsidiaries' respective employees, former employees, retirees, and non-employee directors and employees, former employees, and retirees of their subsidiaries, including all savings plans, retirements plans (whether or not such plans are intended to be qualified), health and/or welfare plans, disability plans, severance benefit plans, including the Executive Severance Plan, incentive plans, including the Sales Incentive Plan, and life, accidental death, and dismemberment insurance plans, or other similar plans.

39.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

40.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

41.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

42.     "*Confirmation Order*" means the order approving the Sale Transaction and confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

43.     "*Consummation*" means the occurrence of the Effective Date.

44.     "*Cure Claim*" means all amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

45.     "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed or assumed and assigned under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

46.     "*D&O Liability Insurance Policies*" means all insurance policies (including any runoff or "tail" policy) that has been issued at any time to or provides coverage to any of the Debtors for current or former directors', managers', and officers' liability.

47.     "*Debtors*" means, collectively:   Cobalt; Cobalt International Energy GP, LLC; Cobalt International Energy, L.P.; Cobalt GOM LLC; Cobalt GOM # 1 LLC; and Cobalt GOM # 2 LLC, the debtors and debtors in possession in the Chapter 11 Cases.

48.     "*Derivative Actions*" means, collectively, the three shareholder derivative actions styled *Gaines v. Bryant*, No. 2016-29850, 295th District Court of Harris County, Texas, filed May 2016; *McDonaugh v. Bryant*, No. 2016-82186, 80th District Court of Harris County, Texas, filed November 2016; and *Hafkey v. Bryant*, No. 2017-23329, 295th District Court of Harris County, Texas, filed April 2017.

49.     "*Derivative Action Defendants*" means, collectively, those former directors and officers that are named defendants in the Derivative Actions, each in their capacity as such.

50.     "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is set forth on the applicable Schedule or Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (c) is not set forth on the applicable Schedule or Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor and the holder thereof, or (e) has been waived or withdrawn by the holder thereof.

51.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Cobalt International Energy, Inc. and its Debtor Affiliates*, dated as of January 23, 2018, as may be amended, modified, or supplemented from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

52.     "*Disputed*" means a Claim that is not yet Allowed.

53.     "*Disputed Claims Reserve*" means an appropriate reserve, to be determined by the Debtors in consultation with the First Lien Ad Hoc Group, the First Lien Indenture Trustee, the Second Lien Ad Hoc Group, the Second Lien Indenture Trustee, the Unsecured Notes Ad Hoc Committee, and the Committee, unless otherwise ordered by the Bankruptcy Court, for distributions on account of Disputed Claims that are neither Assumed Liabilities nor Subsidiary General Unsecured Claims and that are subsequently Allowed after the Effective Date; *provided* that the Whitton Claim shall be considered a Disputed Claim for purposes of the Disputed Claims Reserve solely to the extent Whitton opts out of the Subsidiary GUC Settlement Reserve.

54.     "*Disputed Claims Reserve Amount*" means the amount of assets determined by the Debtors that would likely have been distributed to the holders of all applicable Disputed Claims as if such Disputed Claims had been Allowed Claims on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be (a) the lesser of (i) the asserted amount of each Disputed Claim against the Debtors as set forth on the applicable Schedule or Schedules or, if and solely to the extent a non-duplicative Proof of Claim was filed in an asserted amount greater than the scheduled

amount, the asserted amount filed with the Bankruptcy Court as set forth in such non-duplicative Proof of Claim or as provided by the parties to the Debtors as further information with respect to the Proof of Claim, and (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or ordered by other order of the Bankruptcy Court, or (b) the amount otherwise agreed to by Debtors and the holder of such Disputed or unliquidated Claim for reserve purposes; *provided* that the Disputed Claims Reserve Amount shall not reserve amounts on account of Disputed Claims that are Subsidiary General Unsecured Claims other than the Whitton Claim (solely to the extent Whitton opts out of the Subsidiary GUC Settlement Reserve).

55.     "*Distribution Record Date*" means the date for determining which holders of Claims or Interests are eligible to receive distributions hereunder and shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court; *provided* that the distribution record date for (a) the First Lien Notes Claims shall be a date agreed upon by the Debtors, counsel to the First Lien Ad Hoc Group, and the First Lien Indenture Trustee, (b) the Second Liens Notes Claims shall be a date agreed upon by the Debtors, counsel to the Second Lien Ad Hoc Group, and the Second Lien Indenture Trustee, and (c) the Unsecured Notes Claims shall be a date agreed upon by the Debtors, counsel to the Unsecured Notes Ad Hoc Committee, the 3.125% Senior Notes Indenture Trustee, and the 2.625% Senior Notes Indenture Trustee, as applicable.

56.     "*DTC*" means Depository Trust Company.

57.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A have been satisfied or waived (in accordance with Article IX.B); and (c) the Plan is declared effective.

58.     "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

59.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

60.     "*Excluded Assets*" means any asset of the Debtors that is not acquired by the Purchaser pursuant to the Sale Transaction Documentation.

61.     "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Plan Administrator; (c) the Committee and any other official committees appointed in the Chapter 11 Cases and each of their respective members; and (d) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

62.     "*Executive Severance Plan*" means the *Cobalt International Energy, Inc. Amended and Restated Executive Severance and Change in Control Benefit Plan*, dated as of July 28, 2016.

63.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

65.     "*Fee Claim*" means a Claim for Accrued Professional Compensation.

66.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

67.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified,

or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

68.     "*First Lien Ad Hoc Group*" means the ad hoc group of First Lien Noteholders represented by Weil, Gotshal & Manges LLP and PJT Partners Inc.

69.     "*First Lien Indenture*" means that certain Indenture, dated as of December 6, 2016, as amended, modified, or supplemented from time to time, by and between Cobalt, as issuer, the First Lien Indenture Trustee, and certain of the Debtors, as guarantors.

70.     "*First Lien Indenture Trustee*" means Wilmington Trust, National Association, in its capacity as indenture trustee and collateral agent under the First Lien Indenture, and any successor thereto.

71.     "*First Lien Noteholders*" means holders of the First Lien Notes.

72.     "*First Lien Notes*" means those certain 10.75% first lien senior secured notes due 2021, issued by Cobalt pursuant to the First Lien Indenture.

73.     "*First Lien Notes Claims*" means any Claim arising under, derived from, or based upon the First Lien Notes and the First Lien Indenture, and the Cash Collateral Order.

74.     "*General Unsecured Claims*" means, collectively, the Subsidiary General Unsecured Claims and the Cobalt General Unsecured Claims.

75.     "*Governmental Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim of Governmental Units must be Filed.

76.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

77.      "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

78.     "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor or a non-Debtor subsidiary.

79.     "*Intercompany Interest*" means, other than an Interest in Cobalt, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

80.     "*Intercreditor Agreement*" means that certain Intercreditor Agreement, dated as of December 6, 2016, by and among Wilmington Trust, National Association, as collateral agent, the First Lien Indenture Trustee, the Second Lien Indenture Trustee, Cobalt, and each of the Debtor guarantors party thereto, as amended, restated, or otherwise supplemented from time to time.

81.     "*Interests*" means any interest, equity, or share in the Debtors, including all options, warrants, or other rights to obtain such an interest or share in such Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

82.     "*Interim Compensation Order*" means that certain order entered by the Bankruptcy Court establishing procedures for the compensation of Professionals.

83.      "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

84.      "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

85.      "*Net Cash*" means the Debtors' Cash or Cash equivalents on hand (including any Cash, securities, other Sale Transaction Proceeds, any Cash proceeds of the collateral of the First Lien Noteholders and Second Lien Noteholders, or any Cash proceeds from the Sonangol Settlement ultimately received by the Debtors) less any Cash or Cash equivalents to be paid or reserved pursuant to and in accordance with the Plan on account of the Wind Down Budget or otherwise, but excluding Cash recoveries (if any) on account of unencumbered assets (if any) not subject to adequate protection claims (if any) under the Cash Collateral Order.

86.      "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC.

87.      "*Order*" means an order of the Bankruptcy Court.

88.      "*Ordinary Course Professionals*" shall mean the various attorneys, accountants, auditors, and other professionals the Debtors employ in the ordinary course of their business and retained by the Debtors pursuant to the Ordinary Course Professionals Order.

89.      "*Ordinary Course Professionals Order*" shall mean that certain order entered by the Bankruptcy Court establishing the procedures for retaining the Ordinary Course Professionals.

90.      "*Other Priority Claim*" means any allowed Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

91.      "*Other Secured Claim*" means any Secured Claim against any Debtor that is not a First Lien Notes Claim or a Second Lien Notes Secured Claim.

92.      "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

93.      "*Petition Date*" means December 14, 2017, the date on which the Debtors commenced the Chapter 11 Cases.

94.      "*Plan*" shall have the meaning set forth in the preamble.

95.      "*Plan Administrator*" means, collectively, a committee comprised of Nader Tavakoli as the Lead Member and Chairman and a Member to be selected by the Committee; *provided* that if Whitton opts out of the Subsidiary GUC Settlement Reserve then the Plan Administrator shall solely be Nader Tavakoli as the Lead Member and Chairman. For the avoidance of doubt, all costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets.

96.      "*Plan Administrator Assets*" means, on the Effective Date, all assets of the Estates, including interests in non-Debtor subsidiaries, control over which will be vested in the Plan Administrator, and, thereafter, all assets from time to time controlled by the Plan Administrator; *provided, however,* that for the avoidance of doubt, the ownership of such assets and interests shall not be transferred solely as a result of such assets and interests becoming Plan Administrator Assets.  For the avoidance of doubt, any assets sold pursuant to the Sale Transaction shall not be a Plan Administrator Asset.

97.      "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least seven (7) days prior to the Voting Deadline, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including:  (a) a list of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned pursuant to the Plan, and as may be amended by the Debtors in accordance with the Plan prior to the

Effective Date; (b) a schedule of the Retained Causes of Action; (c) the identification and compensation of the Plan Administrator; (d) the amount of the Disputed Claims Reserve Amount; and (e) a summary of the Wind Down Budget, subject to appropriate confidentiality protections.

98.    *"Priority Claims"* means Priority Tax Claims and Other Priority Claims.

99.    *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

100.   *"Pro Rata"* means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed interests under the Plan.

101.   *"Professional"* means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

102.   *"Professional Fee Escrow"* means an interest-bearing escrow account to hold an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed and unpaid Fee Claims.  Such Cash shall remain subject to the jurisdiction of the Bankruptcy Court.

103.   *"Professional Fee Escrow Amount"* means the aggregate unpaid Fee Claims through the Confirmation Date as estimated in accordance with Article II.B.

104.   *"Proof of Claim"* means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

105.   *"Proof of Interest"* means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

106.   *"Purchaser"* means each Entity that is a purchaser under the Sale Transaction Documentation to which it is a party.

107.   *"Reinstated"* or *"Reinstatement"* means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

108.   *"Released Party"* means each of the following, solely in its capacity as such: (a) the First Lien Noteholders; (b) the First Lien Ad Hoc Group; (c) the Second Lien Noteholders; (d) the Second Lien Ad Hoc Group; (e) the Unsecured Noteholders; (f) the Unsecured Notes Ad Hoc Committee; (g) the First Lien Indenture Trustee; (h) the Second Lien Indenture Trustee; (i) the 2.625% Senior Notes Indenture Trustee; (j) the 3.125% Senior Notes Indenture Trustee; (k) the Committee and its members; and (l) each Purchaser (m) with respect to each of the Debtors and each of the foregoing entities in clauses (a) through (l), such Entity and its current and former Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that any holder of a Claim or Interest that opts out or otherwise objects to the releases in the Plan shall not be a "Released Party."

109.   *"Releasing Party"* means each of the following, solely in its capacity as such: (a) the First Lien Noteholders; (b) the First Lien Ad Hoc Group; (c) the Second Lien Noteholders; (d) the Second Lien Ad Hoc

Group; (e) the Unsecured Noteholders; (f) the Unsecured Notes Ad Hoc Committee; (g) the First Lien Indenture Trustee; (h) the Second Lien Indenture Trustee; (i) the 2.625% Senior Notes Indenture Trustee; (j) the 3.125% Senior Notes Indenture Trustee; (k) the Committee and its members; (l) each Purchaser; (m) all holders of Claims, (n) all holders of Interests, and (o) with respect to each of the Debtors and each of the foregoing entities in clauses (a) through (n), such Entity and its current and former Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that any holder of a Claim or Interest that opts out or otherwise objects to the releases in the Plan shall not be a "Releasing Party."

110.    "*Restructuring Transactions*" shall have the meaning set forth in Article IV.B.

111.    "*Retained Causes of Action*" means all claims and Causes of Action of the Debtors identified in the Plan Supplement.

112.    "*Sales Incentive Plan*" means the *Cobalt International Energy, Inc. Sales Incentive Plan*, dated as of November 13, 2017.

113.    "*Sale Transaction*" means, collectively, one or more sales of any or all of the Debtors' assets or equity interests in the Debtors or one or more of its direct and indirect subsidiaries (or any successor entities thereof) pursuant to this Plan.

114.    "*Sale Transaction Documentation*" means one or more asset purchase agreements and related documents, pursuant to which the Debtors will effectuate the Sale Transaction.

115.    "*Sale Transaction Proceeds*" means any Cash, Cash equivalents, or securities that are proceeds from a Sale Transaction.

116.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

117.    "*SEC*" means the United States Securities and Exchange Commission.

118.    "*Second Lien Ad Hoc Group*" means the ad hoc group of Second Lien Noteholders represented by Akin Gump Strauss Hauer & Feld LLP.

119.    "*Second Lien Indenture*" means that certain Indenture, dated as of December 6, 2016, as amended, modified, or supplemented from time to time, by and between Cobalt, as issuer, the Second Lien Indenture Trustee, and certain of the Debtors, as guarantors.

120.    "*Second Lien Indenture Trustee*" means U.S. Bank National Association, in its capacity as indenture trustee, collateral agent, registrar, paying agent, transfer agent, and custodian under the Second Lien Indenture, and any successor thereto.

121.    "*Second Lien Noteholder*s" means holders of Second Lien Notes.

122.    "*Second Lien Notes*" means those certain 7.75% second lien notes due 2023, issued by Cobalt pursuant to the Second Lien Indenture.

123.    "*Second Lien Notes Claims*" means any Claim arising under, derived from, or based upon the Second Lien Notes and the Second Lien Indenture, which shall be Allowed in the amount of $934,732,000.00 less

$1,900,000.00 negotiated in connection with the Sale Transaction for the Debtors' Heidelberg assets, plus accrued interest and all other fees, costs, expenses, premiums, and other amounts provided for under the Second Lien Indenture, in each case to the extent Allowed, including under section 506 of the Bankruptcy Code.

124.    "*Second Lien Notes Deficiency Claim*" means the portion of the Second Lien Notes Claim constituting a general unsecured claim under section 506(a) of the Bankruptcy Code.

125.    "*Second Lien Notes Secured Claims*" means any Second Lien Notes Claim that is Secured.

126.    "*Second Lien Recovery*" means any Net Cash (including proceeds of any Sale Transaction) in excess of amounts necessary to fund the Subsidiary GUC Settlement Reserve and satisfy all Allowed Administrative Claims, Allowed Fee Claims, and Allowed First Lien Notes Claims, in each case in full, in Cash, as provided herein.

127.    "*Section 510(b) Claims*" means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.  For the avoidance of doubt, any Claim or Interest derived from, based upon, relating to, or arising under the subject matter of that certain securities litigation styled as *In re Cobalt International Energy, Inc. Securities Litigation*, Civil Action No. H-14-3428 (S.D. Tex.) shall be a Section 510(b) Claim.

128.    "*Secured*" means when referring to a Claim, a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

129.    "*Secured Tax Claims*" means any Secured Claim against any Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

130.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

131.    "*Sonangol Settlement*" means the settlement between certain non-Debtor subsidiaries, Sociedade Nacional de Combustíveis de Angola—Empresa Pública, and Sonangol Pesquisa e Produção, S.A as set forth in Exhibit A to the *Order Approving Debtors' Motion for Entry of an Order (I) Authorizing Performance Under Settlement Agreement, (II) Approving Settlement Agreement, and (III) Granting Related Relief* [Docket No. 300].

132.    "*Subordinated Claim*" means any Claim that is subject to subordination, including any Claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such Claim.

133.    "*Subsidiary General Unsecured Claim*" means any Claim against any Debtor other than Cobalt, including a Second Lien Notes Deficiency Claim and the Whitton Claim, that is not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court and is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) an Other Secured Claim; (e) a First Lien Notes Claim; (f) a Second Lien Notes Secured Claim; (g) an Intercompany Claim; (h) a Cobalt General Unsecured Claim; or (i) a Section 510(b) Claim.

134.    "*Subsidiary General Unsecured Claims Recovery*" means (a) any Net Cash (including proceeds of any Sale Transaction) in excess of amounts necessary to satisfy all Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed First Lien Notes Claims, and Allowed Second Lien Notes Secured Claims, in each case in full, in Cash, as provided herein, if any, plus (b) Cash recoveries (if any) on account of unencumbered assets (if any), after funding the

Subsidiary GUC Settlement Reserve, at the applicable Debtor other than Cobalt not subject to adequate protection claims under the Cash Collateral Order.

135.    "*Subsidiary GUC Settlement Reserve*" means a reserve (including a notional reserve) established by the Debtors on the Effective Date in the Subsidiary GUC Settlement Reserve Amount that shall be maintained by the Plan Administrator for the benefit of Allowed Class 5 Subsidiary General Unsecured Claims. For the avoidance of any doubt, if Whitton opts out of the Subsidiary GUC Settlement Reserve, no amount of the Subsidiary GUC Settlement Reserve shall be distributed on account of the Whitton Claim.

136.    "*Subsidiary GUC Settlement Amount*" means (a) $23,000,000, or (b) if Whitton opts out of the Subsidiary GUC Settlement Reserve, $8,000,000.

137.    "*Successful Bidder*" means an Entity whose bid for some or all of the Debtors' assets, which for the avoidance of doubt shall include the transactions contemplated under the Plan, is selected by the Debtors and approved by the Bankruptcy Court as the highest and otherwise best bid for the respective assets being purchased pursuant to the Bidding Procedures.

138.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

139.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

140.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in cash.

141.    "*Unsecured Notes Ad Hoc Committee*" means the ad hoc committee of Unsecured Noteholders represented by Milbank, Tweed, Hadley &McCloy LLP.

142.    "*Unsecured Notes*" means, collectively, the 2.625% Senior Notes and the 3.125% Senior Notes.

143.    "*Unsecured Noteholders*" means the holders of the Unsecured Notes.

144.    "*Unsecured Notes Claim*" means any Claim derived from or based upon the Unsecured Notes or the Unsecured Notes Indentures.

145.    "*Unsecured Notes Indentures*" means, collectively, the 2.625% Senior Notes Indenture and the 3.125% Senior Notes Indenture.

146.    "*Unsecured Notes Indenture Trustee*" means, collectively, the the 2.625% Senior Notes Indenture Trustee and the 3.125% Senior Notes Indenture Trustee.

147.    "*Voting Deadline*" means March 28, 2018 at 4:00 p.m., prevailing Central Time.

148.    "*Whitton*" means Whitton Petroleum Services Limited.

149.    "*Whitton Claim*" means the Subsidiary General Unsecured Claim of Whitton.

150.    "*Wind Down Budget*" means the budget for the reasonable activities and expenses to be incurred in winding down the Chapter 11 Cases and administering the Excluded Assets, which shall be subject to appropriate confidentiality protections.

B.    *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall

include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan or the Sale Transaction Documentation, as applicable; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (11) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (12) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (13) any effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, Order, or approval of the Bankruptcy Court or any other Entity; (14) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (15) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

C.     *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.     *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control. Notwithstanding the foregoing, in the event of an inconsistency between the Plan and the Disclosure Statement, on the one hand, and the Sale Transaction Documentation, on the other hand, the Sale Transaction Documentation shall control.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims*

Except with respect to Administrative Claims that are Fee Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses, including Claims held by Governmental Units for taxes incurred by the Debtors following the Petition Date (in accordance with section 503(b)(1)(D) of the Bankruptcy Code), shall be paid in the ordinary course of business in accordance with applicable law and the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; *provided* that any Administrative Claim that has been expressly assumed by a Purchaser pursuant to the *Sale Transaction Documentation* to which it is a party shall not be an obligation of the Debtors. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. Objections to such requests, if any, must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

B.    *Professional Compensation*

1.    <u>Professional Fee Escrow</u>

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish the Professional Fee Escrow. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow shall be funded no later than the Effective Date and maintained in trust for the Professionals and shall not be considered property of the Debtors' Estates or the Plan Administrator; *provided* that the Estates shall have a reversionary interest in the excess amount, if any, remaining in the Professional Fee Escrow Account when all such Allowed amounts owing to Professionals have been paid in full, and any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Estates and shall be distributed by the Plan Administrator in accordance with the Plan without any further action or order of the Bankruptcy Court.

2.    <u>Final Fee Applications and Payment of Fee Claims</u>

All final requests for payment of Fee Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than the first Business Day that is 45 days following the Effective Date. All Entities' respective rights (if any) to object to allowance or payment of all or any portion of any Fee Claims shall be preserved. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code,

Bankruptcy Rules and prior Bankruptcy Court orders, the Allowed amounts of such Fee Claims shall be determined by the Bankruptcy Court. The amount of Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Escrow are unable to satisfy the Allowed amount of Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan.

3.     Estimation of Fees and Expenses

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Fee Claims before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than 10 days prior to the Effective Date; *provided* that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the Professional Fee Escrow Amount.

4.     Post-Confirmation Date Fees and Expenses

Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.     *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full; *provided* that to the extent an Allowed Priority Tax Claim has not been satisfied prior to the Effective Date, no Cash payment shall be made on such Allowed Priority Tax Claim until the Allowed First Lien Notes Claims and the Allowed Second Lien Notes Claims have either been paid in full or received such other treatment rendering such Claims Unimpaired, as applicable, except to the extent of any unencumbered assets.

D.     *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. From and after the Effective Date, the Debtors and the Plan Administrator shall be jointly liable for and shall pay the fees assessed against the Estates under 28 U.S.C. § 1930 until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first. In addition, the Debtors and/or the Plan Administrator shall file any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing, in conformity with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against the Debtors and their Estates.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     *Summary of Classification*

Claims and Interests, except for Administrative Claims, Fee Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that

any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.      Class Identification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | First Lien Notes Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4 | Second Lien Notes Secured Claims | Impaired | Entitled to Vote |
| 5 | Subsidiary General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Cobalt General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Claims | Impaired | Shall Not Vote |
| 9 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 10 | Interests in Cobalt | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests*

1.      Class 1 – Other Priority Claims

a.      *Classification*: Class 1 consists of all Allowed Other Priority Claims.

b.      *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such holder shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, shall be paid in accordance with its terms) or pursuant to such other terms as may be agreed to by the holder of an Allowed Other Priority Claim and the Debtors; *provided* that to the extent an Allowed Other Priority Claim has not been satisfied prior to the Effective Date, no Cash payment shall be made on such Allowed Other Priority Claim until the Allowed First Lien Notes Claims and the Allowed Second Lien Notes Claims have either been paid in full or received such other treatment rendering such Claims Unimpaired, as applicable, except to the extent of any unencumbered assets.

c.      *Voting*: Class 1 is Unimpaired under the Plan. Each holder of an Allowed Other Priority Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each holder of an Allowed Other Priority Claim will not be entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Secured Claims

a.      *Classification*: Class 2 consists of all Allowed Other Secured Claims.

19

b.  *Treatment*: On the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each such holder shall receive either (i) payment in full in Cash of the unpaid portion of its Allowed Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, shall be paid in accordance with its terms), (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

c.  *Voting*: Class 2 is Unimpaired under the Plan. Each holder of an Allowed Other Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each holder of an Allowed Other Secured Claim will not be entitled to vote to accept or reject the Plan.

3.  Class 3 – First Lien Notes Claims

a.  *Classification*: Class 3 consists of all Allowed First Lien Notes Claims.

b.  *Allowance*: The First Lien Notes Claims shall be Allowed in the amount of $500,000,000.00, plus accrued interest and all other fees, costs, expenses, premiums, and other amounts provided for under the First Lien Indenture, and under section 506 of the Bankruptcy Code, less $3,500,000, which amount is estimated to be $552.6 million as of April 30, 2018.

c.  *Treatment*: On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed First Lien Notes Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed First Lien Notes Claim, each holder of an Allowed First Lien Notes Claim shall receive payment in full in Cash.

d.  *Voting*: Class 3 is Unimpaired under the Plan. Each holder of an Allowed First Lien Notes Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each holder of an Allowed First Lien Notes Claim will not be entitled to vote to accept or reject the Plan.

4.  Class 4 – Second Lien Notes Secured Claims

a.  *Classification*: Class 4 consists of all Allowed Second Lien Notes Secured Claims.

b.  *Treatment*: On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed Second Lien Notes Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Second Lien Notes Secured Claim, each holder of an Allowed Second Lien Notes Secured Claim shall receive its Pro Rata share of the Second Lien Recovery up to payment in full of such holder's Allowed Second Lien Notes Secured Claim.

c.  *Voting*: Class 4 is either Unimpaired under the Plan as set forth above, in which case Class 4 and each holder of a Second Lien Notes Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Class 4 is Impaired under the Plan, in which case each holder of an Allowed Second Lien Notes Secured Claim will be entitled to vote to accept or reject the Plan.

5.  Class 5 – Subsidiary General Unsecured Claims

a.  *Classification*: Class 5 consists of all Allowed Subsidiary General Unsecured Claims.

b. *Treatment*:  On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed Subsidiary General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Subsidiary General Unsecured Claim, each holder of an Allowed Subsidiary General Unsecured Claim shall receive its Pro Rata share of the Subsidiary GUC Settlement Reserve up to payment in full of such holder's Allowed Subsidiary General Unsecured Claim; *provided* that if Whitton opts out of the Subsidiary GUC Settlement Reserve, Whitton shall receive its Pro Rata share of the Subsidiary General Unsecured Claims Recovery up to payment in full of such holder's Allowed Subsidiary General Unsecured Claim, if any; *provided further* that each holder of an Allowed Second Lien Notes Deficiency Claim shall receive its Pro Rata share of the Subsidiary General Unsecured Claims Recovery up to payment in full of such holder's Allowed Subsidiary General Unsecured Claim.

c. *Voting*:  Class 5 is Impaired under the Plan.  Each holder of a Subsidiary General Unsecured Claim will be entitled to vote to accept or reject the Plan.

6. Class 6 – Cobalt General Unsecured Claims

a. *Classification*:  Class 6 consists of all Allowed Cobalt General Unsecured Claims.

b. *Allowance of Unsecured Notes Claims*: The Unsecured Notes Claims shall be allowed (i) in respect of the 2.625% Senior Notes, in the amount of $619,167,000.00 plus accrued interest and all other fees, costs, expenses, premiums, and other amounts provided for under the 2.625% Senior Notes Indenture, in each case to the extent Allowed and (ii) in respect of the 3.125% Senior Notes, in the amount of $786,895,000 plus accrued interest and all other fees, costs, expenses, premiums, and other amounts provided for under the 3.125% Senior Notes Indenture, in each case to the extent Allowed.

c. *Treatment*:  On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed Cobalt General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Cobalt General Unsecured Claim, each holder of an Allowed Cobalt General Unsecured Claim shall receive its Pro Rata share of the Cobalt General Unsecured Claim Recovery up to payment in full of such holder's Allowed Cobalt General Unsecured Claim. In addition, holders of Allowed Cobalt General Unsecured Claims that are not Second Lien Notes Deficiency Claims shall also receive their Pro Rata share of the Cobalt GUC Settlement Amount.  For the avoidance of doubt, Allowed Second Lien Notes Deficiency Claims shall share Pro Rata in the Cobalt General Unsecured Claim Recovery.

d. *Voting*:  Class 6 is Impaired under the Plan.  Each holder of a Cobalt General Unsecured Claim will be entitled to vote to accept or reject the Plan.

7. Class 7 – Section 510(b) Claims

a. *Classification*:  Class 7 consists of all Section 510(b) Claims.

b. *Treatment*:  On the Effective Date, each Section 510(b) Claim shall be cancelled without any distribution and such holders of Section 510(b) Claims will receive no recovery.

c. *Voting*:  Class 7 is Impaired under the Plan.  Each holder of a 510(b) Claim will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of a 510(b) Claim will not be entitled to vote to accept or reject the Plan.

8. <u>Class 8 – Intercompany Claims</u>

    a.      *Classification*: Class 8 consists of all Intercompany Claims.

    b.      *Treatment*: Allowed Intercompany Claims shall be treated *pari passu* with General Unsecured Claims against the applicable Debtor and will share in distributions from such Debtor. In lieu of Cash payment to the Debtors holding such Intercompany Claims, the distributions on account of such Intercompany Claims may be made to the creditors of the Debtor holding such Intercompany Claims.

    c.      *Voting*: Class 8 is Impaired under the Plan. Notwithstanding such Impairment, holders of Intercompany Claims will not vote to accept or reject the Plan.

9. <u>Class 9 – Intercompany Interests</u>

    a.      *Classification*: Class 9 consists of all Intercompany Interests.

    b.      *Treatment*: Intercompany Interests may be, at the option of the Debtors, either: (i) Reinstated as of the Effective Date or (ii) cancelled, and no distribution shall be made on account of such Interests.

    c.      *Voting*: Holders of Intercompany Interests are either Unimpaired, and such holders of Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Intercompany Interest will not be entitled to vote to accept or reject the Plan.

10. <u>Class 10 – Interests in Cobalt</u>

    a.      *Classification*: Class 10 consists of all Interests in the Cobalt.

    b.      *Treatment*: On the Effective Date, existing Interests in Cobalt shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancelation or otherwise, and there shall be no distribution to holders of Interests in Cobalt on account of such Interests.

    c.      *Voting*: Class 10 is Impaired under the Plan. Each holder of an Interest in Cobalt will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Interest in Cobalt will not be entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

    Nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

    The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

E.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claim or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

H.    *Presumed Acceptance and Rejection of the Plan*

To the extent the Class of Intercompany Interests is cancelled, each holder of an Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.   The Class of Intercompany Claims and, to the extent it is Reinstated, the Class of Intercompany Interests, each holder of a Claim or Interest in such Classes is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

I.    *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience.

J.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including, without limitation, the Intercreditor Agreement. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.   The Plan shall be deemed a motion to approve such good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and

Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to holders of Allowed Claims in any Class are intended to be final.

B.      *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan (the "Restructuring Transactions"), including:   (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) rejection or assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (5) subject to the occurrence of the Effective Date, the consummation of the transactions contemplated by the Sale Transaction.

C.      *Sale Transactions*

On and after the Confirmation Date, the Debtors shall be authorized to consummate each Sale Transaction pursuant to the terms of the Sale Transaction Documentation, the Plan, and the Confirmation Order.

D.      *The Plan Administrator*

    1.      <u>Rights and Powers of the Plan Administrator</u>

On the Effective Date, the Plan Administrator shall be appointed. The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of any and all persons acting as directors and officers (and other employees, as applicable) of the Debtors and directors and officers of the non-Debtor subsidiaries shall be deemed to have been terminated, and a representative of the Plan Administrator shall (a) be appointed as the sole manager and sole officer of the Debtors, (b) succeed to all of the powers of the Debtors' directors and officers under applicable law or otherwise, and (c) appoint new directors and officers of the non-Debtor subsidiaries. For the avoidance of doubt, on and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Sale Transaction Documentation.

Among other things, the Plan Administrator shall be responsible for: (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible; (b) resolving Disputed Claims; (c) making all distributions to holders of Allowed Claims in accordance with the Plan; (d) pursuing or otherwise commencing and litigating any Causes of Action (other than those released herein or pursuant to any prior settlement approved by the Bankruptcy Court, and only to the extent the benefits of such enforcement or prosecution are reasonably believed by the Plan Administrator to outweigh the costs associated therewith; (e) filing appropriate tax returns; and (f) administering the Plan in an efficacious manner. The Plan Administrator shall be deemed to be substituted as the party-in-lieu of the Debtors and the Estates in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

    2.      <u>Plan Administrator Assets</u>

On the Effective Date, the Plan Administrator Assets shall vest automatically in the Debtors under the control of the Plan Administrator free and clear of all Liens, claims, encumbrances, and other interests. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief. The vesting of control over the Plan Administrator Assets to the Plan Administrator shall be made for the benefit and on behalf of holders of Claims receiving a distribution from proceeds of the Plan Administrator Assets. For the avoidance of doubt, the vesting of the control of the Plan Administrator Assets with the Plan Administrator shall not constitute a transfer of ownership of the Plan Administrator Assets to the Plan Administrator. The Plan Administrator shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein. In connection with the appointment of the Plan Administrator, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Plan Administrator will vest in the Debtors under the control of the Plan Administrator and its representatives, and the Debtors and the Plan Administrator are authorized to take all necessary actions to effectuate the transfer of such privileges.

    3.      <u>Fees of the Plan Administrator and Expenses Incurred on or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with

the Plan Administrator's duties shall be paid on a monthly basis without any further notice to or action, Order, or approval of the Bankruptcy Court, in Cash if such amounts relate to any actions taken hereunder; *provided* that the Plan Administrator will only be reimbursed for its reasonable and documented out-of-pocket costs and expenses in accordance with the Wind Down Budget.

E.      *Sources of Consideration for Plan Distributions*

The Debtors Cash on hand, the Sale Transaction Proceeds, and any other Cash received or generated by the Debtors shall be used to fund the distributions to holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided herein.

F.      *Disputed Claims Reserve*

On the Effective Date (or as soon thereafter as is reasonably practicable), the Debtors shall deposit in the Disputed Claims Reserve the Disputed Claims Reserve Amount.  For the avoidance of doubt, there shall be no reserve required for Claims against the Debtors, to the extent such Claims are Assumed Liabilities or are released or otherwise extinguished pursuant to the Plan, nor shall there be any reserves, holdbacks, escrows, or indemnities arising from the Sale Transaction Documentation or otherwise relating to the Sale Transaction.

G.      *Subsidiary GUC Settlement Reserve*

On the Effective Date (or as soon thereafter as is reasonably practicable), the Debtors shall deposit the Subsidiary GUC Settlement Reserve Amount in the Subsidiary GUC Settlement Reserve for the benefit of holders of Allowed Subsidiary General Unsecured Claims in accordance with Article III of the Plan.  For the avoidance of doubt, Second Lien Notes Claims, Intercompany Claims, and, if Whitton opts out of the Subsidiary GUC Settlement Reserve, the Whitton Claim shall not participate in the Subsidiary GUC Settlement Reserve. The Second Lien Notes Claims, Intercompany Claims, and, if Whitton opts out of the GUC Settlement Reserve, the Whitton Claim shall, however, maintain a reversionary interest in the Subsidiary GUC Settlement Reserve solely to the extent the amount of Allowed Subsidiary General Unsecured Claims is less than the amount of the Subsidiary GUC Settlement Reserve; *provided* that if Whitton does not opt out of the Subsidiary GUC Settlement Reserve, only the Second Lien Notes Claims shall maintain such a reversionary interest in the Subsidiary GUC Settlement Reserve.

H.      *Cobalt GUC Settlement Amount*

On the Effective Date (or as soon thereafter as reasonably practicable), the Derivative Action Defendants shall pay the Cobalt GUC Settlement Amount in the full amount of $5,000,000 for the benefit of holders of Allowed Cobalt General Unsecured Claims that are not Second Lien Notes Deficiency Claims.

I.      *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, Liens, pledges, or other security interest shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases.

Without limiting the foregoing, and except as otherwise provided in the Sale Transaction Documentation, on the Effective Date all assets shall be transferred to each Purchaser free and clear of all Claims, Liens, encumbrances or Interests pursuant to Sections 363, 365, 1123 and the other applicable sections of the Bankruptcy Code.

J.      *Preservation of Causes of Action*

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order or otherwise transferred (including, for the avoidance of doubt, pursuant to Sale Transaction Documentation), in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall reserve all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which authority shall vest in the Plan Administrator on the Effective Date pursuant to the terms of the Plan. The Plan Administrator may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Administrator may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan, the Sale Transaction Documentation, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the applicable Purchaser, or the Plan Administrator will not pursue any and all available Causes of Action against them. The Debtors, each Purchaser, and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; *provided* that the Debtors before the Effective Date or the Plan Administrator after the Effective Date may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order or otherwise transferred (including, for the avoidance of doubt, pursuant to Sale Transaction Documentation), the Debtors and the Plan Administrator expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

K.      *Cancellation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except as otherwise specifically provided for in the Plan and, in the case of a Secured Claim, upon satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder, and the 2.625% Senior Notes Indenture Trustee and the 3.125% Senior Notes Indenture Trustee shall be released from all duties thereunder; provided, however, that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing Unsecured Noteholders to receive distributions under the Plan; (b) allowing the 2.625% Senior Notes Indenture Trustee and the 3.125% Senior Notes Indenture Trustee to make the distributions in accordance with the Plan (if any); and (c) preserving any rights of the 2.625% Senior Notes Indenture Trustee and the 3.125% Senior Notes Indenture Trustee to payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders under the Unsecured Notes Indentures, including any rights to priority of payment and/or to exercise charging liens; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; *provided* that notwithstanding anything to the contrary contained herein, any indenture or agreement that governs the rights of the First Lien Indenture Trustee, the First

27

Lien Noteholders, the Second Lien Indenture Trustee, or the Second Lien Noteholders shall continue in effect to allow the First Lien Indenture Trustee or the Second Lien Indenture Trustee, as applicable, to (A) enforce the rights, Claims and interests of the First Lien Indenture Trustee or the Second Lien Indenture Trustee and any predecessor thereto vis-à-vis the First Lien Noteholders or the Second Lien Noteholders and any parties other than the Debtors, (B) receive distributions under the Plan and to distribute them to the First Lien Noteholders or the Second Lien Noteholders in accordance with the terms of the First Lien Indenture or the Second Lien Indenture (C) exercise its charging lien for the payment of its fees and expenses and for indemnification as provided in the First Lien Indenture or the Second Lien Indenture, if not otherwise paid hereunder or in the Chapter 11 Cases, and (D) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to the First Lien Indenture Trustee, the First Lien Noteholders, the Second Lien Indenture Trustee, or the Second Lien Noteholders under the Plan. Except as provided in the Plan, on the Effective Date, the First Lien Indenture Trustee shall be automatically and fully discharged of all its duties and obligations associated with the First Lien Notes, the First Lien Indenture, and all related agreements, and the Second Lien Indenture Trustee shall be automatically and fully discharged of all its duties and obligations associated with the Second Lien Notes, the Second Lien Indenture, and all related agreements.

If the record holder of the First Lien Notes is DTC or its nominee or another securities depository or custodian thereof, and such First Lien Notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then, upon satisfaction in full of the First Lien Notes Claims, each such holder of the First Lien Notes shall be deemed to have surrendered such holder's note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

L.    *Corporate Action*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

The Plan Administrator shall dissolve all of the Debtors, which dissolution shall be effectuated at a time following the Effective Date determined by the Plan Administrator.

On the Effective Date, the terms of all directors, managers, and officers of all Debtors shall be deemed to have expired, all such directors, managers, and officers shall be released of their duties, and all actions solely in furtherance of the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by the Debtors, holders of Claims or Interests, directors, managers, or officers of the Debtors, or any other Entity or Person, including the transfer of control over the Debtors' assets to the Plan Administrator and the dissolution or winding up of the Debtors. The directors, managers, and officers of the Debtors and the Plan Administrator, as applicable, shall be authorized to execute, deliver, File, or record such contracts, instruments, release, and other agreements or documents and take such other actions as they may deem in their sole discretion necessary or appropriate to effectuate and implement the provisions of the Plan. The authorizations and approvals contemplated by this Article IV.L shall be effective notwithstanding any requirements under non-bankruptcy law.

M.    *Effectuating Documents; Further Transactions*

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Plan Administrator, and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

N.      *Exemption from Certain Taxes and Fees*

Any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.      *Release of Avoidance Actions*

On the Effective Date, and except to the extent otherwise reserved in the Plan Supplement, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions and the Debtors, and any of their successors or assigns and any Entity acting on behalf of the Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions. No Avoidance Actions shall revert to creditors of the Debtors.

P.      *Director and Officer Liability Insurance*

The Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an Order from the Bankruptcy Court, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed. Provided, however, that the holder(s) of a Claim for an indemnity obligation will look only to the D&O Liability Insurance Policies for recovery and not the Estates.

Q.      *Compensation and Benefits Programs*

On the Effective Date, the Debtors or the Plan Administrator, as applicable, shall honor and satisfy any and all remaining obligations under the Compensation and Benefit Programs.

R.      *Closing the Chapter 11 Cases*

Upon the occurrence of the Effective Date, the Plan Administrator shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of Cobalt, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Cobalt.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Cobalt in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed or assumed and assigned to the Purchaser or another third party, as applicable, in connection with a Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan or the Sale Transaction Documentation are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of: (1) the Claims Bar Date, Administrative Claims Bar Date, or the Governmental Bar Date, as applicable; and (2) 4:00 p.m., prevailing Central Time, on the date that is thirty (30) days following the entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, their Estates, the Plan Administrator, and/or the Purchaser, or property of the foregoing parties, without the need for any objection by the Debtors, their Estates, the Plan Administrator, and/or the Purchaser and without the need for any further notice to, or action, order, or approval of the Bankruptcy Court.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Claims under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, by the Debtors as an Administrative Claim or by each Purchaser in accordance with the Sale Transaction Documentation, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or Orders resolving the dispute and approving the assumption.

Unless otherwise provided by an Order of the Bankruptcy Court, at least seven (7) days before the Voting Deadline, the Debtors shall cause notice of proposed assumption and proposed Cure Claims to be sent to applicable counterparties.  Any objection by such counterparty must be Filed, served, and actually received by the Debtors not later than seven days after service of notice of the Debtors' proposed assumption and associated Cure Claims.  Any

counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. **Any liabilities reflected in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases as modified, amended, supplemented, or restated.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Plan Administrator expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

E.      *Sale Transaction Documentation; Assumed Contracts*

The Debtors' assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to any Purchaser's rights and obligations, including any Cure Claims assumed by the Purchaser in accordance with the Sale Transaction Documentation, with respect to any such Executory Contracts or Unexpired Leases that are assumed by the Purchaser pursuant Sale Transaction Documentation.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  For the avoidance of doubt, and consistent with the Bankruptcy Court's *Order Deeming Unenforceable Certain Preferential Rights* [Docket No. 417], any contractual right of first refusal or similar contractual purchasing right contained in any Executory Contract or Unexpired Lease that is assumed, or assumed and assigned, shall remain in full force and effect following such assumption, or assumption and assignment.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Bankruptcy Court order to the contrary.

G.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the list of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan contained in the Plan Supplement, nor anything else in the Plan or the Sale Transaction Documentation, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim against or Allowed Interest in the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Plan Administrator, on behalf of the Debtors, as applicable; *provided* that the Plan Administrator will use reasonable commercial efforts to make distributions to holders of General Unsecured Claims that are Allowed as of the Effective Date within sixty (60) days of the Effective Date. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest plus any postpetition interest on such Claim or Interest payable in accordance with the Plan or other Final Order of the Bankruptcy Court, including the Cash Collateral Order. For the avoidance of doubt unless expressly provided to the contrary in this Plan or the Confirmation Order, postpetition interest shall be paid on account of the First Lien Notes Claims as contemplated in the Cash Collateral Order, and the Second Lien Notes Claims shall be entitled to postpetition interest only to the extent the Allowed Second Lien Notes Claims are secured by collateral in excess of the amount of such Allowed Second Lien Claims on the Effective Date.

B.      *Distributions by the Plan Administrator*

All distributions under the Plan shall be made by the Plan Administrator. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Plan Administrator is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Plan Administrator.

Subject to the terms of the Plan, the Plan Administrator shall be empowered to: (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (2) make all distributions contemplated under the Plan; (3) employ professionals to represent it with respect to its responsibilities; (4) object to, Allow, or otherwise resolve any General Unsecured Claim, Priority Claim, or Other Secured Claim, subject to the terms hereof; and (5) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

C.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.     Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Plan Administrator, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

D.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and the Debtors, the Plan Administrator, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.     Delivery of Distributions

a.     Delivery of Distributions to the First Lien Indenture Trustee

Except as otherwise provided in the Plan or reasonably requested by the First Lien Indenture Trustee, all distributions to holders of First Lien Notes Claims shall be deemed completed when made to (or at the direction of) the First Lien Indenture Trustee, which shall be deemed to be the holder of all First Lien Notes Claims for purposes of distributions to be made hereunder; *provided* that any non-Cash consideration shall not be distributed in the name of the First Lien Indenture Trustee. The First Lien Indenture Trustee shall hold or direct such distributions for the benefit of the holders of Allowed First Lien Notes Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the First Lien Indenture Trustee shall arrange to deliver such distributions to or on behalf of such holders of Allowed First Lien Notes Claims in accordance with the First Lien Indenture and subject to the rights of the First Lien Indenture Trustee to assert its charging lien. If the First Lien Indenture Trustee is unable to make, or consents to the Plan Administrator making such distributions, the Plan Administrator, with the First Lien Indenture Trustee's cooperation, shall make such distributions to the extent practicable to do so (provided that until such distributions are made, the First Lien Indenture Trustee's charging lien shall attach to the property to be distributed in the same manner as if such distributions were made through the First Lien Indenture Trustee). The First Lien Indenture Trustee shall have no duties or responsibility relating to any form of distribution that is not DTC eligible and the Debtors or the Plan Administrator, as applicable, shall seek the cooperation of DTC so that any distribution on account of a First Lien Notes Claim that is held in the name of, or held by a nominee of, DTC, shall be made through the facilities of DTC on the Effective Date or as soon as practicable thereafter. The Debtors shall reimburse the First Lien Indenture Trustee for any reasonable and documented fees and expenses incurred after the Effective Date solely in connection with making distributions pursuant to and in accordance with the Plan.

b.     Delivery of Distributions to the Second Lien Indenture Trustee

Except as otherwise provided in the Plan or reasonably requested by the Second Lien Indenture Trustee, all distributions to holders of Second Lien Notes Claims shall be deemed completed when made to the Second Lien Indenture Trustee, which shall be deemed to be the holder of all Second Lien Notes Claims for purposes of distributions to be made hereunder. The Second Lien Indenture Trustee shall hold or direct such distributions for the benefit of the holders of Allowed Second Lien Notes Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the Second Lien Indenture Trustee shall arrange to deliver such distributions to or on behalf of such holders of Allowed Second Lien Notes Claims. The Second Lien Indenture

Trustee may transfer or direct the transfer of such distributions directly through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise) and will be entitled to recognize and deal for all purposes under the Plan with holders of Allowed Second Lien Notes Claims to the extent consistent with the customary practices of DTC. Such distributions shall be subject in all respects to the right of the Second Lien Indenture Trustee to assert its applicable charging liens against such distributions. All distributions made to holders of Allowed Second Lien Notes Claims shall be eligible to be distributed through the facilities of DTC and as provided for under the Second Lien Indenture.

c.      Delivery of Distributions to the 2.625% Senior Notes Indenture Trustee

Except as otherwise provided in the Plan or reasonably requested by the 2.625% Senior Notes Indenture Trustee, all distributions to holders of 2.625% Senior Notes Claims shall be deemed completed when made to the 2.625% Senior Notes Indenture Trustee, which shall be deemed to be the holder of all 2.625% Senior Notes Claims for purposes of distributions to be made hereunder.  The 2.625% Senior Notes Indenture Trustee shall hold or direct such distributions for the benefit of the holders of Allowed 2.625% Senior Notes Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in this Article VI, the 2.625% Senior Notes Indenture Trustee shall arrange to deliver such distributions to or on behalf of such holders of Allowed 2.625% Senior Notes Claims.  The 2.625% Senior Notes Indenture Trustee may transfer or direct the transfer of such distributions directly through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise) and will be entitled to recognize and deal for all purposes under the Plan with holders of Allowed 2.625% Senior Notes Claims to the extent consistent with the customary practices of DTC. Such distributions shall be subject in all respects to the right of the 2.625% Senior Notes Indenture Trustee to assert its applicable charging liens against such distributions. All distributions made to holders of Allowed 2.625% Senior Notes Claims shall be eligible to be distributed through the facilities of DTC and as provided for under the 2.625% Senior Notes Indenture.

d.      Delivery of Distributions to the 3.125% Senior Notes Indenture Trustee

Except as otherwise provided in the Plan or reasonably requested by the 3.125% Senior Notes Indenture Trustee, all distributions to holders of 3.125% Senior Notes Claims shall be deemed completed when made to the 3.125% Senior Notes Indenture Trustee, which shall be deemed to be the holder of all 3.125% Senior Notes Claims for purposes of distributions to be made hereunder.  The 3.125% Senior Notes Indenture Trustee shall hold or direct such distributions for the benefit of the holders of Allowed 3.125% Senior Notes Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in this Article VI, the 3.125% Senior Notes Indenture Trustee shall arrange to deliver such distributions to or on behalf of such holders of Allowed 3.125% Senior Notes Claims.  The 3.125% Senior Notes Indenture Trustee may transfer or direct the transfer of such distributions directly through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise) and will be entitled to recognize and deal for all purposes under the Plan with holders of Allowed 3.125% Senior Notes Claims to the extent consistent with the customary practices of DTC.  Such distributions shall be subject in all respects to the right of the 3.125% Senior Notes Indenture Trustee to assert its applicable charging liens against such distributions. All distributions made to holders of Allowed 3.125% Senior Notes Claims shall be eligible to be distributed through the facilities of DTC and as provided for under the 3.125% Senior Notes Indenture.

e.      Delivery of Distributions in General

Except as otherwise provided herein, the Debtors or the Plan Administrator, as applicable, shall make distributions to holders of Allowed Claims and Allowed Interests at the address set forth in any Proof of Claim Filed by that holder; *provided* that the manner of such distributions shall be determined at the discretion of the Debtors or the Plan Administrator, as applicable.  If a holder holds more than one Claim in any one Class, all Claims of the holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

3.      Minimum Distributions

Notwithstanding anything herein to the contrary, neither the Debtors nor the Plan Administrator, as applicable, shall be required to make distributions or payments of less than $250.00; *provided* that the Plan

Administrator may establish an alternative minimum in its reasonable discretion and upon notice to the Bankruptcy Court.

        4.        <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any notice or distribution to any holder is returned as undeliverable, no such notice of distribution to such holder shall be made unless and until the Plan Administrator has determined the then current address of such holder, at which time such notice or distribution shall be made to such holder without interest; *provided* that such notice or distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of the attempted distribution to the holder. After such date, all unclaimed property or interests in property shall revert to the Plan Administrator for the benefit of other Allowed Claims in accordance with the terms of the Plan, and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

        5.        <u>Manner of Payment</u>

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Plan Administrator by check or by wire transfer, at the sole and exclusive discretion of the Plan Administrator.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

F.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest (or, for federal income tax purposes, original issue discount) as Allowed herein.

G.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court (including the Cash Collateral Order), the Plan, the Confirmation Order, or documents executed as required by this Plan, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim. For the avoidance of doubt unless expressly provided to the contrary in this Plan or the Confirmation Order, postpetition interest shall be paid on account of the First Lien Notes Claims as contemplated in the Cash Collateral Order and on account of the Second Lien Notes Claims to the extent the Second Lien Notes Claims are secured by collateral in excess of the amount of Allowed Second Lien Notes Claims on the Effective Date.

H.      *Setoffs and Recoupment*

Except as otherwise expressly provided herein, the Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the holder of such Claim.

I.      *Claims Paid or Payable by Third Parties*

    1.      Claims Paid by Third Parties

The Debtors or the Plan Administrator, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or the Plan Administrator (or such other entity designated by the Plan Administrator), to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

    2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

    3.      Applicability of Insurance Contracts

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any insurance policy, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

J.      *Distributions on Account of Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions on account thereof take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.  Notwithstanding the foregoing, the Plan shall be without prejudice to the contractual, legal, or equitable subordination rights (if any) in favor of any holder of any Allowed Claim, and any holder of any Allowed Claim (if any) subject to any such contractual, legal, or equitable subordination shall remit any distribution on account of such Claim to which such holder's Claim is subordinated in accordance with and to the extent required under any applicable contractual, legal, or equitable subordination obligation.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims*

The Debtors and the Plan Administrator, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

B.      *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Plan Administrator shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims*

Prior to and on the Effective Date, the Debtors, and, after the Effective Date, the Plan Administrator, may, at any time, request that the Bankruptcy Court estimate: (1) any Disputed Claim or Disputed Interest pursuant to applicable law; and (2) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or Interest, or whether the Bankruptcy Court has ruled on any such objection, the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Plan Administrator, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim or Interest. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Debtors or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. All of the aforementioned Claims and Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

E. *Time to File Objections to Claims*

Any objections to Claims or Interests shall be Filed on or before the Claims Objection Deadline, as such date may be extended pursuant to the Plan.

F. *Disallowance of Claims*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Debtors or the Plan Administrator, as applicable, by that Entity have been turned over or paid to the Debtors or the Plan Administrator.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G. *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors or the Plan Administrator, as applicable, and any such new or amended Claim or Interest Filed shall be deemed disallowed and expunged without any further notice to or action, Order, or approval of the Bankruptcy Court.

H. *No Distributions Pending Allowance*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest; however, at the sole discretion of the Debtors or the Plan Administrator, as applicable, payment may be made on any undisputed portion of such Claim or Interest.

I. *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the Order of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Plan Administrator shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in Article III.B of the Plan. For the avoidance of doubt unless expressly provided to the contrary in this Plan or the Confirmation Order, postpetition interest shall be paid on account of the First Lien Notes Claims as contemplated in the Cash Collateral Order and the Second Lien Notes Claims to the extent the Second Lien Notes Claims are secured by collateral in excess of the amount of Allowed Second Lien Notes Claims on the Effective Date.

J. *Single Satisfaction of Claims*

Holders of Allowed Claims and Allowed Interests may assert such Claims against or Interests in the Debtor(s) obligated with respect to such Claims or Interests, and such Claims or Interests shall be entitled to share in

the recovery provided for the applicable Class of Claims or Interests against the Debtors based upon the full Allowed amount of such Claims or Interests. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Allowed Interest exceed 100 percent (100%) of the underlying Allowed Claim or Allowed Interest plus applicable interest, if any.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Settlement, Compromise, and Release of Claims and Interests*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities, of Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to service performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representation or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the Effective Date occurring.

B.     ***Debtor Release***

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale Transaction, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.B by the Debtors, which includes by**

reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.B is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the *Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.*

C.     *Third Party Release*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale Transaction, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.C is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made *after due notice and opportunity for hearing; and (5) a bar to any of the Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.*

D.     *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any *other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the* Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.   *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan, the Sale Transaction Documentation, or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been compromised, settled, or released, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.E of the Plan.

F.   *Recoupment*

In no event shall any holder of Claims or Interests be entitled to recoup any Claim, right, or Cause of Action of the Debtors, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

G.   *Subordination Rights*

Any distributions under the Plan to holders shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

H.   *Reimbursement of Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the holder of such Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

I.      *SEC Rights Reserved*

Nothing in the Plan or the Confirmation Order (1) releases any non-Debtor Entity from any Claim or cause of action of the SEC; or (2) enjoins, limits, impairs, or delays the SEC from commencing or continuing any Claims, causes of action, proceedings or investigations against any non-Debtor Entity in any forum.

J.      *Whitton's Rights Reserved*

To the extent Whitton opts out of the Subsidiary GUC Settlement Reserve, nothing in the Plan or the Confirmation Order shall prevent Whitton from objecting to the allowance of any Intercompany Claim or seeking to recharacterize or equitably subordinate any such claims and all objections are hereby preserved.

K.      *Special Provision Governing Fee Claims and Final Fee Applications*

For the avoidance of doubt, the provisions in Article VIII hereof shall not waive, affect, limit, restrict, or otherwise modify the right of any party in interest to object to any Fee Claim or final fee application Filed by any Professional in these Chapter 11 Cases.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.B hereof):

1.      The Bankruptcy Court shall have entered the Confirmation Order;

2.      the Sale Transaction shall have closed or shall close contemporaneously with the Effective Date;

3.      the Disputed Claims Reserve shall have been established and funded;

4.      the Subsidiary GUC Settlement Reserve shall have been established;

5.      funds sufficient to satisfy the Wind Down Budget shall have been appropriately reserved;

6.      all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

7.      all Allowed Fee Claims approved by the Bankruptcy Court shall have been paid in full and amounts sufficient to pay all Fee Claims that become Allowed after the Effective Date, shall have been placed in the Professional Fee Escrow pending approval of the Fee Claims by the Bankruptcy Court.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

B.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in Article IX.A of the Plan may be waived by consent of the Debtors without notice, leave, or Order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.  *Substantial Consummation*

"Substantial consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.  *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.  *Modification and Amendments*

Subject to the limitations contained in the Plan, the Debtors or the Plan Administrator, as applicable, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Plan Administrator, as applicable, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X hereof.

B.  *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.  *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the holders of Claims or the non-Debtor subsidiaries; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors or the Plan Administrator amending, modifying, or supplementing, after the Effective Date, pursuant to the Plan, any Executory Contracts or Unexpired Leases set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

5. ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

6. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving or commenced by a Debtor, the Estates, or the Plan Administrator that may be pending on or after the Effective Date;

7. adjudicate, decide, or resolve any and all matters related to Causes of Action;

8. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9. enter and implement such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12. resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, including obligations of the Plan Administrator;

13. resolve any cases, controversies, suits, disputes, or causes of action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such Orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.      resolve any cases, controversies, suits, disputes, or causes of action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI hereof;

15.      enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.      hear and determine disputes arising in connection with the interpretation, implementation, modification, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

18.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the Sale Transaction, including the interpretation, implementation, modification, or the Sale Transaction Documentation;

20.      enforce all Orders previously entered by the Bankruptcy Court;

21.      hear any other matter not inconsistent with the Bankruptcy Code;

22.      enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof; and

23.      enter an Order concluding or closing the Chapter 11 Cases.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Debtors' Estates, the Plan Administrator, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, or injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, including, without limitation, the Sale Transaction Documentation.

C.     *Dissolution of the Committee*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases on the Effective Date.  The Debtors and the Plan Administrator shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date.  Upon the dissolution of the Committee, the current and former members of the Committee, and their officers, employees, counsel, advisors, and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's respective attorneys, accountants, and other agents shall terminate, except that the Committee and its professionals shall have the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.B. hereof.

D.     *First Lien Indenture Trustee Fees and Expenses*

The reasonable and documented unpaid fees and out-of-pocket expenses of the First Lien Indenture Trustee and its counsel shall be paid in Cash to the extent not otherwise paid in accordance with the Cash Collateral Order.

E.     *Unsecured Notes Indenture Trustee Fees and Expenses*

The Unsecured Notes Indenture Trustee shall assert, and the Debtors and the Second Lien Ad Hoc Group will support allowance of a Claim for substantial contribution for the reasonable and documented unpaid fees and out-of-pocket expenses in an amount not to exceed $600,000.

F.     *Reservation of Rights*

Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests.

G.     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

H.     *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

the Debtors:          Cobalt International Energy, Inc.
                      920 Memorial City Way, Suite 100
                      Houston, Texas 77024
                      Attn.:  Jeffrey A. Starzec

                      with copies to:

                      Kirkland & Ellis LLP
                      Kirkland & Ellis International LLP
                      300 North LaSalle
                      Chicago, Illinois 60654
                      Attn.:  Chad J. Husnick, P.C., and Brad Weiland

46

the First Lien Indenture Trustee:

> Wilmer Cutler Pickering Hale and Dorr LLP
> 7 World Trade Center
> 250 Greenwich Street
> New York, New York 10007
> Attn: Andrew N. Goldman

the First Lien Ad Hoc Group:

> Weil, Gotshal & Manges LLP
> 767 5th Avenue
> New York, New York 10153
> Attn.: Matt Barr and Alexander Welch
>
> - and -
>
> Weil, Gotshal & Manges LLP
> 700 Louisiana Street, Suite 1700
> Houston, Texas 77002
> Attn.:  Alfredo Perez and Chris Lopez

the Second Lien Ad Hoc Group:

> Akin Gump Strauss Hauer & Feld LLP
> 1333 New Hampshire Avenue, N.W.
> Washington, D.C. 20036
> Attn.:  James Savin and Kate Doorley

the Unsecured Notes Ad Hoc Committee:

> Milbank, Tweed, Hadley & McCloy LLP
> 28 Liberty Street
> New York, New York 10005
> Attn.:  Gerard Uzzi and Eric Stodola

the Committee:

> Pachulski Stang Ziehl & Jones LLP
> 780 Third Avenue
> 34th Floor
> New York, New York 10017
> Attn.: Robert Feinstein
>
> - and -
>
> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Boulevard
> 13th Floor
> Los Angeles, California 90067
> Attn.: Ira Kharasch

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Plan Administrator or, *after the Effective Date*, the Debtors, shall be served on the Plan Administrator, as set forth in the Plan Supplement.

After the Effective Date, the Debtors or the Plan Administrator, as applicable, have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed request.

I.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      *Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

K.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://www.kccllc.net/cobalt or the Bankruptcy Court's website at http://www.txs.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

L.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; *provided* that at the request of the Debtors (in their sole discretion), the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted *provided* that any such alteration or interpretation shall be acceptable to the Debtors. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

M.      *Waiver or Estoppel*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

N.      *Enforcement of the Confirmation Order*

On and after the Effective Date, the Debtors, each Purchaser, and the Plan Administrator, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan.

O.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

*[Remainder of Page Intentionally Left Blank]*

Dated:  April 5, 2018

Respectfully submitted,

Cobalt International Energy, Inc.,
on behalf of itself and each of the other Debtors

By:     _/s/ David D. Powell_____
Name: David D. Powell
Title:  Chief Financial Officer